1  MALCOLM S. SEGAL - 075481
JAMES P. MAYO - 169897
2  **SEGAL & KIRBY LLP**
770 L Street, Suite 1440
3  Sacramento, CA 95814
Telephone: (916) 441-0828
4  Facsimile: (916) 446-6003

5  Attorneys for Defendant
FREDERICK SCOTT SALYER

6

7

8           IN THE UNITED STATES DISTRICT COURT FOR THE

9                  EASTERN DISTRICT OF CALIFORNIA

10

11  UNITED STATES OF AMERICA,          CASE NO: 2:10-CR-0061-LKK

            Plaintiff,                 **DEFENDANT'S MEMORANDUM
12                                      REGARDING RONDA ROAD
                                        PROPERTY TO BE POSTED AS
13      v.                              COLLATERAL FOR PERSONAL
                                        SURETY BOND**
    FREDERICK SCOTT SALYER,
14
            Defendant.
15

16                              /

17

18       As contemplated by the Court's release order filed March 25, 2010, at

19  paragraphs 16 and 17, the defendant has provided the government with copies of

20  the required personal surety bond in the amount of $6,000,000 for its review and

21  also provided the government with a title report and appraisal for the home.[1]

22       The bond, as ordered, is secured by the defendant's and his daughters'

23  interests in the Ronda Road home (as reflected in the Deeds of Trusts previously

24  reviewed by the government).  The defendant has since secured the signatures

25  necessary for the filing and recording of these bail documents, including that of the

26  defendant and his daughters' Trustee on the Deeds of Trust and has recorded the

27  _____

28       [1] The Ninth Circuit has denied the government's emergency motion for stay of
the release order.

                                     1

1  notarized Deeds of Trust in Monterey County.[2]

2  The $300,000 cash bail, in the form of cashier's check payable to the Clerk of

3  the Court, has been deposited with the Clerk of the Court, as has the defendant's

4  passport and pilots licenses.  The Third Party Custody agreement executed by Ms.

5  Lynne Lintz is ready to file with the Court.  Similarly, the defendant has executed a

6  waiver of extradition and agreement to be tried and sentenced in absentia.

7  In its order of this date (Docket No. 61), the Court required that the defendant

8  must demonstrate that he can post the Ronda Road despite a lis pendens

9  apparently filed against the property by the defendant's former wife.[3]  As a matter of

10  law, nothing precludes him from doing so.

11  A "lis pendens'" is a common-law and statutory doctrine which has the effect

12  of providing constructive notice to the world of an alleged claim of a lien or an

13  interest in property.  It is not the equivalent of an injunction, nor does it formally

14  restrain the sale, conveyance, or purchase of the property subject to the lis pendens

15  or otherwise impress the affected property with a lien.  Rather, a lis pendens merely

16  binds third parties with notice that any interest they may acquire in property pending

17  litigation may be subject to the outcome of the action.  As the Ninth Circuit Court of

18  Appeals has aptly explained, applying California law:

19  While the purpose and ultimate effect of a lis pendens resemble those
of a preliminary injunction, a lis pendens and a preliminary injunction are
20  dissimilar in important respects.  A preliminary injunction absolutely
forbids the relevant parties from selling the subject property, and is
21  backed by the sanction of contempt.  A lis pendens, on the other hand,
does not absolutely forbid the sale of the subject property.  Rather, the
22  recording of a lis pendens merely gives potential purchasers
constructive notice of the pending proceedings ensuring that anyone
23  "who acquires an interest in the property takes subject to any judgment
that may be rendered therein." [citation omitted.]

24
*Orange County v. Hong Kong and Shanghai Banking Corp., Ltd.*, 52 F.2d 821, 825
25

26  [2] Copies of the Deeds of Trust, as recorded and ready for filing with the Court,
are attached as Exhibit A.
27

28  [3] As the Preliminary Title Report for the property indicates, the lis pendens is not
reflected therein.  Exhibit B.

2

1 │ (9th Cir. 1995).

2 │      The mere filing of a lis pendens does not diminish its use or efficacy as

3 │ collateral for the defendant's bail, or otherwise prohibit the defendant from posting

4 │ the property, which belongs to his daughters' trusts.   *Head v. Crawford*, 156

5 │ Cal.App.3d 11 (1984) (Court found that a lis pendens filed by a wife in a dissolution

6 │ proceeding post-separation did not defeat her former husband's ability to encumber

7 │ the community property as collateral for a bail bond).

8 │ **Conclusion**

9 │      The defendant respectfully submits that the Ronda Road property may

10 │ properly serve as collateral for his bail as provided by the Court's release order.[4]

11 │

12 │           Respectfully submitted,

13 │ Dated:   March 29, 2010      **SEGAL & KIRBY LLP**

14 │

15 │         BY:    /s/ Malcolm S. Segal
   │             MALCOLM S. SEGAL

16 │             Attorneys for Defendant
   │             FREDERICK SCOTT SALYER

17 │

---

26 │    [4] Should the Court determine to limit the use of the Ronda Road property as
27 │ collateral, the defendant requests that the Court permit its use but add one or more of
   │ the additional conditions proposed by the defendant, including on site physical
28 │ surveillance.

Defendant's Memorandum Regarding Ronda Road Property

# EXHIBIT A

Stephen L. Vagnini     CRDAWN
Monterey County Recorder    3/29/2010
Recorded at the request of    9:04:53
**Filer**

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

NAME   Clerk, Eastern District of California

ADDRESS   501 I Street

CITY & STATE   Sacramento, CA 95814

Title Order No. _____ Escrow No. _____

**DOCUMENT: 2010017265**

| Titles: 1/ Pages: | |
|---|---|
| Fees.... | 19.00 |
| Taxes... | |
| Other ... | 16.00 |
| AMT PAID | $35.00 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST

This DEED OF TRUST, made 26th day of March, 2010                         , between

Frederick Scott Salyer, individually and as Trustee of The Scott Salyer Revocable Trust,        herein called TRUSTOR,

whose address is   3908 Ronda Road, Pebble Beach, California 93953

                     (Number and Street)               (City)              (State)         (Zip Code)

CHICAGO TITLE COMPANY, a California Corporation, herein called TRUSTEE, United States District Court, and

Clerk, Eastern District of California                          herein called BENEFICIARY.

Trustor irrevocably grants, transfers and assigns to Trustee in Trust, With Power of Sale that property in

                     County of Monterey            , California, described as:

As set forth in Exhibit "A" attached hereto and made a part hereof, comprising one (1) page.

Together with rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the purpose of Security (1) payment of the Sum of   $5,700,000.00              with interest thereon according to the terms of one Appearance Bond in USA v. Salyer, 2:10-CR-0061 LKK            of even data herewith made by Trustor, payable to the order of Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of Trustor incorporated by reference or contained herein or reciting it is so secured; (3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by the Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A of that certain Fictitious Deed of Trust referenced herein, and it is mutually agreed that all of the provisions set forth in subdivision B of that certain Fictitious Deed of Trust recorded in the book and page of the Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BO OK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 958 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 71-10-26 | 615 | Sonoma | 2057 | 427 |
| Calveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernardino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolomne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 396 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego Series 5 Book 1964, Page 149774 | | | | | |

T 365 Legal (10-05) Page 1 of 4

shall inure to and bind the parties hereto, with respect to the property above described. Said agreements, terms and provisions contained in said subdivisions A and B, (identical in all counties, and printed on the reverse side hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge therefor does not exceed the maximum allowed by law.

The foregoing assignment of rents is absolute unless initialed here, in which case, the assignment serves as additional security.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address herein before set forth.

STATE OF CALIFORNIA

COUNTY OF _SACRAMENTO_ } S.S.

On _MARCH 28, 2010_ before me,
_ROBERT B PYE_
a Notary Public in and for said County and State, personally appeared

_FREDERICK SCOTT SALYER_

proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed this instrument.

I certify under PENALTY OF PERJURY under the laws of the state of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _[signature]_

Signature of Trustor

_[signature]_
FREDERICK   SCOTT SALYER

ROBERT B. PYE
Commission # 1788495
Notary Public - California
Sacramento County
My Comm. Expires Aug 28, 2011

(This area for official notarial seal)

Exhibit A To Deed Of Trust
For Appearance Bond
*United States v. Frederick Scott Salyer* – 10-CR-061 LKK


APN 008-234-041-000, which currently has the address of 3903 Ronda Road, Pebble Beach, California 93593, and whose legal description in as follows:

"The land referred to herein is situated in the State of California, County of Monterey, Unincorporated Area, and described as follows:

Beginning at a point distant 70.58 feet South and 633.83 feet West from Monument 3323, as said monument is delineated and so designated on that certain map entitled "Licensed Surveyor's Map of el Pescadero and Point Pinos Ranchos", etc. filed for record January 12, 1922 in Volume 3 of Surveys at Page 3, Records of Monterey County, California and running thence.

1.   North 69 degrees 00' West 167.22 feet; thence

2.   Tangentially Northwesterly along the area of a circular curve to the right (the center of which bears North 21 degrees 00' East 200 feet distant) for a distance of 75.22 feet; thence

3.   Tangentially North 47 degrees 27' West 60.00 feet; thence

4.   North 30 degrees 20' East 180.68 feet; thence

5.   North 44 degrees 00' 10" East 96.24 feet; thence

6.   South 43 degrees 40' 35" East 268.53 feet; thence

7.   South 25 degrees 00' West 188.49 feet to the point of beginning, and being a portion of El Pescadero, Monterey County, California

As described in Certificate of Compliance recorded August 28, 1991 in Reel 2686 of Official Records at Page 548."

# NOTARY SEAL
## GOVERNMENT CODE SECTION 27361.7

I certify under penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of Notary _____ ROBERT B PYE _____

Commission Number _____ 1763496 _____

Date Commission Expires _____ AUG 25 2011 _____

Place of Execution _____ SACRAMENTO _____ Date MARCH 28, 2010

Signed _____

Stephen L. Vagnini     CRDAWN
Monterey County Recorder    3/29/2010
Recorded at the request of    9:04:53
**Filer**



RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

NAME   Clerk, Eastern District of California

ADDRESS   501 I Street

CITY & STATE   Sacramento, California 95814

Title Order No. _____ Escrow No. _____

DOCUMENT: **2010017264** | Titles: 1/ Pages:

| | |
|---|---|
| Fees.... | 16.00 |
| Taxes... | |
| Other... | 12.00 |
| AMT PAID | $28.00 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

## DEED OF TRUST

This DEED OF TRUST, made this 26th day of March, 2010,           , between

The SAS 2007 Trust, Robert Pruett, Trustee,           herein called TRUSTOR,

whose address is   2593 Gillian Court, Pleasanton, California 94566

      (Number and Street)          (City)          (State)          (Zip Code)

CHICAGO TITLE COMPANY, a California Corporation, herein called TRUSTEE, United States District Court, and

Clerk, Eastern District of California           herein called BENEFICIARY;

Trustor irrevocably grants, transfers and assigns to Trustee in Trust, With Power of Sale that property in

          County of Monterey           , California, described as:

as set forth in Exhibit "A" attached hereto and made a part hereof, comprising one (1) page.

Together with rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the purpose of Security (1) payment of the Sum of $5,700,000.00        with interest thereon according to the terms of one Appearance Bond in USA v. Salyer, 2:10-CR-0061 LKK        of even date herewith made by Trustor, payable to the order of Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of Trustor incorporated by reference or contained herein or reciting it is so secured; (3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A of that certain Fictitious Deed of Trust referenced herein, and it is mutually agreed that all of the provisions set forth in subdivision B of that certain Fictitious Deed of Trust recorded in the book and page of the Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 3 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 71-10-26 | 615 | Sonoma | 2067 | 427 |
| Calveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Coluse | 323 | 391 | Marin | 1849 | 122 | San Bernadino | 6213 | 768 | Sutter | 855 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2065 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego Series 5 Book 1964, Page 149774 | | | | | |

T 365 Legal (12-03) Page 1 of 4

shall inure to and bind the parties hereto, with respect to the property above described. Said agreements, terms and provisions contained in said subdivisions A and B, (identical in all counties, and printed on the reverse side hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge thereof does not exceed the maximum allowed by laws.

~~Request~~   The foregoing assignment of rents is absolute unless initiated here, in which case, the assignment serves as additional security.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address herein before set forth.

STATE OF CALIFORNIA

COUNTY OF _Alameda_ } S.S.

On _26th March. 2010_ before me,

_Sandeep Shah_

a Notary Public in and for said County and State, personally appeared

_Robert Pruett_

WHO

proved to me on the basis of satisfactory evidence to be the person(s) who name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature/s on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed this instrument.

I certify under PENALTY of PERJURY under the laws of the state of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _Sandeep Shah_

Signature of Trustor

_ROBERT PRUETT_

_TRUSTEE OF THE SAS 2007 TRUST_

SANDEEP SHAH
COMM. # 1850903
NOTARY PUBLIC • CALIFORNIA
ALAMEDA COUNTY
My commission expires MAY 24, 2013

(This area for official notarial seal)

Exhibit A To Deed Of Trust
For Appearance Bond
*United States v. Frederick Scott Salyer – 10-CR-061 LKK*

APN 008-234-041-000, which currently has the address of 3903 Ronda Road, Pebble Beach, California 93593, and whose legal description in as follows:

"The land referred to herein is situated in the State of California, County of Monterey, Unincorporated Area, and described as follows:

Beginning at a point distant 70.58 feet South and 633.83 feet West from Monument 3323, as said monument is delineated and so designated on that certain map entitled "Licensed Surveyor's Map of el Pescadero and Point Pinos Ranchos", etc. filed for record January 12, 1922 in Volume 3 of Surveys at Page 3, Records of Monterey County, California and running thence.

1.   North 69 degrees 00' West 167.22 feet; thence

2.   Tangentially Northwesterly along the area of a circular curve to the right (the center of which bears North 21 degrees 00' East 200 feet distant) for a distance of 75.22 feet; thence

3.   Tangentially North 47 degrees 27' West 60.00 feet; thence

4.   North 30 degrees 20' East 180.68 feet; thence

5.   North 44 degrees 00' 10" East 96.24 feet; thence

6.   South 43 degrees 40' 35" East 268.53 feet; thence

7.   South 25 degrees 00' West 188.49 feet to the point of beginning, and being a portion of El Pescadero, Monterey County, California

As described in Certificate of Compliance recorded August 28, 1991 in Reel 2686 of Official Records at Page 548."

Stephen L. Vagnini     CRDAWN
Monterey County Recorder    3/29/2010
Recorded at the request of    9:04:53
**Filer**

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL TO

NAME   Clerk, Eastern District of California

ADDRESS 501 I Street

CITY &   Sacramento, California 95814
STATE

Title Order No. _____ Escrow No. _____

DOCUMENT: **2010017263**   Titles: 1/ Pages:

Fees....   16.00
Taxes...
Other...   12.00
AMT PAID   $28.00

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST

This DEED OF TRUST, made this 26th day of March, 2010 , between

The CGS 2007 Trust, Robert Pruett, Trustee,     herein called TRUSTOR,

whose address is 2593 Gillen Court, Pleasanton, California 94566

(Number and Street)      (City)      (State)      (Zip Code)

CHICAGO TITLE COMPANY, a California Corporation, herein called TRUSTEE, United States District Court, and

Clerk, Eastern District of California        herein called BENEFICIARY,

Trustor irrevocably grants, transfers and assigns to Trustee in Trust, With Power of Sale that property in

County of Monterey        , California, described as:

as set forth in Exhibit "A" attached hereto and made a part hereof, comprising one (1) page.

Together with rents, issues and profits thereof, subject, however, to the right, power and authority hereinafter given to and conferred upon Beneficiary to collect and apply such rents, issues and profits.

For the purpose of Security (1) payment of the Sum of $5,700,000.00      with interest thereon according to the terms of one Appearance Bond in USA v. Salyer, 2:10-CR-0061 LKK      of even date herewith made by Trustor, payable to the order of Beneficiary, and extensions or renewals thereof; (2) the performance of each agreement of Trustor incorporated by reference or contained herein or reciting it is so secured; (3) Payment of additional sums and interest thereon which may hereafter be loaned to Trustor, or his successors or assigns, when evidenced by a promissory note or notes reciting that they are secured by this Deed of Trust.

To protect the security of this Deed of Trust, and with respect to the property above described, Trustor expressly makes each and all of the agreements, and adopts and agrees to perform and be bound by each and all of the terms and provisions set forth in subdivision A of that certain Fictitious Deed of Trust referenced herein, and it is mutually agreed that all of the provisions set forth in subdivision B of that certain Fictitious Deed of Trust recorded in the book and page of the Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, namely:

| COUNTY | BO OK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE | COUNTY | BOOK | PAGE |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Alameda | 1288 | 556 | Kings | 858 | 713 | Placer | 1028 | 379 | Sierra | 38 | 187 |
| Alpine | 2 | 130-31 | Lake | 437 | 110 | Plumas | 166 | 1307 | Siskiyou | 506 | 762 |
| Amador | 133 | 438 | Lassen | 192 | 367 | Riverside | 3778 | 347 | Solano | 1287 | 621 |
| Butte | 1330 | 513 | Los Angeles | T-3878 | 874 | Sacramento | 71-10-25 | 615 | Sonoma | 2067 | 427 |
| Calaveras | 185 | 338 | Madera | 911 | 136 | San Benito | 300 | 405 | Stanislaus | 1970 | 56 |
| Colusa | 323 | 391 | Marin | 1849 | 122 | San Bernadino | 6213 | 768 | Sutter | 655 | 585 |
| Contra Costa | 4684 | 1 | Mariposa | 90 | 453 | San Francisco | A-804 | 596 | Tehama | 457 | 183 |
| Del Norte | 101 | 549 | Mendocino | 667 | 99 | San Joaquin | 2855 | 283 | Trinity | 108 | 595 |
| El Dorado | 704 | 635 | Merced | 1660 | 753 | San Luis Obispo | 1311 | 137 | Tulare | 2530 | 108 |
| Fresno | 5052 | 623 | Modoc | 191 | 93 | San Mateo | 4778 | 175 | Tuolumne | 177 | 160 |
| Glenn | 469 | 76 | Mono | 69 | 302 | Santa Barbara | 2066 | 881 | Ventura | 2607 | 237 |
| Humboldt | 801 | 83 | Monterey | 357 | 239 | Santa Clara | 6626 | 664 | Yolo | 769 | 16 |
| Imperial | 1189 | 701 | Napa | 704 | 742 | Santa Cruz | 1638 | 607 | Yuba | 398 | 693 |
| Inyo | 165 | 672 | Nevada | 363 | 94 | Shasta | 800 | 633 | | | |
| Kern | 3756 | 690 | Orange | 7182 | 18 | San Diego Series 5 Book 1964, Page 149774 | | | | | |

T 309 Legal (12-93) Page 1of 4

shall inure to and bind the parties hereto, with respect to the property above described. Said agreements, terms and provisions contained in said subdivisions A and B, (identical in all counties, and printed on the reverse side hereof) are by the within reference thereto, incorporated herein and made a part of this Deed of Trust for all purposes as fully as if set forth at length herein, and Beneficiary may charge for a statement regarding the obligation secured hereby, provided the charge thereof does not exceed the maximum allowed by law.

~~RELEASE~~ The foregoing assignment of rents is absolute unless initialed here, in which case, the assignment serves as additional security.

The undersigned Trustor, requests that a copy of any notice of default and any notice of sale hereunder be mailed to him at his address herein before set forth.

STATE OF CALIFORNIA

COUNTY OF _Alameda_                                    } s.s.

On _26th March 2010_                      before me,

_SandeepShah_ ———————

a Notary Public in and for said County and State, personally appeared

_Robert Pruett_ ———————

WHO
proved to me on the basis of satisfactory evidence
to be the person(s) who name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed
the same in his/her/their authorized capacity(ies), and that by his/her/their
signature(s) on the instrument the person(s), or the entity upon behalf
of which the person(s) acted, executed this instrument.

I certify under PENALTY of PERJURY under the laws of the State of
California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal

Signature _Sandeep Shah_

Signature of Trustor

_ROBERT PRUETT_
_TRUSTEE OF THE CGS 2007 TRUST_

SANDEEP SHAH
COMM. # 1859903
NOTARY PUBLIC • CALIFORNIA
ALAMEDA COUNTY
My commission expires MAY 24, 2013

(This area for official notarial seal)

Exhibit A To Deed Of Trust
For Appearance Bond
*United States v. Frederick Scott Salyer* – 10-CR-061 LKK

APN 008-234-041-000, which currently has the address of 3903 Ronda Road, Pebble Beach, California 93593, and whose legal description in as follows:

"The land referred to herein is situated in the State of California, County of Monterey, Unincorporated Area, and described as follows:

Beginning at a point distant 70.58 feet South and 633.83 feet West from Monument 3323, as said monument is delineated and so designated on that certain map entitled "Licensed Surveyor's Map of el Pescadero and Point Pinos Ranchos", etc. filed for record January 12, 1922 in Volume 3 of Surveys at Page 3, Records of Monterey County, California and running thence.

1.    North 69 degrees 00' West 167.22 feet; thence

2.    Tangentially Northwesterly along the area of a circular curve to the right (the center of which bears North 21 degrees 00' East 200 feet distant) for a distance of 75.22 feet; thence

3.    Tangentially North 47 degrees 27' West 60.00 feet; thence

4.    North 30 degrees 20' East 180.68 feet; thence

5.    North 44 degrees 00' 10" East 96.24 feet; thence

6.    South 43 degrees 40' 35" East 268.53 feet; thence

7.    South 25 degrees 00' West 188.49 feet to the point of beginning, and being a portion of El Pescadero, Monterey County, California

As described in Certificate of Compliance recorded August 28, 1991 in Reel 2686 of Official Records at Page 548."

# EXHIBIT B



**Sotheby's**
INTERNATIONAL REALTY

**Nick Glaser**
831.622.4844
nick.glaser@sothebysrealty.com

**Tina Wilkinson**
831.622.4843
tina.wilkinson@sothebysrealty.com

**Greg Falge**
831.622.4884
greg.falge@sothebysrealty.com

March 26, 2010

Stephen P. Goldman
Collins and Associates
PO Box 192955
San Francisco, CA 94119

Regarding: 3903 Ronda Road

Dear Stephen,

After reviewing what recently has sold in Pebble Beach here is where I feel
the value of the property located at 3903 Ronda Road is. This is based on its
location, lot size, the interior finishes, landscape and large ocean views. In
the last year there have been 2 properties that are closest to comparison with
the subject property, they range in value from $4,175,000-$7,795,000 (I
have attached these for your review).

Based on the square footage, location, lot size and ocean view I feel the
value of the subject property is just under $6,000,000 ($5,700,000-
$5,900,000).

If you or anyone else has addition questions please feel free to contact me.


Sincerely,


Nick Glaser  (DRE#01190153)
831.596.0573
831.622.4844
Email: nick.glaser@sothebyshomes.com


200 Clocktower Place Suite 100D  •  Carmel, California 93923  •  Fax 831.622.4890  •  www.3.mpsir.com

Sotheby's International Realty, Inc. is Owned and Operated by NRT Incorporated.

Order Number: **2710-3343454**
Page Number: 1

**Amended**



# First American Title Company

### 3855 Via Nona Marie, Suite 100
### Carmel, CA 93923

Escrow Officer:          Christine Chin  (CC)
Phone:                   (831)620-6521
Fax No.:                 (866)548-0051
E-Mail:                  cchin@firstam.com
Owner:
Property:                3903 Ronda Road
                         Pebble Beach, CA 93953

## PRELIMINARY REPORT

In response to the above referenced application for a policy of title insurance, this company hereby reports that it is prepared to issue, or cause to be issued, as of the date hereof, a Policy or Policies of Title Insurance describing the land and the estate or interest therein hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an Exception below or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations of said Policy forms.

The printed Exceptions and Exclusions from the coverage and Limitations on Covered Risks of said policy or policies are set forth in Exhibit A attached. *The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than that set forth in the arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties.* Limitations on Covered Risks applicable to the CLTA and ALTA Homeowner's Policies of Title Insurance which establish a Deductible Amount and a Maximum Dollar Limit of Liability for certain coverages are also set forth in Exhibit A. Copies of the policy forms should be read. They are available from the office which issued this report.

**Please read the exceptions shown or referred to below and the exceptions and exclusions set forth in Exhibit A of this report carefully. The exceptions and exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects, and encumbrances affecting title to the land.**

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby. If it is desired that liability be assumed prior to the issuance of a policy of title insurance, a Binder or Commitment should be requested.

*First American Title*

Order Number:  **2710-3343454**
Page Number:  2


Dated as of July 22, 2009 at 7:30 A.M.

The form of Policy of title insurance contemplated by this report is:

> To Be Determined

> A specific request should be made if another form or additional coverage is desired.

Title to said estate or interest at the date hereof is vested in:

> GERARD ROSE, TRUSTEE OF THE SAS 2007 TRUST, AN UNDIVIDED 50% INTEREST AND
> GERARD ROSE, TRUSTEE OF THE CGS 2007 TRUST, AN UNDIVIDED 50% INTEREST

The estate or interest in the land hereinafter described or referred to covered by this Report is:

> A fee.

The Land referred to herein is described as follows:

(See attached Legal Description)

At the date hereof exceptions to coverage in addition to the printed Exceptions and Exclusions in said policy form would be as follows:

1.  General and special taxes and assessments for the fiscal year 2009-2010, a lien not yet due or payable.

2.  Supplemental taxes for the year 2008-2009 assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

    | | |
    |---|---|
    | First Installment: | $945.22, DUE |
    | Penalty: | $0.00 |
    | Second Installment: | $945.22, DUE |
    | Penalty: | $0.00 |
    | Tax Rate Area: | 060-001 |
    | A. P. No.: | 008-234-041-000 |

3.  The lien of supplemental taxes, if any, assessed pursuant to Chapter 3.5 commencing with Section 75 of the California Revenue and Taxation Code.

4.  Any and all offers of dedication, conditions, restrictions, easements, fenceline/boundary discrepancies, notes and/or provisions shown or disclosed by the filed or recorded map referred to in the legal description.


*First American Title*

Order Number: **2710-3343454**
Page Number: 3

5.    Covenants, conditions, restrictions and easements in the document recorded FEBRUARY 25, 1971
      as BOOK 688, PAGE 808 of Official Records, which provide that a violation thereof shall not
      defeat or render invalid the lien of any first mortgage or deed of trust made in good faith and for
      value, but deleting any covenant, condition or restriction indicating a preference, limitation or
      discrimination based on race, color, religion, sex, handicap, familial status, national origin, sexual
      orientation, marital status, ancestry, source of income or disability, to the extent such covenants,
      conditions or restrictions violate Title 42, Section 3604(c), of the United States Codes or
      applicable state law. Lawful restrictions under state and federal law on the age of occupants in
      senior housing or housing for older persons shall not be construed as restrictions based on
      familial status.

      SAID RESTRICTIONS PROVIDE FOR REVERSION OF TITLE IN THE EVENT OF A VIOLATION
      THEREOF. IN CONNECTION WITH THE ABOVE WE NOTE A " NOTICE OF INTENT TO PRESERVE
      INTEREST" RECORDED DECEMBER 9, 1987 IN REEL 2176, PAGE 270, OFFICIAL RECORDS.

6.    The terms and provisions contained in the document entitled "AGREEMENT" recorded MAY 11,
      1988 as BOOK 2227, PAGE 445 of Official Records.

7.    A deed of trust to secure an original indebtedness of $3,500,000.00 recorded NOVEMBER 04,
      2008 as INSTRUMENT NO. 2008072620 of Official Records.
      Dated:          AUGUST 21, 2008
      Trustor:        GERARD ROSE, TRUSTEE OF THE SAS 2007 TRUST
      Trustee:        STEWART TITLE OF SACRAMENTO, A CALIFORNIA
                      CORPORATION
      Beneficiary:    SCOTT SALYER, AS TRUSTEE OF THE SCOTT SALYER
                      REVOCABLE TRUST, DATED JULY 9, 1984

      Notes:
      a. If this deed of trust is to be eliminated in the policy or policies contemplated by this
      report/commitment, we will require all of the following prior to the recordation of any documents
      or the issuance of any policy of title insurance:
      i. Original note and deed of trust.
      ii. Payoff demand statement signed by all present beneficiaries.
      iii. Request for reconveyance signed by all present beneficiaries.
      b. If the payoff demand statement or the request for reconveyance is to be signed by a servicer,
      we will also require a full copy of the loan servicing agreement executed by all present
      beneficiaries.
      c. If any of the beneficial interest is presently held by trustees under a trust agreement, we will
      require a certification pursuant to Section 18500.5 of the California Probate Code in a form
      satisfactory to the Company

8.    A deed of trust to secure an original indebtedness of $3,500,000.00 recorded NOVEMBER 04,
      2008 as INSTRUMENT NO. 2008072622 of Official Records.
      Dated:          AUGUST 21, 2008
      Trustor:        GERARD ROSE, TRUSTEE OF THE CGS REVOCABLE TRUST
      Trustee:        STEWART TITLE OF SACRAMENTO, A CALIFORNIA
                      CORPORATION
      Beneficiary:    SCOTT SALYER, AS TRUSTEE OF THE SCOLL SALYER
                      REVOCABLE TRUST, DATED JULY 9, 1984

*First American Title*

Order Number:  **2710-3343454**
Page Number:  4

Notes:

a. If this deed of trust is to be eliminated in the policy or policies contemplated by this report/commitment, we will require all of the following prior to the recordation of any documents or the issuance of any policy of title insurance:

i. Original note and deed of trust.

ii. Payoff demand statement signed by all present beneficiaries.

iii. Request for reconveyance signed by all present beneficiaries.

b. If the payoff demand statement or the request for reconveyance is to be signed by a servicer, we will also require a full copy of the loan servicing agreement executed by all present beneficiaries.

c. If any of the beneficial interest is presently held by trustees under a trust agreement, we will require a certification pursuant to Section 18500.5 of the California Probate Code in a form satisfactory to the Company

*First American Title*

Order Number:  2710-3343454
Page Number:  5

**INFORMATIONAL NOTES**

Note: The policy to be issued may contain an arbitration clause. When the Amount of Insurance is less than the certain dollar amount set forth in any applicable arbitration clause, all arbitrable matters shall be arbitrated at the option of either the Company or the Insured as the exclusive remedy of the parties. If you desire to review the terms of the policy, including any arbitration clause that may be included, contact the office that issued this Commitment or Report to obtain a sample of the policy jacket for the policy that is to be issued in connection with your transaction.

1.      General and special taxes and assessments for the fiscal year 2008-2009.

|  |  |
|---|---|
| First Installment: | $34,884.71, PAID |
| Penalty: | $0.00 |
| Second Installment: | $34,884.71, PAID |
| Penalty: | $0.00 |
| Tax Rate Area: | 060-001 |
| A. P. No.: | 008-234-041-000 |

2.      This report is preparatory to the issuance of an ALTA Loan Policy. We have no knowledge of any fact which would preclude the issuance of the policy with CLTA endorsement forms 100 and 116 and if applicable, 115 and 116.2 attached.

When issued, the CLTA endorsement form 116 or 116.2, if applicable will reference a(n) Single Family Residence known as 3903 Ronda Road, Pebble Beach, California.

3.      According to the public records, there has been no conveyance of the land within a period of twenty four months prior to the date of this report, except as follows:

A document recorded SEPTEMBER 10, 2007  as INSTRUMENT NO. 2007070145 of Official Records.
From:   BLACKSTONE RANCH, A CALIFORNIA
To:      SCOTT SALYER, TRUSTEE OF THE SCOTT SALYER REVOCABLE TRUST, DATED JULY 9, 1984

A document recorded NOVEMBER 04, 2008  as INSTRUMENT NO. 2008072619 of Official Records.
From:   SCOTT SALYER, AS TRUSTEE OF THE SCOTT SALYER REVOCABLE TRUST, DATED JULY 9, 1984
To:      GERARD ROSE, TRUSTEE OF THE SAS 2007 TRUST, AN UNDIVIDED 50% INTEREST

*First American Title*

Order Number: **2710-3343454**
Page Number: 6

A document recorded NOVEMBER 04, 2008  as INSTRUMENT NO. 2008072621 of Official
Records.

From:  SCOTT SALYER, AS TRUSTEE OF THE SCOTT SALYER REVOCABLE
       TRUST, DATED JULY 9, 1984
To:    GERARD ROSE, TRUSTEE OF THE CGS 2007 TRUST, AN UNDIVIDED
       50% INTEREST

The map attached, if any, may or may not be a survey of the land depicted hereon. First American
expressly disclaims any liability for loss or damage which may result from reliance on this map except to
the extent coverage for such loss or damage is expressly provided by the terms and provisions of the title
insurance policy, if any, to which this map is attached.

*First American Title*

Order Number: **2710-3343454**
Page Number:  7

## LEGAL DESCRIPTION

Real property in the unincorporated area of the County of Monterey, State of California, described as follows:

BEGINNING AT A POINT DISTANT 70.08 FEET SOUTH AND 633.83 FEET WEST FROM MONUMENT 3323, AS SAID MONUMENT IS DELINEATED AND SO DESIGNATED ON THAT CERTAIN MAP ENTITLED MAP ENTITLED, "LICENSED SURVEYOR'S MAP OF EL PESCADERO AND POINT PINOS RANCHOS", ETC., FILED FOR RECORD JANUARY 12, 1922 IN VOLUME 3 OF SURVEYS AT PAGE 3, RECORDS OF MONTEREY COUNTY, CALIFORNIA, AND RUNNING THENCE.

(1) NORTH 69º 00' WEST 167.22 FEET; THENCE

(2) TANGENTIALLY NORTHWESTERLY ALONG THE ARC OF A CIRCULAR CURVE TO THE RIGHT (THE CENTER OF WHICH BEARS NORTH 21º 00' EAST 200 FEET DISTANT) FOR A DISTANCE OF 75.22 FEET; THENCE

(3) TANGENTIALLY NORTH 47º 27' WEST 60.00 FEET; THENCE

(4) NORTH 30º 20' EAST 180.68 FEET; THENCE

(5) NORTH 44º 00' 10" EAST 96.24 FEET; THENCE

(6) SOUTH 43º 40' 35" EAST 268.53 FEET; THENCE

(7) SOUTH 25º 00' WEST 188.49 FEET TO THE POINT OF BEGINNING, AND BEING A PORTION OF RANCHO EL PESCADERO, MONTEREY COUNTY, CALIFORNIA.

AS DESCRIBED IN CERTIFICATE OF COMPLIANCE RECORDED AUGUST 28, 1991 IN REEL 2686 OF OFFICIAL RECORDS AT PAGE 548.

APN: 008-234-041-000

*First American Title*

Order Number: 2710-3343454
Page Number: 8



First American Title

Order Number:  2710-3343454
Page Number:  9

## *NOTICE*

Section 12413.1 of the California Insurance Code, effective January 1, 1990, requires that any title insurance company, underwritten title company, or controlled escrow company handling funds in an escrow or sub-escrow capacity, wait a specified number of days after depositing funds, before recording any documents in connection with the transaction or disbursing funds. This statute allows for funds deposited by wire transfer to be disbursed the same day as deposit. In the case of cashier's checks or certified checks, funds may be disbursed the next day after deposit. In order to avoid unnecessary delays of three to seven days, or more, please use wire transfer, cashier's checks, or certified checks whenever possible.

If you have any questions about the effect of this new law, please contact your local First American Office for more details.

*First American Title*

Order Number: **2710-3343454**
Page Number: 10

EXHIBIT A
LIST OF PRINTED EXCEPTIONS AND EXCLUSIONS (BY POLICY TYPE)

1. CALIFORNIA LAND TITLE ASSOCIATION STANDARD COVERAGE POLICY - 1990
SCHEDULE B

EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:
1.   Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records. Proceedings by a public agency which may result in taxes or assessments, or notice of such proceedings, whether or not shown by the records of such agency or by the public records.
2.   Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of the land or which may be asserted by persons in possession thereof.
3.   Easements, liens or encumbrances, or claims thereof, which are not shown by the public records.
4.   Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by the public records.
5.   (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the public records.

EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:
1.   (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
     (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2.   Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3.   Defects, liens, encumbrances, adverse claims or other matters:
     (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
     (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
     (c) resulting in no loss or damage to the insured claimant;
     (d) attaching or created subsequent to Date of Policy; or
     (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage or for the estate or interest insured by this policy.
4.   Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with applicable "doing business" laws of the state in which the land is situated.
5.   Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6.   Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by their policy or the transaction creating the interest of the insured lender, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws.

2. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY FORM B - 1970
SCHEDULE OF EXCLUSIONS FROM COVERAGE

1.   Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a reduction in the dimensions or area of the land, or the effect of any violation of any such law, ordinance or governmental regulation.
2.   Rights of eminent domain or governmental rights of police power unless notice of the exercise of such rights appears in the public records at Date of Policy.
3.   Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder; (c) resulting in no loss or damage to the insured claimant; (d) attaching or

*First American Title*

Order Number:  **2710-3343454**
Page Number:  11

created subsequent to Date of Policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

### 3.  AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY FORM B – 1970
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 2 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage by reason of the matters shown in parts one and two following:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3.  Easements, claims of easement or encumbrances which are not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.
5.  Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.  Any lien, or right to a lien, for services, labor or material heretofore or hereafter furnished, imposed by law and not shown by the public records.

### 4. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY – 1970
### WITH A.L.T.A. ENDORSEMENT FORM 1 COVERAGE
### SCHEDULE OF EXCLUSIONS FROM COVERAGE

1.  Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a reduction in the dimensions or area of the land, or the effect of any violation of any such law ordinance or governmental regulation.
2.  Rights of eminent domain or governmental rights of police power unless notice of the exercise of such rights appears in the public records at Date of Policy.
3.  Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant, (b) not known to the Company and not shown by the public records but known to the insured claimant either at Date of Policy or at the date such claimant acquired an estate or interest insured by this policy or acquired the insured mortgage and not disclosed in writing by the insured claimant to the Company prior to the date such insured claimant became an insured hereunder, (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to Date of Policy (except to the extent insurance is afforded herein as to any statutory lien for labor or material or to the extent insurance is afforded herein as to assessments for street improvements under construction or completed at Date of Policy).
4.  Unenforceability of the lien of the insured mortgage because of failure of the insured at Date of Policy or of any subsequent owner of the indebtedness to comply with applicable "doing business" laws of the state in which the land is situated.

### 5. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY – 1970
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association Lenders Policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy, the exclusions set forth in paragraph 4 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage by reason of the matters shown in parts one and two following:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3.  Easements, claims of easement or encumbrances which are not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.
5.  Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.  Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

*First American Title*

Order Number: **2710-3343454**
Page Number:  12

### 6. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1992
### WITH A.L.T.A. ENDORSEMENT FORM 1 COVERAGE
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.      (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement now or hereafter erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy;
        (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2.      Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3.      Defects, liens, encumbrances, adverse claims, or other matters:
        (a) whether or not recorded in the public records at Date of Policy, but created, suffered, assumed or agreed to by the insured claimant;
        (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
        (c) resulting in no loss or damage to the insured claimant;
        (d) attaching or created subsequent to Date of Policy (except to the extent that this policy insures the priority of the lien of the insured mortgage over any statutory lien for services, labor or material or the extent insurance is afforded herein as to assessments for street improvements under construction or completed at date of policy); or
        (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the insured mortgage.
4.      Unenforceability of the lien of the insured mortgage because of the inability or failure of the insured at Date of Policy, or the inability or failure of any subsequent owner of the indebtedness, to comply with the applicable "doing business" laws of the state in which the land is situated.
5.      Invalidity or unenforceability of the lien of the insured mortgage, or claim thereof, which arises out of the transaction evidenced by the insured mortgage and is based upon usury or any consumer credit protection or truth in lending law.
6.      Any statutory lien for services, labor or materials (or the claim of priority of any statutory lien for services, labor or materials over the lien of the insured mortgage) arising from an improvement or work related to the land which is contracted for and commenced subsequent to Date of Policy and is not financed in whole or in part by proceeds of the indebtedness secured by the insured mortgage which at Date of Policy the insured has advanced or is obligated to advance.
7.      Any claim, which arises out of the transaction creating the interest of the mortgagee insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
        (i) the transaction creating the interest of the insured mortgagee being deemed a fraudulent conveyance or fraudulent transfer; or
        (ii) the subordination of the interest of the insured mortgagee as a result of the application of the doctrine of equitable subordination; or
        (iii) the transaction creating the interest of the insured mortgagee being deemed a preferential transfer except where the preferential transfer results from the failure:
        (a) to timely record the instrument of transfer; or
        (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

### 7. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 1992
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 6 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.      Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.      Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3.      Easements, claims of easement or encumbrances which are not shown by the public records.
4.      Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.
5.      Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.      Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

### 8. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 1992

*First American Title*

Order Number: **2710-3343454**
Page Number: 13

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.  (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning laws, ordinances, or regulations) restricting, regulating, prohibiting or relating to (i) the occupancy, use, or enjoyment of the land; (ii) the character, dimensions or location of any improvement erected on the land; (iii) a separation in ownership or a change in the dimensions or area of the land or any parcel of which the land is or was a part; or (iv) environmental protection, or the effect of any violation of these laws, ordinances or governmental regulations, except to the extent that a notice of the enforcement thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
    (b) Any governmental police power not excluded by (a) above, except to the extent that a notice of the exercise thereof or a notice of a defect, lien or encumbrance resulting from a violation or alleged violation affecting the land has been recorded in the public records at Date of Policy.
2.  Rights of eminent domain unless notice of the exercise thereof has been recorded in the public records at Date of Policy, but not excluding from coverage any taking which has occurred prior to Date of Policy which would be binding on the rights of a purchaser for value without knowledge.
3.  Defects, liens, encumbrances, adverse claims, or other matters:
    (a) created, suffered, assumed or agreed to by the insured claimant;
    (b) not known to the Company, not recorded in the public records at Date of Policy, but known to the insured claimant and not disclosed in writing to the Company by the insured claimant prior to the date the insured claimant became an insured under this policy;
    (c) resulting in no loss or damage to the insured claimant;
    (d) attaching or created subsequent to Date of Policy; or
    (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.
4.  Any claim, which arises out of the transaction vesting in the insured the estate or interest insured by this policy, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors' rights laws, that is based on:
    (i) the transaction creating the estate or interest insured by this policy being deemed a fraudulent conveyance or fraudulent transfer; or
    (ii) the transaction creating the estate or interest insured by this policy being deemed a preferential transfer except where the preferential transfer results from the failure:
    (a) to timely record the instrument of transfer; or
    (b) of such recordation to impart notice to a purchaser for value or a judgment or lien creditor.

### 9. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY - 1992
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 8 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the public records.
2.  Any facts, rights, interests, or claims which are not shown by the public records but which could be ascertained by an inspection of said land or by making inquiry of persons in possession thereof.
3.  Easements, claims of easement or encumbrances which are not shown by the public records.
4.  Discrepancies, conflicts in boundary lines, shortage in area, encroachments, or any other facts which a correct survey would disclose, and which are not shown by public records.
5.  Unpatented mining claims; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.
6.  Any lien, or right to a lien, for services, labor or material theretofore or hereafter furnished, imposed by law and not shown by the public records.

### 10. AMERICAN LAND TITLE ASSOCIATION RESIDENTIAL
### TITLE INSURANCE POLICY - 1987
### EXCLUSIONS

In addition to the Exceptions in Schedule B, you are not insured against loss, costs, attorneys' fees and expenses resulting from:

1.  Governmental police power, and the existence or violation of any law or government regulation. This includes building and zoning ordinances and also laws and regulations concerning:

    * land use                    * land division
    * improvements on the land     * environmental protection

    This exclusion does not apply to violations or the enforcement of these matters which appear in the public records at Policy Date.
    This exclusion does not limit the zoning coverage described in items 12 and 13 of Covered Title Risks.
2.  The right to take the land by condemning it, unless:

*First American Title*

Order Number: **2710-3343454**
Page Number: 14

* a notice of exercising the right appears in the public records on the Policy Date
* the taking happened prior to the Policy Date and is binding on you if you bought the land without knowing of the taking.
3.  Title Risks:
* that are created, allowed, or agreed to by you
* that are known to you, but not to us, on the Policy Date - unless they appeared in the public records
* that result in no loss to you
* that first affect your title after the Policy Date - this does not limit the labor and material lien coverage in Item 8 of Covered Title Risks
4.  Failure to pay value for your title.
5.  Lack of a right:
* to any land outside the area specifically described and referred to in Item 3 of Schedule A, or
* in streets, alleys, or waterways that touch your land
This exclusion does not limit the access coverage in Item 5 of Covered Title Risks.

### 11. EAGLE PROTECTION OWNER'S POLICY

**CLTA HOMEOWNER'S POLICY OF TITLE INSURANCE - 2008**
**ALTA HOMEOWNER'S POLICY OF TITLE INSURANCE - 2008**

**Covered Risks 16 (Subdivision Law Violation), 18 (Building Permit), 19 (Zoning) and 21 (Encroachment of boundary walls or fences) are subject to Deductible Amounts and Maximum Dollar Limits of Liability**

#### EXCLUSIONS

In addition to the Exceptions in Schedule B, You are not insured against loss, costs, attorneys' fees, and expenses resulting from:

1.  Governmental police power, and the existence or violation of those portions of any law or government regulation concerning:
    a. building                         b. zoning
    c. land use                         d. improvements on the land
    e. land division                    f. environmental protection
    This Exclusion does not limit the coverage described in Covered Risk 8.a., 14, 15, 16, 18, 19, 20, 23 or 27.
2.  The failure of Your existing structures, or any part of them, to be constructed in accordance with applicable building codes. This Exclusion does not limit the coverage described in Covered Risk 14 or 15.
3.  The right to take the Land by condemning it. This Exclusion does not limit the coverage described in Covered Risk 17.
4.  Risks:
    a. that are created, allowed, or agreed to by You, whether or not they are recorded in the Public Records;
    b. that are Known to You at the Policy Date, but not to Us, unless they are recorded in the Public Records at the policy Date;
    c. that result in no loss to You; or
    d. that first occur after the Policy Date - this does not limit the coverage described in Covered Risk 7, 8.e., 25, 26, 27 or 28.
5.  Failure to pay value for Your Title.
6.  Lack of a right:
    a. to any land outside the area specifically described and referred to in paragraph 3 of Schedule A; and
    b. in streets, alleys, or waterways that touch the Land.
    This Exclusion does not limit the coverage described in Covered Risk 11 or 21

#### LIMITATIONS ON COVERED RISKS

Your insurance for the following Covered Risks is limited on the Owner's Coverage Statement as follows: Covered Risk 16, 18, 19 and 21, Your Deductible Amount and Our Maximum Dollar Limit of Liability shown in Schedule A. The deductible amounts and maximum dollar limits shown on Schedule A are as follows:

| Your Deductible Amount | Our Maximum Dollar Limit of Liability |
|---|---|
| Covered Risk 16: 1% of Policy Amount or $5,000.00 (whichever is less) | $10,000.00 |
| Covered Risk 18: 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 19: 1% of Policy Amount or $5,000.00 (whichever is less) | $25,000.00 |
| Covered Risk 21: 1% of Policy Amount or $2,500.00 (whichever is less) | $5,000.00 |

### 12. THIRD GENERATION EAGLE LOAN POLICY AMERICAN LAND TITLE ASSOCIATION EXPANDED COVERAGE RESIDENTIAL LOAN POLICY (1/01/08)

*First American Title*

Order Number: **2710-3343454**
Page Number: 15

## EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to (i) the occupancy, use, or enjoyment of the Land; (ii) the character, dimensions, or location of any improvement erected on the Land; (iii) the subdivision of land; or(iv) environmental protection; or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
(b)Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 5, 6, 13(c), 13(d), 14 or 16.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 16, 17, 18, 19, 20, 21, 22, 23, 24, 27 or 28); or
(e) resulting in loss or damage which would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury, or any consumer credit protection or truth-in-lending law. This Exclusion does not modify or limit the coverage provided in Covered Risk 26.
6. Any claim of invalidity, unenforceability or lack of priority of the lien of the Insured Mortgage as to Advances or modifications made after the Insured has Knowledge that the vestee shown in Schedule A is no longer the owner of the estate or interest covered by this policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching subsequent to Date of Policy. This Exclusion does not modify or limit the coverage provided in Covered Risk 11(b) or 25.
8. The failure of the residential structure, or any portion of it, to have been constructed before, on or after Date of Policy in accordance with applicable building codes. This Exclusion does not modify or limit the coverage provided in Covered Risk 5 or 6.

### 13. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY - 2006
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy, and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

1. (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

(i) the occupancy, use, or enjoyment of the Land;

(ii) the character, dimensions, or location of any improvement erected on the Land;

(iii) the subdivision of land; or

(iv) environmental protection;

or the effect of any violation of these laws, ordinances, or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

(b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
(a) created, suffered, assumed, or agreed to by the Insured Claimant;
(b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors? rights laws, that the transaction creating the lien of the Insured Mortgage, is
(a) a fraudulent conveyance or fraudulent transfer, or

*First American Title*

Order Number: **2710-3343454**
Page Number: 16

(b) a preferential transfer for any reason not stated in Covered Risk 13(b) of this policy.

7.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

### 14. AMERICAN LAND TITLE ASSOCIATION LOAN POLICY – 2006
### WITH REGIONAL EXCEPTIONS

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 13 above are used and the following exceptions to coverage appear in the policy.

### SCHEDULE B

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1.    (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.    Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3.    Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4.    Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5.    (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

### 15. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY – 2006
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses which arise by reason of:

1.    (a) Any law, ordinance, permit, or governmental regulation (including those relating to building and zoning) restricting, regulating, prohibiting, or relating to

        (i) the occupancy, use, or enjoyment of the Land;

        (ii) the character, dimensions, or location of any improvement erected on the Land;

        (iii) the subdivision of land; or

        (iv) environmental protection;or the effect of any violation of these laws, ordinances,  or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.

    (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.

2.    Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.

3.    Defects, liens, encumbrances, adverse claims, or other matters

    (a) created, suffered, assumed, or agreed to by the Insured Claimant;

    (b) not Known to the Company, not recorded in the Public Records at Date of Policy, but Known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

    (c) resulting in no loss or damage to the Insured Claimant;

    (d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risks 9 and 10); or

    (e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.

4.    Any claim, by reason of the operation of federal bankruptcy, state insolvency, or similar creditors? rights laws, that the transaction vesting the Title as shown in Schedule A, is

    (a) a fraudulent conveyance or fraudulent transfer; or

    (b) a preferential transfer for any reason not stated in Covered Risk 9 of this policy.

5.    Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

### 16. AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY – 2006
### WITH REGIONAL EXCEPTIONS

*First American Title*

When the American Land Title Association policy is used as a Standard Coverage Policy and not as an Extended Coverage Policy the exclusions set forth in paragraph 15 above are used and the following exceptions to coverage appear in the policy.

**SCHEDULE B**

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. (a) Taxes or assessments that are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; (b) proceedings by a public agency that may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2. Any facts, rights, interests, or claims that are not shown by the Public Records but that could be ascertained by an inspection of the Land or that may be asserted by persons in possession of the Land.

3. Easements, liens or encumbrances, or claims thereof, not shown by the Public Records.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land and not shown by the Public Records.

5. (a) Unpatented mining claims; (b) reservations or exceptions in patents or in Acts authorizing the issuance thereof; (c) water rights, claims or title to water, whether or not the matters excepted under (a), (b), or (c) are shown by the Public Records.

*First American Title*

## PRIVACY POLICY

**We Are Committed to Safeguarding Customer Information**

In order to better serve your needs now and in the future, we may ask you to provide us with certain information. We understand that you may be concerned about what we will do with such information – particularly any personal or financial information. We agree that you have a right to know how we will utilize the personal information you provide to us. Therefore, together with our parent company, The First American Corporation, we have adopted this Privacy Policy to govern the use and handling of your personal information.

**Applicability**

This Privacy Policy governs our use of the information which you provide to us. It does not govern the manner in which we may use information we have obtained from any other source, such as information obtained from a public record or from another person or entity. First American has also adopted broader guidelines that govern our use of personal information regardless of its source. First American calls these guidelines its *Fair Information Values*, a copy of which can be found on our website at www.firstam.com.

**Types of Information**

Depending upon which of our services you are utilizing, the types of nonpublic personal information that we may collect include:

* Information we receive from you on applications, forms and in other communications to us, whether in writing, in person, by telephone or any other means;

* Information about your transactions with us, our affiliated companies, or others; and

* Information we receive from a consumer reporting agency.

**Use of Information**

We request information from you for our own legitimate business purposes and not for the benefit of any nonaffiliated party. Therefore, we will not release your information to nonaffiliated parties except: (1) as necessary for us to provide the product or service you have requested of us; or (2) as permitted by law. We may, however, store such information indefinitely, including the period after which any customer relationship has ceased. Such information may be used for any internal purpose, such as quality control efforts or customer analysis. We may also provide all of the types of nonpublic personal information listed above to one or more of our affiliated companies. Such affiliated companies include financial service providers, such as title insurers, property and casualty insurers, and trust and investment advisory companies, or companies involved in real estate services, such as appraisal companies, home warranty companies, and escrow companies. Furthermore, we may also provide all the information we collect, as described above, to companies that perform marketing services on our behalf, on behalf of our affiliated companies, or to other financial institutions with whom we or our affiliated companies have joint marketing agreements.

**Former Customers**

Even if you are no longer our customer, our Privacy Policy will continue to apply to you.

**Confidentiality and Security**

We will use our best efforts to ensure that no unauthorized parties have access to any of your information. We restrict access to nonpublic personal information about you to those individuals and entities who need to know that information to provide products or services to you. We will use our best efforts to train and oversee our employees and agents to ensure that your information will be handled responsibly and in accordance with this Privacy Policy and First American's *Fair Information Values*. We currently maintain physical, electronic, and procedural safeguards that comply with federal regulations to guard your nonpublic personal information.

© 2001 The First American Corporation  • All Rights Reserved