1
2
3
4
5
6

7                    IN THE UNITED STATES DISTRICT COURT

8                   FOR THE EASTERN DISTRICT OF CALIFORNIA

9    UNITED STATES OF AMERICA,

10                   Plaintiff,            CR. NO. S-10-0061 LKK [GGH]

11          vs.                           ORDER

12   FREDERICK SCOTT SALYER,

13
                     Defendant.
14   _____/

15   *Introduction and Summary*

16          Defendant, Frederick Scott Salyer, ("Salyer") has made a comprehensive

17   discovery motion in this criminal action.  Salyer lists 87 categories of information, some with

18   sub-categories which he desires produced.  The motion encompasses several themes which will

19   be discussed in detail below.  One theme is – "who is the government" for criminal discovery

20   purposes.  Another appearing from the papers focuses upon the extent to which the government

21   must organize the discovery information it discloses to a defendant along with the timing of

22   discovery disclosures.  A third theme centers on the materiality standard of evidence.  Finally, the

23   fourth major theme is the extent to which a defendant's Fifth or Sixth Amendment rights

24   override express limitations in the discovery rules including work product, in essence, requiring

25   the introduction of civil discovery concepts into criminal law.

26          Salyer's motion is granted in part and denied in part.

                                          1

1    *Background*

2              On April 29, 2010, the United States (government) filed a superseding indictment

3    alleging RICO violations, wire fraud, record keeping destruction et al. involving a federal

4    investigation, conspiracy in restraint of trade and forfeiture counts.  The indictment stems from

5    the government's investigation disclosing (in its view) that Salyer and others associated with the

6    now bankrupt SK Foods for an approximate ten year period: bribed other entity's purchasing

7    managers to obtain contracts for SK products at prices higher than the market would otherwise

8    dictate; caused the shipping of foods which were either misbranded, deficient in quantity, and

9    deficient in quality or all of the above; fixed prices in violation of the Sherman Act.  Finally, the

10   government believes that Salyer obstructed justice in terms of altering corporate records in an

11   attempt to conceal a co-conspirators involvement with SK Foods.  To the extent more substantive

12   factual background is necessary, it will appear in discussions of individual discovery requests.

13             The undersigned is not in possession of any initial written discovery request, and

14   evidently there have been a number of oral demands for discovery made by Salyer.  Given the

15   time period relevant to the investigation, the rather large volume of business undertaken by SK

16   Foods, the implementation of Title III wiretaps, the number of persons who have pleaded guilty

17   already, and the inherent document intensive nature of investigations into business crimes, a

18   great deal of documentary evidence is potentially at issue.  The government, in the words of

19   Salyer, has disclosed discovery "like a restless volcano...periodically spew[ing] forth new

20   discovery"[1] in a massive, disorganized mess.  The exhibits to this discovery motion indicate that

21   the government has produced discovery at various intervals commencing in or about March

22   2010.  The government contends that a defendant should be careful what he periodically asks for,

23   i.e., he is provoking the volcano, in terms of quantity of information requested "helpful to the

24   defense," and that it is under no obligation to prepare defendant's case by organizing the

25   ─────────────────────

26             [1] Adapted from United States v. Graham, 2008 WL 2098044 (S.D. Ohio 2008).

                                                    2

requested volume of information thereby disclosed.[2]   The government further contends, in

essence, that Salyer has mistaken Fed. R. Civ. P. 34 (requests for production in a civil case) with

Fed. R. Crim. P. 16.

The government asserts that it has disclosed:

> every confidential source recording; every wire intercept, every interview report;
> every search warrant inventory, every property receipt, every plea agreement;
> valuable government work product that sorts and analyzes seized records; and all
> business records obtained from third parties....Also available for the defendant's
> inspection and copying are other records seized from SK Foods.  This ruling
> process of production began four days after the Defendant made his Rule 16
> request for discovery.

Opposition at 1-2

***

> The Defendant has received copies of, or has been given access to, all of the
> tangible evidence seized, subpoenaed, or otherwise received in Operation Rotten
> Tomato.  The Defendant has also received copies of Government memoranda,
> witness statements, and impeachment materials sufficient for him to understand
> any defense to the Government's case-in-chief, and even, each substantial step in
> the investigation.

Opposition at 4.

The undersigned will plod through each of the 87 requests with subparts, <u>infra</u>.

The sections which immediately follow will discuss the issue which are germane to adjudicating

each request.

\\\\\

\\\\\

---

[2]  Defense counsel seems to make the argument, as he has in previous appearances, that
from a due process standpoint, the case is "too big to try" because of the impossibility of
reviewing all information already provided by the government, especially given Salyer's
incarcerated status.  Then, defense counsel makes a Rule 16 document request which would
appear to double his problem.  Although the undersigned is not so finding, there is some indicia
that the present motion is part of making a record as to the massiveness of the case, not because
there is a demonstrated need for the documents requested.  As pointed out in the due process
section, there are methods, not utilized yet by Salyer, which could help winnow the wheat from
the chaff.

*Criminal Discovery – In General*

"There is no general constitutional right to discovery in a criminal case." Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977). Over time a patchwork of statutory and judge-made rules has evolved to govern criminal discovery. Those rules include: (1) the Jencks Act; FN4 [omitted](2) the Federal Rules of Criminal Procedure; and (3) Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

\*\*\*

Rule 16 of the Federal Rules of Criminal Procedure governs criminal discovery. It has been significantly expanded since the Rules were first adopted, and it now imposes discovery obligations both on the government and the defense. See Fed.R.Crim.P. 16 (1966 Amendment); id. (1974 Amendment); id. (1975 Enactment). Unlike civil discovery, where some materials are automatically produced as a matter of right, in criminal discovery, the defendant must invoke the right to discovery. Compare Fed.R.Crim.P. 16(a)(1) with Fed.R.Civ.P. 26(a). Once a defendant makes a Rule 16 discovery request and the government complies, the government is entitled to seek reciprocal discovery from the defendant. See Fed.R.Crim.P. 16(b)(1). Work product of the United States and of the defense are not subject to discovery under Rule 16. See Fed.R.Crim.P. 16(a)(2), 16(b)(2).

United States v. Fort, 478 F.3d 1099, 1103 (9th Cir. 2007).

With respect to Fed. R. Crim. P. 16 discovery, a recent Ninth Circuit case found that Rule 16 "grants criminal defendants a broad right to discovery." United States v. Stever, 603 F.3d 747, 752 (9th Cir. 2010). "Broad" was undefined, and the undersigned does not view this term at odds with long established authority which recognizes only a "limited" right to discovery in criminal cases:

A criminal defendant is entitled to rather limited discovery, .... In a civil case, by contrast, a party is entitled as a general matter to discovery of any information sought if it appears "reasonably calculated to lead  to the discovery of admissible evidence." Fed. Rule Civ. Proc. 26(b)(1).

Degen v. United States, 517 U.S. 820, 826, 116 S.Ct. 1777, 1781-82 (1996).

See also Bowman Dairy Co.v. United States, 341 U.S. 214, 220, 71 S.Ct. 675, 679 (1951) (It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms.)

Perhaps discovery is broad within the limited areas of discovery.

4

1    Finally, courts have distinguished between evidence that is exculpatory, and thus

2    discoverable under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963) along with its progeny,

3    and evidence that is material and thus discoverable under Rule 16.  See United States v. Sanders,

4    893 F.2d 133, 137 (7th Cir. 1990) ("Due process requires the government to disclose exculpatory

5    evidence [citing Brady ]; Rule 16 provides for the production of other evidence."); United States

6    v. Messerlian, 832 F.2d 778, 795 (3d Cir.1987) ("Under Rule 16(a)(1)(D), the information that

7    the government must disclose need not be exculpatory; it merely must be material to the

8    preparation of the defense.").  In general, the non-exculpatory material is often inculpatory (as

9    such can be helpful in preparing the defense); if it were exculpatory, Brady would require its

10   disclosure in any event.  A metaphysical issue is present here in that Salyer asks for non-

11   inculpatory, but not exculpatory, information which may be helpful to the defense.  The line

12   between non-inculpatory, helpful information and exculpatory information is difficult to draw.

13   Finally, while the Constitutional underpinnings of requiring production of

14   exculpatory (Brady) and impeachment evidence (Giglio) are the same, the courts have developed

15   different timing mechanisms regarding production of each.  See United States v. Hopkins, 2008

16   WL 4453583 (E.D. Cal. 2008).

17   *Timing of Discovery Production*

18   The undersigned is not in a position to fault the government for the timing of

19   discovery disclosure.  Not only has the original written request not been made available, but there

20   have been mostly undescribed oral requests.  Neither party has made known what was initially,

21   specifically requested, and when the specific information was produced.

22   In a case such as this, with volumes of potential discovery, the parties would be

23   wise to request that the district judge assign a magistrate judge to hold a discovery conference

24   and for that judge to be the assigned a judge for discovery purposes.  In that way some form can

25   be given to the initial processes, e.g., timing can be decided, organization of discovery can be

26   initiated, clarifications to requests can be made, format of discovery decided, potential problems

1    quashed and the like.

2           A further problem exists in this case, and in many other cases.  The Congress and

3    the Ninth Circuit, perhaps not contemplating problems in documents intensive cases, have been

4    very restrictive in terms of timing of certain types of disclosures.  Impeachment material is not

5    due until after a witness testifies.  United States v. Rinn, 586 F.2d 113, 119 (9th Cir. 1978)

6    (Giglio material need not be disclosed until *after* a witness (Giglio material need not be disclosed

7    until *after* a witness testifies)).   Witness statements, impeaching or not, are also similarly timed

8    pursuant to the Jencks Act, 18 U.S.C. § 3500.  The Ninth Circuit has explicitly held that even

9    Brady material, with respect to witness statements, is subject to the strictures of the Jencks Act.

10   United States v. Jones, 612 F.2d 453, 454 (9th Cir. 1979).  More will be said about this later.

11   Identification of witnesses pretrial is a matter of discretion in the first place,  W R Grace, 526

12   F.3d 499 (9th Cir. 2008) (en banc), much less providing impeachment information or statements

13   for a witness.  The United States has nevertheless produced some of this material early, but

14   resists disseminating anything further pursuant to Rule 16.  A significant part of the information

15   sought by Salyer runs afoul of the above authority.

16          In the absence of an express referral by the trial judge, court ordered variances

17   from the above authority, if permissible at all, must be made by the trial judge who has a bigger

18   picture of the logistical difficulties in this case than does the undersigned, or who might handle

19   the logistics of pretrial disclosures et al. differently than the undersigned.  This ruling, or deferral

20   of ruling, as will be seen, is dispositive of a great deal of Salyer's requests.

21   *Privileged Requests*

22          Without specifying how with respect to each individual request, Salyer generally

23   contends that allowing the government to assert privilege violates his Constitutional rights.  This

24   cannot be, however, because the Supreme Court has stated, as set forth above, that there is no

25   Constitutional right to discovery.  Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837

26   (1977).  See also United States v. Armstrong, 517 U.S. 456, 116 S.Ct. 1480 (1996) (defendant

6

1   not entitled to discovery to mount an affirmative defense).  It follows that if there is no

2   Constitutional right to discovery in the first place, the federal rules and statutes which allow

3   limited discovery cannot generally be unconstitutional because of their limitations.

4          This is not to say that a particular discovery limitation as applied to a particular

5   circumstance, i.e., the limitation prevented specific and highly probative discovery on the entire

6   theory of the defense, could not be found to be unconstitutional.  See United States v. Stevers,

7   supra.  In that case the defendant had proffered a specific defense, and the Ninth Circuit held that

8   the combination of limiting a *specific* discovery request for which a specific showing of

9   materiality had been made, along with evidentiary ruling at trial which did not permit the specific

10   defense to be supported, violated the Sixth Amendment right to present one's defense.  Stevers,

11   603 F. 3d at 755.  However, this situation is a far cry from simply and generally asserting that if

12   the government asserts privilege to any of Salyer's general requests, for which a specific showing

13   of materiality has not been made, Salyer's right to present a defense has nonetheless been

14   violated.  If this were the case, any limitation in federal discovery would be unconstitutional

15   simply because a defendant had asked for discovery, but was precluded from getting it by the

16   terms of Rule 16 or case law.  United States v. Fort, 478 F.3d 1099 (9th Cir. 2007), one of the

17   many cases which, for example, have upheld the government's assertion of work product

18   privilege, would be implicitly overruled by Stever.  See also United States v. Amlani, 111 F.3d

19   705 (9th Cir. 1997) (internal government logs privileged from disclosure).  Obviously, all of Rule

20   16 and case law has not been declared facially unconstitutional as intimated by Salyer.  Stever is

21   limited to a situation where to uphold the privilege would be to cut out the heart of the defense.

22          In the present motion, Salyer has made no showing to any degree that upholding

23   the government's work product privilege as set forth in Rule 16 and case law, or to respect any

24   other limitation to federal criminal discovery, would so eviscerate the defense as to be

25   unconstitutional.

26   \\\\\

*Moot or Fully Answered Requests*

Because the parties only generally identified what had been produced already, indeed, a massive amount of material, it was not possible for the undersigned to read Salyer's Rule 16 motion with its 87 plus sub-category requests with any idea whether the information had been provided already in whole, or in part, or whether the government had any idea that further documentation pertinent to the requests existed at all.  In accordance with the undersigned's pre-hearing order, the government identified for each particular request whether it had disclosed all documents to the best of its knowledge, whether such was not the case, or whether it was unsure. In addition, the government identified for each request, information withheld because of privilege, primarily that work product.  The requests which have been mooted by the government's disclosure have been set forth below in the request-by-request analysis.

*Organization of Disclosed Discovery*

Rule 16, unlike its civil counterpart Rule 34, is silent concerning the manner in which disclosures are required to be organized.  See United States v. Pearson, 340 F.3d 459, 468 (7th Cir. 2003), vacated on other grounds, Hawkins v. United States, 543 U.S. 1097 (2005) (refusing to find the government at fault for not organizing Rule 16 discovery when the rule is silent).   The government has, in very broad brush form, indicated what it has disclosed, but it has not been organized in any fashion except for bate stamping or general characterizations of sometimes massive amounts of individual information, e.g., documents seized in search warrant X.  Case law discussing the organization of documentary discovery disclosed by the government is virtually non-existent.  The legal issue here, as in many cases of first impression, involves a push versus pull – the principle that the court should not impose a large, substantive modification/supplementation to the discovery rules by judicial fiat, with the counter-principle that a court should be allowed case management discretion in applying the written word in an extraordinary case.

\\\\\

1        The Ninth Circuit can draw a rigid line when it so desires.  See e.g., United States

2   v. Rinn, supra.  However, in analogous areas, the Ninth Circuit en banc has also approved of

3   Rule 16  "supplementation that makes sense" (undersigned's characterization).  In United States

4   v. W.R. Grace, 526 F.3d 499 (9th Cir. 2008) (en banc), a case involving many witnesses and

5   complex issues, the Ninth Circuit endorsed the district court's ability to order the pretrial

6   preparation and filing of a witness list in an appropriate case even though Rule 16 was silent on

7   the topic.  The Court also held that the district court could order that an expert disclosure was

8   required to include documents that the expert had reviewed in arriving at his or her opinion.  See

9   also United States v. Anderson, 416 F.Supp.2d 110, 113-114 (D.D.C. 2006) (government must

10  categorize the documents it intends to use in its case-in-chief as opposed to other documents

11  produced as "helpful to the defense.")  But see United States v. Ferguson, 478 F. Supp. 2d 220,

12  243-244 (D. Conn. 2007) (questioning its authority to divert greatly from the express wording of

13  Rule 16).

14       Some flexibility in application of the rules is commanded by the rules themselves.

15  Fed. R. Crim. P. 2 admonished the court to interpret the rules to secure just and fair results, and

16  to eliminate unjustifiable delay and expense.  Fed. R. Crim. R. 57(b) provides that the court may

17  "regulate practice in any manner consistent with federal law, these rules and the local rules of the

18  district."  (Emphasis added).  The undersigned rejects the notion that this flexibility makes all the

19  written words of the substantive rules superfluous, and rejects the notion that a judge can do

20  anything simply because of a belief that he or she "knows better" than the rule makers.  On the

21  other hand, the undersigned rejects the notion that common sense cannot play a part in the

22  administration of justice.

23       Therefore, as set forth at hearing, the undersigned requires that organization of

24  discovery take place in accordance with the categories and sub-categories of discovery explicitly

25  set forth in Rule 16 itself.  While organizing massive amounts of evidence after the fact of all of

26  its receipt may appear overwhelming, AUSAs and investigators can rather easily make this

9

organization piecemeal as the evidence in a case comes in, and if they have not done so, would

have to perform this organization in any event at some time if the case is ever to go to trial.  In

other words, performing an organizational task sooner rather than later is not the type of burden

which concerns the undersigned to a great degree when there is a real and practical reason for

performing it.  Salyer's argument that he should not have to sift through millions of pages of

documents to determine, for example, if a defendant's written statement has indeed been

disclosed, has much force.  Moreover, the incremental organization of massive amounts of

documentary discovery into the easy-to-discern Rule 16 categories also enables the government

to perform its <u>Brady-Giglio</u>/Rule 16 obligations in a timely fashion.  Utilizing organizational

categories is the only realistic way that government attorneys can determine if they really have

performed their discovery obligations, and avoids the "oops" disclosures just prior to trial, or

even during trial.

    The organizational disclosure can be made in individual packets that conform to

the individual disclosure requirements, or can be satisfied by a prepared index with referenced

Bate stamped page numbers.  Of course, in a reasonable, rolling type production, an index can be

amended.

    Further, the government may not choose to lump all of its disclosed category into

a Rule 16(a)(1)(E)(I) or any other (E) category thereby defeating the purpose of categorization.

"Material helpful to the defense" or documents that the government "plans to use in its case in

chief" or "items taken from the defendant" are residual categories for information not otherwise

able to be organized in the other subsections of Rule 16(a).  That is, a defendant's oral

statements, for example, are categorized under Rule 16(a)(1)(a)(A); a scientific test is categorized

under Rule 16(a)(1)(F).  Salyer's point is well taken that statements of the defendant and

scientific test should not be buried amidst an avalanche of other information – including a vast

array of Title III tape recordings.

\\\\\\

1        The undersigned does not require that the government further organize those

2   documents appropriately produced under the sub-categories of Rule 16(a)(1)(E).  If a defendant

3   actually needs to know what specific documents the government plans to use at trial, Fed. Crim.

4   R. 12(b)(4) (B) provides that avenue.  No such request is at issue here.  Moreover, a defendant

5   can review any of the "E" sub-categories and understand without being told the vast majority of

6   documents or items that are important to the government's case, or what might have been taken

7   from the defendant.  Moreover, the undersigned does not agree with Salyer that the government

8   is tasked with further organizing the "material to the defense" category of discovery into

9   whatever categories the defense might imagine.  As set forth below, the government should not

10  be punished with preparing the defense case simply because it errs up front in an abundance of

11  caution in producing information which is "arguably" helpful to the defense.  Moreover, it is

12  ultimately the defendant's opinion as to whether the information is material; as explained above,

13  in a general sense, *everything* inculpatory might be determined to be helpful in preparing a

14  defense if only as to how to avoid the sting of the evidence.  The court would push flexibility too

15  far if it were to mandate that the government organize voluntarily produced  "material" evidence

16  as ordered by a defendant.

17       At hearing, the government graciously volunteered that it would serve its index of

18  documentary and electronic evidence, prepared for its own purposes, on defendant.  This is above

19  and beyond what the court could order for Rule 16 (a)(1)(E) materials whether or not the index is

20  as complete as Salyer would prefer.

21       Finally, the court orders a limited organization of <u>Brady/Giglio</u> material.  There

22  exist several situations to address: already disclosed documents or materials; <u>Brady</u> exculpatory

23  information yet to be disclosed, both in the form of witness statements and non-witness

24  statements; and <u>Giglio</u> information yet to be disclosed.

25       To the extent that discovery has been disclosed to Salyer, it will not do to state

26  that "to the extent <u>Brady/Giglio</u> material is present, defendant will 'know it when he sees it'" –

i.e., Salyer can wade through piles of documents or gigabytes of disclosed discovery to find it, and if he is lucky, the information will bite him much as a fisherman may eventually hook a fish by casting aimlessly without bait, if he casts long enough. Prosecutors have a duty to disclose what *they* reasonably view as exculpatory or impeaching material. Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 1567 (1995) (quoting the ABA rule on point). Although in performing that duty they have been instructed to not "tack[] too close to the wind," id. 439, 115 S.Ct. at 1568, this does not mean that in a case such as this, prosecutors can goto the extreme of disclosing *everything* as possible Brady/Giglio material such that a pearl of exculpatory or impeaching information is inevitably lost in the sea of the mundane. In other words, at some point (long since passed in this case) a duty to disclose may be unfulfilled by disclosing too much; at some point, "disclosure," in order to be meaningful, requires "identification" as well.

To the extent that otherwise *presently known,* Brady/Giglio disclosable information has not yet been released, the United States accurately cites United States v. Jones, supra, in arguing that exculpatory material, subject to the Jencks Act, need not be disclosed until required by that Act. "Brady does not overcome the strictures of the Jencks Act." Jones, 612 F.2d at 454. One judge of this district has held that Jones has been superseded by later announced Supreme Court authority. United States v. Sablan, 2009 WL 3379011 *4 (E.D. Cal. 2009 OWW). However, with respect, the undersigned does not view the cited Supreme Court authority as expressly controlling the timing of Brady "witness statement" discovery such that it can be said that a Ninth Circuit precedent, old as it may be, has been overruled. However, Jones does not preclude *identification* of the yet-to-be disclosed exculpatory information. Similarly, as previously discussed, Giglio impeaching information generally need not be disclosed until a witness testifies, but again, pre-disclosure *identification* of that material has not been precluded.

With respect to this information which has not yet been turned over to the defense, and judging by the government's unwillingness to presently disclose Giglio or Brady (witness statements) there still exists, apparently, significant amounts of information which have

12

1  not been turned over to the defense, Brady/Giglio duties are at their maximum.  The court will

2  order its identification.[3]

3          Finally, there may be a significant amount of information already acquired by the

4  government pertinent to the Salyer investigation which the government has not yet reviewed.

5  However, the vast amount of material in the possession of the government was seized,

6  subpoenaed, or otherwise acquired on the ostensible basis that it was relevant to the

7  investigation.  If the undersigned's surmise is correct, and there still exists a reservoir of

8  unreviewed materials,  the court will not permit the government to avoid its Brady/Giglio

9  obligations by holding, in essence, that the prosecutor can negate Constitutional imperatives by

10 purposefully deciding not to review what was seized, or delaying until the last moment that

11 review.

12         Therefore, the government shall, within twenty-one (21) days of the filed date of

13 this order, identify what *it* believes can be reasonably construed as exculpatory or impeaching

14 material:

15 (1) for documents already disclosed, the government shall specifically identify by Bate Stamp

16 number or by specific title and location, the information which a reasonable prosecutor would

17 view as exculpatory or impeaching;

18 (2) for documents yet to be disclosed, and subject to the Jencks Act, as well as normal Giglio

19 disclosure, the government shall identify those documents or information in its possession, by

20 author, date, subject matter, or other appropriate identifiers, which a reasonable prosecutor would

21 view as exculpatory or impeaching;

22 (3) for exculpatory information not yet disclosed which is not subject to the Jencks Act, and

23

24         [3]  Identification will also mitigate what would otherwise be insurmountable logistical
   problems at trial if large amounts of Brady/Giglio information were being identified and
25 disclosed during trial for the first time.  Identification now will at least place defense counsel on
   notice of what may be produced such that *some* analysis or investigation can be performed ahead
26 of time.

1   which has not been disclosed, the government shall disclose it forthwith.

2          While the government's disclosures pursuant to the above are not an admission of

3   what the trier of fact may ultimately determine to be exculpatory or impeaching, it will give

4   Salyer a fair opportunity to understand the information which can reasonably be argued as such.

5   *Who Is the Government*

6          Defining the "government" is important in criminal discovery matters because the

7   prosecution does not have to scour the files of every governmental agency on the chance that

8   some pertinent information, or information that the defendant deems pertinent, may be disclosed.

9   United States v. Bryan, 868 F.2d 1032, 1036 (9th Cir. 1989).  The prosecution does not become

10  the FOIA (Freedom of Information Act) agent for the defense.   However, "[t]he prosecutor will

11  be deemed to have knowledge of and access to anything in the possession, custody or control of

12  any federal agency participating in the same investigation of the defendant."  Id.

13         The above presumption is all that is needed in the vast majority of criminal cases

14  in that it is seldom the case that federal agencies outside of the agencies interested and

15  participating in the investigation will documents material to the case.  However, the Ninth Circuit

16  has made clear that the presumption is not necessarily the end point of the analysis depending on

17  he case.  United States v. Santiago, 46 F.3d 885 (9th Cir. 1995).  In Santiago, the Ninth Circuit

18  held that prison files in the possession of the federal Bureau of Prisons, an agency within the

19  Department of Justice, would be "in the possession" of the United States Attorney because the

20  BOP was a sister agency, and the prosecutor has actually acquired a good bit of information

21  about the case by simply requesting it from the BOP.   Id. at 893-94.  The fact that the BOP was

22  not the "investigating agency" was not determinative.  "Access" to the requested information was

23  the key, and such access was to be determined on a case by case basis.

24         In this case, the parties agree that documents within the possession of the United

25  States Attorney's Office, the Anti-Trust Division of the Department of Justice, the FBI, IRS-CI

26  (criminal), the USDA and FDA are the "government" for the purposes of this case.  Salyer would

add to that list, specifically, the Department of Commerce, the entire Department of Justice, the United States Trustee, the Office of the Inspector General and generally, any other agency or department of the United States (setting forth the agencies but indicating "not limited to.")  See Footnote 14 on p.19 of Salyer's Motion.

To the extent that Salyer requests that the United States search every governmental agency for the requested documents, the request is denied as not being based on any authority.  Of course, to the extent that the United States Attorney or any of the agreed-to agencies have any of the documents in their actual possession, and these documents are otherwise material, they must be disclosed regardless of the original source of the documents or however acquired.

In determining whether the additional federal agencies or entities to which Salyer directs his requests have documents "in the possession of" the prosecution, a reasonable, balanced approach must be undertaken.  To the extent that the agencies have supplied significant amounts of information to the prosecutor or investigators upon which the government will rely in this case, upon their request, like the situation of the BOP in Santiago, such documents are in the possession of the government for the purposes of this case.  However, to the extent that the prosecution and investigators have simply queried agencies, private entities, or persons to confirm or dis-affirm leads, theories, facts, and have obtained a stray document or two, these agencies or persons are not within the government for purposes of this case.  Nor are agencies which were, or have to be, subjected to formal processes to obtain information considered to be within the control of the "government" for purposes of this case.  Thus, for example, simply because the United States obtained documentary information as a result of subpoena or search warrant does not place all documents of those entities or persons within the possession of the government for defendant's further requests.  The need for formal process in the acquisition of documents is the antithesis of "access" as defined by the above cases.

\\\\\

15

1    At hearing, the undersigned queried the government extensively with respect to its

2  contacts with the Department of Commerce and the United States Trustee.  Contact with

3  Commerce was almost nil.  Although the government attorneys have had meetings with the

4  United States Trustee concerned with the SK Foods, et al. Bankruptcy, such informal contacts

5  have not risen to the level where the United States Trustee would be considered the

6  "government" in the criminal matter.  Moreover, to the extent that Salyer really requires

7  Department of Commerce documents, identified in his motion, nothing prevents him from

8  making a FOIA request.[4]  Also, with appropriate support and pursuant to well established

9  standards, Salyer can subpoena specific documents from the United States Trustee via Fed. R.

10  Crim. P. 17.

11    Therefore, the undersigned finds that the "government" for discovery purposes is

12  defined as the government has defined it already and as set forth above.

13  *Materiality under Rule 16(a)(1)(E)(i)*

14    Salyer seeks a vast array of information under the rubric of Rule 16(a)(1)(E)(i).

15  The vast majority of his requests fall under this provision of the Rule.

16    To the extent that the government has already disclosed a volcano's worth of

17  evidence, helpful or not, the issue of materiality is obviously moot.  That is why the undersigned

18  requested the government to specify for each request whether all documents pertinent to that

19  request had already been disclosed *to the best of its knowledge,* or the defendant had been given

20  access to them.  Requests that are moot are identified below in the request-by-request rulings.

21    United States v. Santiago, 46 F.3d 885, 894 (9th Cir. 1995) sets the paradigm for

22  disclosure of documents or evidence material to the defense:

23
_____

24    [4] Defense counsel complained that with motions deadlines looming, a FOIA request
   would not be of much use.  However, since the motions, if any, would in all probability be
   directed at documents seized by the government, and not at documents which are not in the

25  government's possession, the Commerce documents, if of any use at all, can be procured before
   trial.  Defense counsel did not identify any affirmative defense motion to which he would use

26  Commerce documents.

1

2

3

> A defendant must make a threshold showing of materiality, which requires a presentation of "facts which would tend to show that the Government is in possession of information helpful to the defense." *United States v. Mandel*, 914 F.2d 1215, 1219 (9th Cir.1990). "Neither a general description of the information sought nor conclusory allegations of materiality suffice." Id.

4

5

The undersigned has previously opined on what "helpful to the defense" means as the term could

6

be utilized in an under or over inclusive manner.  As set forth above, "helpful" is something less

7

than "exculpatory"; if this were not the case, there would be no need to have the discovery rule.

8

On the other hand, "helpful" could be construed to mean nearly everything the government has

9

looked at.  Therefore, "helpful" is properly construed as evidence:

10

11

12

13

> which is significantly helpful to an understanding of important inculpatory or exculpatory evidence. " 'The materiality requirement typically 'is not a heavy burden,' rather, evidence is material as long as there is a strong indication that ... [the evidence] will 'play an important role in uncovering admissible evidence, aiding witness preparation, corroborating testimony, or assisting impeachment or rebuttal.' " <u>United States v. Jackson</u>, 850 F.Supp. 1481, 1503 (D.Kan.1994) quoting <u>United States v. Lloyd</u>, 992 F.2d 348, 351 (D.C.Cir.1993) (emphasis added).

14

<u>United States v. Liquid Sugars</u>, 158 F.R.D. 466, 471 (E.D. Cal. 1994).

15

"On the other hand, requests which are designed to generally cast for impeachment material...

16

are not material.  Such requests are simply speculative inquiries without basis in fact to believe

17

that the information acquired will be significantly helpful." <u>Id</u> at 472.   In determining

18

materiality, a court will view the demonstrated or obvious burden of production on the

19

government in light of the demonstrated need for the evidence,  <u>United States v. Jack</u>, 257 F.R.D.

20

221 (E.D. Cal. 2009) (Drozd, J.), i.e., burden of production may require greater demonstration of

21

specific need.

22

       <u>Santiago</u> and another recent Ninth Circuit case, <u>United States v. Stever</u>, 603 F.3d

23

747 (9th Cir. 2010), are good examples of the application of the above paradigm and explanation

24

of materiality.  In <u>Santiago</u>, a case involving the murder of a prison inmate, the defendant had

25

asked to see the prison files of all inmates to be called as witnesses by the government because

26

evidence of gang affiliations would be introduced by the prosecution.  Santiago reasoned that he

1  would need this information for impeachment purposes, i.e., whether any of the witnesses were

2  linked with rival gangs.  The Ninth Circuit held:

> These assertions, although not implausible, do not satisfy the requirement of
> specific facts, beyond allegations, relating to materiality. *See Mandel*, 914 F.2d at
> 1219. Although the defense did have access to other documents relating to the
> government witnesses and interviewed several other prison inmates, it did not cite
> any fact, such as a statement by the defendant or one of the interviewed witnesses,
> that might link one of the witnesses to a rival gang. Thus, since the defense has
> only asserted "conclusory allegations" without grounding in fact, *Mandel*, 914
> F.2d at 1219, we cannot find that the information sought was material to the case.

8  Santiago,  46 F.3d 894-895.

9  In other words, simply having an educated guess about documents' helpfulness was insufficient.

10         Stever demonstrates when sought information would be helpful.  In this case,

11 defendant had announced a specific defense that the marijuana grown on his large tract of land

12 had been grown by another.  He sought specific reports in the possession of the government

13 showing the problem of Mexican gangs using the property of others for their grow operations.

14 The Ninth Circuit found the reports to be manifestly relevant to the defense.

15         In the present case, other than a general "not guilty," Salyer has announced no

16 specific defense to the charges.  For the most part, he simply desires to look through a potentially

17 massive amount of documents in different categories on the chance that something good might

18 turn up for him in that production.  For example, Salyer request in No. 61: "All reports or

19 documents detailing any contacts between any other government informant or agent and the

20 government."  To permit this catchall request to meet materiality standards would be the

21 equivalent of mandating open file discovery; indeed, the "files" don't even exist for many such

22 requests.  Even where Salyer has been more specific in his request, the materiality of the

23 information cannot be ascertained because Salyer keeps his defensive cards close to the vest.  In

24 Request No. 55, Salyer seeks, "All reports or documents detailing any contacts between Gregory

25 Wuttke and the government."  In his Reply at 30, Salyer simply assumes the importance of this

26 person, and further presumes that anything this person said or did is material.  Materiality is

1   meaningless if such a request is satisfactory.

2          Salyer knows how to frame a request that is materially helpful to the defense.  At

3   hearing, counsel discussed why specific IRS documents, form 1099s, prepared by Rahal were

4   necessary, i.e., it was Salyer's contention that Rahal was bribing on behalf of *all* food companies

5   who used his services to supply food wholesalers/retailers down the chain, e.g., Safeway, Frito-

6   Lay, so that none of these wholesalers/retailers had suffered a loss on account of any alleged

7   illegal bribes/kickbacks required by SK Foods – the extra cost, call it a commission, was simply

8   an expense paid by everyone.  Whether this is a viable defense to the government charges

9   remains to be seen, but the undersigned can understand the connection between the specific

10  documents requested and the asserted defense.  Unfortunately, very few of the requests actually

11  made by Salyer have this quality of materiality.  The vast majority of requests are simply an "all

12  documents" civil type discovery request.

13         The undersigned will review materiality request-by-request below.

14  *Request-by-Request Analysis*

15         In making his initial motion, Salyer did not make a request-by-request showing of

16  materiality; he only did so in his Reply.  In the interim, the undersigned had directed the

17  government to make a request-by-request statement concerning whether the "government" had

18  disclosed all documents pertinent to the request already, whether it had not, or whether it was

19  unsure.  In order to better ascertain what was being withheld on account of privilege, the

20  government was also directed to identify a privilege assertion to a specific request if one was

21  appropriate.

22         The undersigned scanned the government's request-by-request analysis, and used

23  a pdf converter program to make it a Word Perfect document.  The government's pleading is

24  therefore repeated here as it included the specific request and the government's response.  Simply

25  opining a ruling on each request without setting it forth, would make this order impossible to

26  adequately review.  Where appropriate and necessary to the issue of materiality, the undersigned

includes Salyer's materiality discussion. Where materiality is obviously present, or where it is obviously not, the undersigned will not include Salyer's discussion.  Where an objection is sustained on grounds other than materiality, the discussion will not be included.   While this procedure makes the order very lengthy, having all pertinent information in one place will be more efficient if any review is sought of this order.

The request will appear in bold; Salyer's response, when materiality is the dispositive issue, in Courier font, the government's response in Times New Roman font and the court ruling in italics.

**1.     All statements or alleged admissions made by the defendant to the government.**

Government Response:

(1) Yes, with regard to statements made pre-indictment in this investigation. Yes, with regard to statements in DOJ-Antitrust possession that are relevant to the establishment of CTEG. Tax returns authenticated as obtained from the IRS Service Center will be disclosed shortly. Ongoing production of calls from the jail.

(2) No privileged documents withheld.

*Court Ruling – The government has responded adequately to this request.*

**2.     All statements or alleged admissions made by any other alleged co-conspirator the government contends are admissible at trial pursuant to the Federal Rules of Evidence 801.**

Government Response:

(1) Unsure. Defendant has all memoranda of pre-indictment interviews conducted in this case. Defendant has all recorded conversations gathered in this case. The government continues to investigate and anticipates discovering more statements.

(2) Prospective witness statements are not discoverable under Rule 16. This is true whether or not the prospective witness ultimately testifies. United States v. Mills, 810 F.2d 907, 910 (9th Cir. 1987).

*Court Ruling – Materiality is evident from the nature of the request.  The issue here is whether the government can be compelled to disclose co-conspirator statements as if they were the statements of Salyer himself.  There is a bit of symmetry to Salyer's request – if the co-conspirator statements can be used at trial as an admission by Salyer, why should they not be produced in discovery as a Salyer statement.  Although the Ninth Circuit has apparently not directly ruled on the issue, the circuit case law is nevertheless squarely against reading Rule 16(a)(1)(A) in this fashion, and has squarely rejected the lower court cases cited by Salyer.  See United States v. Williams, 90 F.3d 490, 513 (D.C. Cir. 1996); United States v. Manthei, 979 F.2d 124, 126 (8th Cir. 1992); United States v. Gaddis, 877 F.2d 605, 610 (7th Cir. 1989), In re United States, 834 F.2d 283, 286 (2nd Cir. 1987); United States v. Roberts, 811 F.2d 257, 258-59 (4th Cir. 1987) (en banc).  See also United States v. Cerna, 2009 WL 2998929 (N.D. Cal. 2009).*

*The request is denied.*

**3.    A complete copy of any prior criminal record relating to any person the government contends is a co-conspirator in connection with this case.**

Government Response:

(1)    No.

(2)    Impeachment information need not be disclosed until witness testifies.  United States v. Rinn, 586 F.2d 113, 119 (9th Cir. 1978); United States v. Smith [sic Hopkins,] 2008 WL 4453583 *2 (E.D. Calif.) (Hollows, J). No other criminal histories are discoverable at any time, because they do not impeach any witness. With regard to persons who are not witnesses, defendant has failed to make a factual showing of materiality.

*Court Ruling – The information is clearly material.  While the government is correct that impeachment information does not generally need to be produced pre-trial, the fact that Rule 16(a)(1)(D) specifically calls for its production in discovery renders conviction records outside the general rule.*

1   *The request is granted.*

2   **4.      Master list or index of discovery produced to date by the government, including an**

3   **index of all FBI and IRS typewritten reports and field reports detailing witness statements**

4   **and similar reports from each agency participating in the investigation, and a list or index**

5   **of all lab reports received from all agencies participating in the investigation (including the**

6   **USDA and the FDA).**

7   Government Response:

8   (1)  No.

9   (2) Rule 16(a)(2); <u>Amlani</u>.

10  *Court Ruling – In the previous discussion on organization, the court has tasked the government*

11  *only with a limited organization of materials it has produced.  In addition, Salyer has obtained*

12  *the prosecutor's own index.  Other agency indexes are privileged from disclosure.  Nothing*

13  *further is warranted.*

14  **5.      Master list or index of all of the recorded body microphone or "consent" call**

15  **conversations, along with the name of the person who initiated the call and the persons**

16  **recorded, and identification of whether it was sponsored by the government or whether it is**

17  **the product of the parallel private investigation sponsored by Morning Star.**

18  Government Response:

19  (1)  No.

20  (2) Rule 16(a)(2); <u>Amlani</u>.

21  *Court Ruling – Same as #4 above.  In addition, the request includes an improper interrogatory.*

22  **6.      All FBI lA evidence logs, and any evidence logs or inventories as maintained by the**

23  **IRS, the FDA, the USDA, or the United States Attorneys Office, Anti-Trust division.**

24  Government Response:

25  (1)  No.

26  (2)  Rule 16(a)(2); Amlani.

1  *Court Ruling – Same as #4 above.*

2  **7.      All handwritten original notes used by the investigating agents, including FBI**

3  **Agents Paul Artley and Tim Lester, to prepare their investigative and witness interview**

4  **reports.**

5  Government Response:

6  (1) No. Notes are preserved. Notes of the late-transcribed interview referred to in defendant's

7  reply brief will be made available for court's in camera inspection.

8  (2) Internal government document(s). <u>Giglio</u> information need not be disclosed until witness

9  testifies. Compliance with agency guidelines is immaterial. Sought for a "sword" motion.

10  *Court Ruling – Impeachment material need not be turned over at this time unless the district*

11  *court orders otherwise as a case management tool.  To the extent that Salyer desires to use the*

12  *notes as indicative of some type of agency error, <u>Armstrong</u> precludes discovery.  The*

13  *preservation of rough notes is ordered in a separate order.*

14  **8.      Recordings of any witness interviews conducted by the government.**

15  Government Response:

16  (1) No. Only recorded interview was of Anthony Manuel. The government is likely to exercise its

17  discretion to disclose this early.

18  (2) Prospective witness statements are excluded from Rule 16 and available only pursuant to

19  <u>Jencks</u> at the time of testimony. <u>Giglio</u> information need not be disclosed until witness testifies.

20  *Court Ruling – The government is correct.  See Rule 16(a)(2).  Request denied.*

21  Requests 9-17 – Testing Information

22  [Salyer] Materiality Overview:

23      The indictment alleges that the defendant, and "others known

24  to the Grand Jury," ....., allegedly orchestrated several

25  fraudulent schemes whereby SK Foods induced certain SK Foods'

26  customers to pay for adulterated and misbranded processed tomato

products at inflated prices that did not meet customers' contract specifications. The indictment avers that the "purpose" of the enterprise was to"increas[e] SK Foods' profits by fraudulently inducing certain of SK Foods' customers to pay for adulterated and misbranded processed tomato products...." Indictment at ¶ 30(d). The indictment further elaborates that the defendant: (1) "caused the falsification of ... various grading factors and data contained on Certificates of Analysis and other quality control documents ..." so that they "reflected mold count levels in SK Foods' tomato product as being below the applicable Food Defect Level set forth in federal regulations ..."; and, (2) "caused the falsification of ... SK Foods quality control documents so that they reflected Natural Tomato Soluble Solids (NTSS) levels were higher than what the processed tomato product actually contained...." Indictment at  31(d) & 31(e).

     During the course of its investigation, the government, acting through the assistance of its informant Anthony Manuel, took sample bags of tomato paste from SK Foods, and FBI Agent Artley sent those samples to the USDA for testing. Opposition at 7:26-28. In the discovery provided to date, Agent Artley has acknowledged that those samples were destroyed, and in fact, via a "302 report" recently supplied in discovery by the government nearly three years after the testing was conducted, Agent Artley attempts to provide a post hoc explanation for the destruction of the actual samples sent to the USDA for testing. Insofar as the government is relying on the results of this testing in support

of the charges and as a purported basis for probable cause in
connection with search warrants executed in April 2008 and
contends that like samples are available for alternative
independent testing, the defendant is entitled to the requested
documents to: explore and explain the circumstances in which the
samples were destroyed, including all related correspondence
detailing Agent Artley's request to destroy the samples; chain of
custody records to show that the lab reports are inadmissible;
the FDA and the USDA's file materials, including documents
available to the FDA and the USDA relevant to the standards,
testing, and testing procedures employed by those agencies to
test the SK Foods samples and to test food products produced by
the companies who are alleged to purchased and used the
"adulterated" tomato paste and other food ingredients purchased
from SK Foods (to show that the government did not comply with
their own testing standards); and, any documents or records which
show that the alleged adulterated SK Foods products were
re-tested, particularly if the customers themselves conduced any
such testing. Moreover, to the extend expert testimony is
expected, the reports of all examinations and tests are material
and discoverable. FRCrP 16(a)(1)(D) & (a)(1)(G).

Government Rebuttal to Defendant's Materiality "Overview" for Requests 9-17:

The Defendant makes no factual showing of materiality for Requests 9-17. Rather, he baldly

seeks to "explore and explain." (Def. Reply at 19.) The government has complied with Rule

16(a)(1)(F) (reports of examinations and tests).

The Defendant does not explain factually the materiality of how customers' testing of SK Foods

product, or government testing of customers' products.  Actual reliance is not an element of any

offense charged in this case.  Also, victim negligence is not a defense to fraud.  <u>United States v.</u>

<u>Ciccone</u>, 219 F.3d 1078, 1083 (9th Cir. 2000) ("In this circuit 'lilt is immaterial whether only the

most gullible would have been deceived' by the defendants' scheme."), quoting <u>Lemmon v.</u>

<u>United States,</u> 278 F.2d 369, 373 (9th Cir. 1960).  A fraud victim's extreme credulity is similarly

irrelevant to guilt.  It is immaterial whether only the most gullible would have been deceived."

<u>United States v. Hanley</u>, 190 F.3d 1017, 1023 (9th Cir. 1999), quoting Lemon, 278 F.2d at 373.

It is also true that food regulations and testing procedures are available on public government

websites. See, e.g., http://www.ams.usda.gov/AMSv1.0/getfile?dDocName-STELPRDC5074248

Subject: Preparation of Pineapple Products; Citrus Products; and Fruit Nectars, Purees, and

Pastes for the Howard Mold Counting Procedure (Sept. 1984).

The government has no duty to obtain C.F.R. citations and publicly available documents for the

defense.

*Court Ruling 9-17: The United States has disclosed much of what defendant seeks.  To the extent*

*that test results associated with the criminal investigation have not been turned over at this time,*

*they are ordered disclosed.  Data sheets underlying the test results, if separate from the results*

*themselves, are ordered to be disclosed.  See United States v. Liquid Sugars, supra.  All*

*documents reflecting a governmental request or order  to destroy the samples used for testing*

*are ordered disclosed.  The requests are otherwise denied as not being material.  Id.*

**9.      All USDA testing reports, correspondence, electroniccommunications, or documents**

**relating to any requests by the government to test any of SK Foods's food products or**

**samples, including any documents or communications in which the government requested**

**that samples be destroyed.**

Government Response:

(1) Unsure. The government will disclose all USDA reports of testing of SK Foods's products

undertaken during this investigation.  No, as to other documents demanded.

(2) Rule 16(a)(2). Request is over broad in that it purports to seek documents that are unrestricted as to time, subject, or investigation.

*Court Ruling – See general ruling for requests 9-17 above.*

**10.     All FDA testing reports, correspondence, electronic communications, or documents relating to any requests by the government to test any of SK Foods' food products or samples, including any documents or communications in which the government requested that samples be destroyed**.

Government Response:

(l) Unsure as of this writing. The government will disclose all FDA reports of testing of SK Foods's products undertaken during this investigation. No, as to other documents demanded.

(2) Rule 16(a)(2). Request is over broad in that it purports to seek a vast universe documents that are unrestricted as to time, subject, or investigation.

*Court Ruling – See general ruling for requests 9-17 above.*

**11.     All documents authorizing or noting the seizure of the SK Foods' sample bags, the logging them in as evidence, the transmittals to the USDA or the FDA, the test reports, the disposition records, the chain of custody records, and all reports relating to that process.**

Government Response:

(1) With regard to sample bags obtained from Manuel, the government has turned over the 302 indicating receipt from Manuel, chain of custody record, transmittal letter to USDA, and report of testing. For sample bags obtained during search warrant, the search warrant returns have been copied and the chain of custody records are available for inspection. No, as to other documents demanded.

(2) Rule 16(a)(2); <u>Amlani.</u>

*Court Ruling – See general ruling for requests 9-17 above.*

**12.     All SK Foods' sample bags sent for testing to the FDA or the USDA so they may be subject to independent testing.**

1  Government Response:

2  (1) No. The bags themselves are available for inspection. The contents were destroyed.

3  (2) No privileged documents withheld.

4  *Court Ruling – See general ruling for requests 9-17 above.  Salyer shall make arrangements to*

5  *inspect the bags at a mutually agreeable time.*

6  **13.      All correspondence, documents, e-mails, text messages, communications and faxes**

7  **exchanged between Agent Artley or any other government agent and the FDA and the**

8  **USDA.**

9  Government Response:

10  (1) No.

11  (2) Rule 16(a)(2) insofar as this request relates to this investigation. Request is over broad in that

12  it purports to seek documents that are unrestricted as to time, subject, or even investigation.

13  *Court Ruling – See general ruling for requests 9-17 above.  The government is correct that these*

14  *internal-to-the-government documents are precluded from disclosure.*

15  **14.      All documents available to the FDA and the USDA relevant to the standards,**

16  **testing, and testing procedures employed by those agencies - for food products produced by**

17  **the companies who used the tomato paste and other food ingredients purchased from SK**

18  **Foods for the past ten years and the investigative reports relating to any investigation or**

19  **inquiry concerning those companies, relating to tomato-based products, for the same**

20  **period, including any relating to or discussing the use of SK Foods ingredients.**

21  Government Response:

22  (1)  No.

23  (2) A request for documents about SK Foods's customers is outside the scope of Rule 16 because

24  it is not supported by a factual showing of materiality.  The government does not know why this

25  is requested, but notes that actual victim reliance is not an element of any crime charged in this

26  case. Victim negligence is not a defense to any crime charged in this case.

*Court Ruling – This is precisely the type of casting about for impeachment material that is not appropriate for criminal discovery.*

**15.     Any surveys or studies conducted by the FDA or the USDA of the actual testing or manufacturing process of the companies alleged to be "victims" in the indictment.**

Government Response:

(l) No.

(2) Request is over broad in that it purports to seek a vast oniverse documents that are unrestricted as to time, subject, or investigation. Read literally, the defendant is demanding any FDA and USDA files on companies such as Kraft and Con Agra, regardless of the product. Same materiality failure as in other victim-related requests.

*Court Ruling – The undersigned agrees with the government.  See general ruling for requests 9-17 above.*

**16.     The entire file maintained by the FDA regarding the defendant or SK Foods.**

Government Response:

(1) No.

(2) Rule 16(a)(2). It cannot be said that a single file containing all things SK Foods exists.

*Court Ruling – See general ruling for requests 9-17 above.*

**17.     The entire file maintained by the USDA regarding the defendant or 5K Foods**.

Government Response:

(1) No.

(2) Rule 16(a)(2). It cannot be said that a single file containing all things SK Foods exists.

*Court Ruling –  See general ruling for requests 9-17 above.*

Requests 18-19 – "All Documents Requests"

Salyer Materiality Overview

As reflected in the affidavits in support of the search warrants, the government has acknowledged that during the course

1   of its investigation it obtained and examined the defendant's tax

2   returns. The government has also acknowledged the IRS was an

3   integral part of the investigative team, yet it has not provided

4   any of the requested documents which are plainly material to the

5   defense of the case and to challenge the assertions made in the

6   search warrant applications.

7   Rebuttal to Defendant's Materiality "Overview" for Requests 18-19

8   The Defendant makes no factual showing of materiality at all. Here, he does not even speculate.

9   How the Defendant gets from "the IRS was involved in the investigation" to "ham entitled to all

10  IRS files regarding me or my company" is untethered to any fact.

11  **18.     All correspondence, documents, e-mails, text messages, communications and faxes**

12  **exchanged between Agent Artley or any other government agent and the IRS.**

13  Government Response:

14  (1) No.

15  (2) Internal government document(s) excluded from discovery under Rule 16(a)(2). Request is

16  over broad in that it purports to seek a vast universe documents that are unrestricted as to time,

17  subject, or even investigation. Giglio information need not be disclosed until witness testifies.

18  Prospective witness statements are excluded from Rule 16 and available only pursuant to Jencks

19  at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This applies even if it is Brady. United

20  States v. Jones, 612 F.2d 453, 454 (9th Cir. 1979). Outside the scope of Rule 16 as it appears

21  sought in support of a "sword" motion to accuse the government of misconduct. Armstrong.

22  *Court Ruling – This omnibus request is decidedly improper if materiality standards mean*

23  *anything.*

24  **19.     The entire investigative file maintained by the IRS regarding the defendant or SK**

25  **Foods.**

26  Government Response:

(1)  No. The Defendant's tax returns gathered for this case will be disclosed shortly. Witness tax returns will be disclosed if they contain <u>Giglio</u> and only at or around the time of trial.

(2)  Rule 16(a)(2). Request is over broad in that it purports to seek documents that are unrestricted as to time or investigation. Outside the scope of Rule 16 as it appears sought in support of a "sword" motion to accuse the government of misconduct. <u>Armstrong.</u>  The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality. Now is premature for <u>Giglio</u> disclosures of sensitive documents such as tax returns.

*Court Ruling – This omnibus request is decidedly improper if materiality standards mean anything*.

**20.     All studies, inquiries or investigations by the Antitrust Division of the United States Department of Justice or any federal agency relating to the retail pricing of the products of the alleged "victim" companies named in the indictment, including those produced from ingredients purchased directly or indirectly from SK Foods.**

Government Response:

(1)The government has made a diligent search in the files of the Antitrust Division for studies relating to the retail pricing of the products containing processed tomato products of Con Agra, Kraft, and McCain Foods, the victim companies named in the indictment. No such documents were found.

(2) The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality. The defendant makes only a conclusory statement that these records are "clearly material." He cites no case, and the government is aware of none, that in a criminal antitrust case it is relevant whether victims successfully passed along the cartel's price increases. Perhaps the defendant wants this for a state court civil case by indirect purchasers. Regardless, internal government document(s) are excluded from discovery under Rule 16(a)(2). Request is over broad in that it purports to seek a vast universe documents that are unrestricted as to time or investigation.

31

1   *Court Ruling –   The government's response is satisfactory.*

2   **21.     All of the computer and hard copy files of SK Foods, including those at the two**

3   **former manufacturing facilities to the extent that the United States Trustee, as an arm of**

4   **the Department of Justice, has the supervisory authority or other power to guide or govern**

5   **court appointed bankruptcy Trustees to provide these items in his possession.**

6   Government Response:

7   (1) No.

8   (2) Item(s) not in government's actual possession, custody, or control. Constructive possession

9   theories do not properly invoke Rule 16(a)(1)(E). The request is outside the scope of Rule 16

10   because it is not supported by a factual showing of materiality.  Request is over broad in that it

11   purports to seek a vast universe documents that are unrestricted as to time or subject.

12   *Court Ruling– the undersigned has determined that the United States Trustee is not part of the*

13   *government for purposes of criminal discovery. Request denied.*

14   **22.     Access to SK Foods's computer servers, computers (including laptops), and e-mail**

15   **accounts (including the .edb files from the Microsoft Exchange Server), including but not**

16   **limited to those of the following former SK Foods' employees: Anthony Manuel, Alan**

17   **Huey, Jennifer Dahlman, Steven King, Scott Salyer, Shondale Seymour, Mark Grewal,**

18   **Jeffrey Beasely, Mark McCormick, Lisa Crist, Jeanne Johnston, and Randy Yingling**.

19   Government Response:

20   (1)To the degree that this seeks data seized by government, yes. The defendant has the search

21   warrant inventories. If he wants only particular items, he can identify those and they will be made

22   available.

23   (2) To the degree that this requests data not seized by the government, the item(s) not in

24   government's actual possession, custody, or control. Constructive possession theories do not

25   properly invoke Rule 16(a)(1)(E).

26   *Court Ruling – By definition, SK Foods, an entity whose records were seized pursuant to*

1  *warrant is not part of the government for criminal discovery purposes. The United States*

2  *realizes that to the extent it has seized documents in its possession (written or electronic),*

3  *however, these documents must be disclosed if otherwise appropriate. The United States need*

4  *make no further response.*

5  **23.    Access to Rahal's and Intramark's computer servers, computers (including laptops),**

6  **and e-mail accounts.**

7  Government Response:

8  (1) No. But the government has offered to provide defendant with a copy of the computer images

9  that it seized from Intramark and Rahal.

10  (2) With regard to items in third party hands: Item(s) not in government's actual possession,

11  custody, or control. Constructive possession theories do not properly invoke Rule 16(a)(1)(E).

12  The request is outside the scope of Rule 16 because it is not supported by a factual showing of

13  materiality. Prospective witness statements are excluded from Rule 16 and available only

14  pursuant to <u>Jencks</u> at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This applies even if it

15  is <u>Brady</u>. <u>United States v. Jones</u>, 612 F.2d 453, 454 (9th Cir. 1979). <u>Giglio</u> information need not

16  be disclosed until witness testifies. Request is over broad in that it purports to seek a vast

17  universe documents that are unrestricted as to time, subject, or investigation.

18  *Court Ruling – Same ruling as #23.*

19  **24.    A list or index of forensic computer images made by the government at the time of**

20  **search of SK Foods in April 2008, including the identity of all laptops and desktops imaged.**

21  Government Response:

22  (1) The government has provided the inventory returns to the April 16, 2008 search warrants.

23  (2) Internal government document(s) excluded from discovery under Rule 16(a)(2). <u>Amlani.</u>

24  *Court Ruling – The government's objection is upheld.*

25  **25.    Access to a forensic copy of any computer (including any laptop) used by Anthony**

26  **Manuel while employed at 5K Foods.**

1  Government Response:

2  (1) Data seized by government is available. Otherwise, no.

3  (2) The request is outside the scope of Rule 16 because it is not supported by a factual showing

4  of materiality. Item(s) not in government's actual possession, custody, or control. Constructive

5  possession theories do not properly invoke Rule 16(a)(1)(E). Giglio information need not be

6  disclosed until witness testifies. Prospective witness statements are excluded from Rule 16 and

7  available only pursuant to Jencks at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This

8  applies even if it is Brady.  United  States v. Jones, 612 F.2d 453, 454 (9th Cir. 1979). Outside

9  the scope of Rule 16 as it appears sought in support of a "sword" motion to accuse the

10  government of misconduct.  Armstrong. Request is over broad in that it purports to seek a vast

11  universe documents that are unrestricted as to time, subject, or investigation.

12  *Court Ruling – The request seeks information not in the possession of the government, and lacks*

13  *materiality.*

14  **26.    Access to Anthony Manuel's personal e-mail account(s) (including**

15  **tmanual@sbcglobal.net) and any personal computers used by him to send e-mails or**

16  **documents to Agent Artley or any other government agent, or to Don Vilfer.**

17  Government Response:

18  (1) No.

19  (2) Item(s) not in government's actual possession, custody, or control. Constructive possession

20  theories do not properly invoke Rule 16(a)(1)(E). The request is outside the scope of Rule 16

21  because it is not supported by a factual showing of materiality - a desire just to check the

22  government's work is insufficient. Giglio information need not be disclosed until witness

23  testifies. Prospective witness statements are excluded from Rule 16 and available only pursuant

24  to Jencks at the time of testimony. Rule 16(a)(2), 18 U.S.C. § 3500. This applies even if it is

25  Brady.  United States v. Jones, 612 F.2d 453, 454 (9th Cir. 1979). Request is over broad in that it

26  purports to seek a vast universe documents that are unrestricted as to time, subject, or

34

1  investigation.

2  *Court Ruling – Same as #25.*

3  **27.     Access to the personal e-mail accounts and any personal computers used by the**

4  **following cooperating government witnesses or by any other cooperating government**

5  **witness used by them to send e-mails or documents to Agent Artley or any other**

6  **government agent: Randal Rahal, Alan Huey, Jennifer Dahlman, Steven King, Shondale**

7  **Seymour, Mark Grewal, Jeffrey Beasely, Mark McCormick, Lisa Crist, Jeanne Johnston,**

8  **Randy Yingling, James Wahl, and Gregory Wuttke.**

9  Government Response:

10  (1) No.  For named individuals' emails, government only has data imaged from SK Foods's server

11  during search warrant execution.

12  (2) Item(s) not in government's actual possession, custody, or control. Constructive possession

13  theories do not properly invoke Rule 16(a)(1)(E). The request is outside the scope of Rule 16

14  because it is not supported by a factual showing of materiality - a desire just to check the

15  government's work is insufficient. <u>Giglio</u> information need not be disclosed until witness

16  testifies. Prospective' witness statements are excluded from Rule 16 and available only pursuant

17  to <u>Jencks</u> at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This applies even if it is Brady.

18  <u>United States v. Jones,</u> 612 F.2d 453, 454 (9th Cir. 1979). Request is over broad in that it

19  purports to seek a vast universe documents that are unrestricted as to time, subject, or

20  investigation.

21  *Court Ruling – Same ruling as #25.*

22  **28.     All documents and materials taken by Anthony Manuel from SK Foods during the**

23  **course of his employment there, including all USB "thumb drives," "zip drives," or**

24  **"memory sticks" used by him containing documents downloaded from SK Foods'**

25  **computer servers.**

26  Government Response:

1  (1) Yes, for what Manuel took and gave to the government. Unsure for any other electronic

2  media.

3  (2) Item(s) not in government's actual possession, custody, or control. Constructive possession

4  theories do not properly invoke Rule 16(a)(1)(E). The request is outside the scope of Rule 16

5  because it is not supported by a factual showing of materiality. Giglio information need not be

6  disclosed until witness testifies. Prospective witness statements are excluded from Rule 16 and

7  available only pursuant to Jencks at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This

8  applies even if it is Brady.  United States v. Jones, 612 F.2d 453, 454 (9th Cir. 1979). Request is

9  over broad in that it purports to seek documents that are unrestricted as to time, subject, or

10  investigation.

11  *Court Ruling – Same ruling as #25.*

12  **29.     Any USB "thumb drives," "zip drives," or "memory sticks" furnished by the**

13  **government to Anthony Manuel.**

14  Government Response:

15  (1) No such item exists.

16  (2) No privileged documents withheld.

17  *Court Ruling – The disputed Request is moot.*

18  **30.     Any administrative memoranda maintained in the offices of the FBI which discuss**

19  **the relationship between Agent Artley and Mr. Vilfer, or other agents involved in this case**

20  **and concerning Mr. Vilfer's past employment with the FBI, his having provided**

21  **"informant" information concerning Anthony Manuel or regarding the operations of SK**

22  **Foods to Agent Artley and/or other members of the FBI and his employment as an**

23  **investigator by Morning Star, Chris Rufer or their counsel.**

24  Salyer Materiality Overview:

25      The government has acknowledged that former FBI agent Don

26  Vilfer is a central figure in the investigation, that he provided

1  reports to the FBI detailing, inter alia, his investigation of

2  Randal Rahal and Anthony Manuel, and that until 2001. Mr. Vilfer

3  served as a Special Agent in the White Collar Crimes and Computer

4  Crimes Squads of the Sacramento FBI, the same office where he

5  supervised Agent Artley. The documents and information requested

6  are relevant for impeachment purposes.

7  Government Response:

8  (1) No.

9  (2) The defendant now admits that he seeks these materials because, depending on what they say,

10  they might be helpful for impeachment. That is the same argument rejected in Santiago. In any

11  case, Giglio information need not be disclosed until witness testifies. The request is over broad in

12  that it purports to seek a vast universe documents that are unrestricted as to time or investigation.

13  Given that Vilfer was Artley's supervisor, this would grant discovery over essentially every

14  Artley case investigated during that period.

15  *Court Ruling – The undersigned included Salyer's materiality overview in that it exemplifies the*

16  *lack of materiality pursuant to the standards set forth in case law.  Until further order of the*

17  *district court, the Giglio timing objection is well taken.*

18  **31.      All internal memoranda or reports which discuss the filing, the timing of the filing**

19  **or the disposition of the civil legal actions brought by Morning Star against SK Foods or**

20  **Scott Salyer, and particularly the state court lawsuit in Merced County for alleged theft of**

21  **trade secrets.**

22  Salyer Materiality Overview:

23     The government has agreed to turn over all Brady/Giglio

24  materials, but, other than Anthony Manuel's plea agreement, has

25  not disclosed whether he (or his family members) received

26  additional consideration in exchange for his cooperation. Public

records reflect that Morningstar filed a civil action against SK Foods and Manuel for alleged theft of trade secrets, as to which Manuel was dismissed. The report prepared by Vilfer, and adopted by Agent Artley in his search warrant affidavit, reveals that Manuel's wife was participatory in his fraudulent scheme but no document provided reveals whether she received "a pass" for that conduct because of his plea. <u>Giglio</u> entitles the defendant to discover whether additional consideration or benefits were provided to Manuel through the government's intervention, including any influence exerted by the government on Morningstar to dismiss him as a civil defendant.

Government's Response:

(1)  No.

(2)  Internal government document(s) excluded from discovery under Rule 16(a)(2). The defendant admits that this request is related to impeachment for Manuel. By the time that Manuel testifies, the government will disclose any benefits it conferred upon his wife.

*Court Ruling – The government's objection is sustained except insofar as it is inconsistent with the previously set forth <u>Brady/Giglio</u> organization order.  If additional <u>Brady/Giglio</u> materials exist they shall be disclosed or identified as appropriate.*

**32.      Anthony Manuel's day planner, notes, diary, or any electronic records which he used or referred to refresh his recollection concerning past conversations as recounted in the June 4, 2007, Title III application, including the four-page document he provided Agent Artley as detailed at paragraph 53, page 19 of the application.**

Government's Response:

(1)  The four-page document has been turned over. Everything that Manuel provided in this investigation has been turned over.

1  (2)  For other documents, the items are not in government's actual possession, custody, or

2  control. Constructive possession theories do not properly invoke Rule 16(a)(1)(E). Defendant's

3  supposition that Manuel's diaries might differ from what Manuel told SA Artley does not make a

4  showing of materiality. Giglio information not disclosable until testimony.

5  *Court Ruling – The government's response in (1) is satisfactory. No further response ordered.*

6  **33.    All notes prepared by Anthony Manuel during the course of the investigation or**

7  **otherwise relied upon by him.**

8  Government's Response:

9  (1) Yes, for what notes Manuel gave to the government. Otherwise, no.

10  (2) Item(s) not in government's actual possession, custody, or control. Constructive possession

11  theories do not properly invoke Rule 16(a)(1)(E). Defendant's supposition that Manuel's notes

12  might differ from what Manuel told SA Artley does not make a showing of materiality. Giglio

13  information not disclosable until testimony.

14  *Court Ruling – The government's response is satisfactory, again, subject to the Brady/Giglio*

15  *organization requirements.*[5]

16  **34.    All documents, including authorizations from the Department of Justice in**

17  **Washington, D.C., relating to the approved use of Anthony Manuel as a confidential**

18  **informant, including all documentation which authorized him to conduct limited criminal**

19  **activity, and reports and other records pertaining to his use as an active informant during**

20  **his employment at SK Food, including the FBI 137 or 270 files, any and all administrative**

21  **memoranda that were used as part of this case file, requests for authorization, approvals**

22  **and interim reporting documents to supervisory personnel in Sacramento and to FBI**

23  **headquarters and to the United States Department of Justice.**

24  Salyer Materiality Overview:

25

26      [5]  The undersigned will stop inserting the Brady/Giglio disclosure/identification ruling as it applies to every request, and need not be interminably repeated.

1    As the government's primary informant. Anthony Manuel agreed

2    to wear a body wire in which he infiltrated and recorded company

3    meetings and obtained various company records to assist the

4    government investigators. Discovery provided to date reveals that

5    Manuel personally engaged in illicit conduct while employed at SK

6    Foods relating to the alteration of product labels and quality

7    control data. According to Department of Justice guidelines, a

8    special authorization is required for an informant to engage in

9    unlawful acts, and administrative files are separately maintained

10   by the FBI. Again, because much of the government's evidence in

11   the case, including that presented by the government in support

12   of its Title III and search warrant applications, turns on

13   Manuel's activities as an informant, the information and

14   documents sought are plainly material to the defense.

15   Government's Response:

16   (1) No.

17   (2) The claimed basis for materiality is for the defendant to monitor compliance with DOJ/FBI

18   guidelines. Internal government documents are excluded from discovery under Rule 16(a)(2).

19   The request fails the materiality test, both as a "sword" request and because the courts do not

20   enforce agent compliance with internal executive branch guidelines. United States v. Ani, 138

21   F.3d 390, 392 (9th Cir. 1998); United States v. Cacares, 440 U.S. 741, 755-56 (1979). Materials

22   relevant to agency guidelines are not discoverable as "material to the defense" or Brady. See, e.g.,

23   United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000).

24   *Court Ruling – The government's objection is supported by law.  Objection sustained.*

25   **35.    All documents, including authorizations from the Department of Justice in**

26   **Washington, D.C., relating to the identity and approved use of any other confidential**

1   **informants, including but not limited to, Gregory Wuttke.**

2   Government's Response:

3   (1)  No.

4   (2) The claimed basis for materiality is for the defendant to monitor compliance with DOJ/FBI

5   guidelines. Internal government documents are excluded from discovery under Rule 16(a)(2).

6   The request fails the materiality test, both as a "sword" request and because the courts do not

7   enforce agent compliance with internal  executive branch guidelines. United States v. Ani, 138

8   F.3d 390, 392 (9th Cir. 1998); United States v. Cacares, 440 U.S. 741, 755-56 (1979). Materials

9   relevant to agency guidelines are not discoverable as "material to the defense" or Brady. See, e.g.,

10   United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000).

11   *Court Ruling – The government's objection is supported by law.  Objection sustained.*

12   **36.       The entire confidential informant files for Anthony Manuel (270D-SC-41067) and**

13   **Gregory Wuttke (270D-SC-40243), including any payment or expense records.  And, if an**

14   **informant file has been created for Chris Rufer, all such documents as they apply to him as**

15   **well as his informant establishment file.**

16   Government Response:

17   (1) No. AUSA Flynn has reviewed informant files for Brady/Giglio and turned over all Forms

18   1023, Forms 302, and consensual monitoring consent forms relevant to these named persons. No

19   payment or expense records exist because these people were not paid or reimbursed. Documents

20   relevant to compliance with FBI/DOJ internal guidelines have not been disclosed.

21   (2) Other than inquiries about payments (Giglio), the claimed basis for materiality is for the

22   defendant to monitor compliance with DOJ/FBI guidelines. Internal government documents are

23   excluded from discovery under Rule 16(a)(2). The request fails the materiality test, both as a

24   "sword" request and because the courts do not enforce agent compliance with internal executive

25   branch guidelines. United States v. Ani, 138 F.3d 390, 392 (9th Cir. 1998); United States v.

26   Cacares, 440 U.S. 741, 755-56 (1979). Materials relevant to agency guidelines are not

1  discoverable as "material to the defense" or <u>Brady</u>. See, e.g., <u>United States v. Fernandez</u>, 231

2  F.3d 1240, 1246 (9th Cir. 2000).

3  *Court Ruling – The government's response is satisfactory.*

4  **37.    Documents relating in any way to any threats of prosecution, written or oral**

5  **promises of immunity or leniency, plea agreements, negotiations, or other benefits offered,**

6  **conferred, or provided by the government to any informant or cooperating witness it**

7  **intends to call as a witness at trial.**

8  Government Response:

9  (1) Not everything. Yes for plea agreements and interview memoranda. Production of witnesses'

10 proffer agreements and/or immunity letters is not yet complete.

11 (2) Defendant seeks this as <u>Giglio</u> information. It need not be disclosed until witness testifies.

12 *Court Ruling – The district judge will make his ruling with respect to the timing of <u>Giglio</u>*

13 *disclosure; the undersigned's identification order stands.*

14 **38.    Any record of criminal arrests or convictions of any witness or informant the**

15 **government intends to call as a witness at trial, or of any alleged co-conspirator in**

16 **connection with this case.**

17 Government Response:

18 (1)  No.

19 (2)  Defendant seeks this as <u>Giglio</u> information. It need not be disclosed until witness testifies.

20 With regard to persons the government does not intend to call as witnesses, the defendant's

21 request is not supported by a materiality showing.

22 *Court Ruling – This request is granted.  As previously held, Rule 16(a)(1)(D) carves out an*

23 *exception to the otherwise normal <u>Giglio</u> disclosure timing.  The court's previously set forth*

24 *<u>Giglio</u> identification order stands.*

25 **39.    Documents or information that relate to any bias, prejudice, or improper motive on**

26 **the part of any informant or witness the government intends to call at trial.**

Government Response:

(1)  Unsure.

(2)  Giglio information need not be disclosed until witness testifies.

*Court Ruling – The district judge will make his ruling with respect to the timing of Giglio disclosure.[6]*

**40.     Exculpatory statements made by any person to the government or its agents, including any statements made by any informants or cooperating witnesses during any "proffer" or "Queen for a Day" session(s), interview session(s), or before the Grand Jury, that relate to the charges alleged in the indictment.**

Government Response:

(1)  Defendant has all memoranda of pre-indictment interviews (IRS MDIs, FBI 302s, and Antitrust Division Memos), regardless of whether those interviews were subject proffer agreements. The defendant can decide if the materials contain exculpatory evidence.  If by "its agents," the defendant means persons and entities not on the prosecution team as set forth in the government's response, the answer is that we do not know and such statements are not in the government's actual possession for Brady purposes.

(2) Prospective witness statements are excluded from Rule 16 and available only pursuant to Jencks at the time of testimony. Rule 16(a)(2), 18 U.S.C. § 3500. This applies even if it is Brady. United States v. Jones, 612 F.2d 453, 454 (9th Cir. 1979).

*Court Ruling – In accordance with the court's previous ruling, the government shall identify what it reasonably believes is exculpatory.*

**Requests 41-47 – Documents Related to the Conduct of the Investigation**

Salyer Materiality Overview:

    The government has acknowledged that former FBI agent Don

---

[6]Again, the court's Giglio identification order is in effect for every request and will not be repeated again.

Vilfer is a central figure in the investigation, that he provided reports to the FBI detailing, inter alia, his investigation of Randal Rahal and Anthony Manuel, and that he had multiple contacts with investigators. As the government's primary informant. Anthony Manuel had multiple contacts with investigators, agreed to wear a body wire in which he infiltrated and recorded company meetings, and obtained various company records to assist the government investigators.

While the government has provided typewritten witness statements and investigative reports concerning their contacts and interactions, it has not provided the recording of the initial interview of the government's primary informant, Anthony Manuel, which it admits it has in its possession but has not provided to the defense. Opposition at 6:6-10. The government has likewise not provided: any reports or documents detailing any contacts between Anthony Manuel and the government before he became a government informant in August 2006; any reports or documents detailing any contacts between Anthony Manuel and Don Vilifer before Manuel became a government informant in August 2006; all reports or documents detailing any contacts between Anthony Manuel and the government after he became a government informant in August 2006, including all such contacts between the time period of August 8, 2006 and October 18, 2006 to which no reports appear in the discovery; all reports or documents detailing any contacts between Anthony Manuel.

\\\\\

Government Rebuttal to "Materiality Overview" for Requests 41-47:

The Defendant is not entitled to these things merely to satisfy his curiosity about every step in the investigation. As in <u>Santiago</u>, a list of facts the Defendant wants to know is not a factual showing of materiality. There is no factual showing for any of these requests.

**41.   All correspondence, documents, e-mails, text messages, communications and faxes exchanged between Anthony Manuel and any government agent, including Agent Artley.**

Government Response:

(1)  Yes, except for recorded interview.

(2)  Prospective witness statements are excluded from Rule 16 and available only pursuant to <u>Jencks</u> at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This applies even if it is <u>Brady</u>. <u>United States v. Jones</u>, 612 F.2d 453, 454 (9th Cir. 1979).

*Court Ruling – Salyer is simply seeking open file discovery here.  While something in these files may be material and producible, defendant is not entitled to ask for entire files on the chance something good (for him) will turn up. The request is denied.*

**42.   All correspondence, documents, e-mails, text messages, communications and faxes exchanged between Anthony Manuel and Don Vilfer.**

Government Response:

(1)  No.

(2)  Item(s) not in government's actual possession, custody, or control. Constructive possession theories do not properly invoke Rule 16(a)(1)(E). Over broad in that there is no time or subject matter restriction at all.

*Court Ruling – Salyer is simply seeking open file discovery here.  While something in these files may be material and producible, defendant is not entitled to ask for entire files on the chance something good (for him) will turn up.  The request is denied.*

**43.   All reports or documents detailing any contacts between Anthony Manuel and the government before he became a government informant in August 2006.**

Government Response:

(1)  Not everything. Yes for memoranda of his interviews in this case. No for the recording of his interview. No for other documents such as his tax returns or any unknown contacts not involved in this case.

(2)  Internal government document(s) excluded from discovery under Rule 16(a)(2). Item(s) not in government's actual possession, custody, or control. Constructive possession theories do not properly invoke Rule 16(a)(1)(E). <u>Giglio</u> information need not be disclosed until witness testifies. Prospective witness statements are excluded from Rule 16 and available only pursuant to <u>Jencks</u> at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This applies even if it is <u>Brady</u>. <u>United States v. Jones</u>, 612 F.2d 453, 454 (9th Cir. 1979). Request is over broad in that it purports to seek a vast universe documents that are unrestricted as to time, subject, or investigation.

*Court Ruling – Salyer is simply seeking open file discovery here.  While something in these files may be material and producible, defendant is not entitled to ask for entire files on the chance something good (for him) will turn up.  The request is denied.*

**44.    All reports or documents detailing any contacts between Anthony Manuel and Don Vilifer before he became a government informant in August 2006.**

Government Response:

(1)  No.

(2)  Item(s) not in government's actual possession, custody, or control. Constructive possession theories do not properly invoke Rule 16(a)(1)(E). The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality. Prospective witness statements are excluded from Rule 16 and available only pursuant to <u>Jencks</u> at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This applies even if it is <u>Brady</u>. <u>United States v. Jones</u>, 612 F.2d 453, 454 (9th Cir. 1979). <u>Giglio</u> information need not be disclosed until witness testifies. Outside the scope of Rule 16 as it appears sought in support of a "sword" motion to accuse the government of

46

1   misconduct.  Armstrong.  Request is over broad in that it purports to seek a universe documents

2   that are unrestricted as to time, subject, or investigation.

3   *Court Ruling – Salyer is simply seeking open file discovery here.  While something in these files*

4   *may be material and producible, defendant is not entitled to ask for entire files on the chance*

5   *something good (for him) will turn up.  The request is denied.*

6   **45.    All reports or documents detailing any contacts between Anthony Manuel and the**

7   **government after he became a government informant in August 2006, including all such**

8   **contacts between the time period of August 8, 2006 and October 18, 2006, and the audio**

9   **recording of Manuel's initial interview by the IRS and the FBI recorded by the IRS**

10   **(mentioned in Bates No. 2155).**

11   Government Response:

12   (1)  Defendant has all reports of interviews of Manuel, all emails from Manuel, and every report

13   of a conversation with Manuel. He does not have the recording. Defendant does not have

14   Manuel's tax returns.

15   (2)  Prospective witness statements are excluded from Rule 16 and available only pursuant to

16   Jencks at the time of testimony. Rule 16(a)(2r, 18 U.S.C. 3500. This applies even if it is Brady.

17   United  States v. Jones, 612 F.2d 453, 454 (9th Cir. 1979). Giglio information need not be

18   disclosed until witness testifies.

19   *Court Ruling – Salyer is simply seeking open file discovery here.  While something in these files*

20   *may be material and producible, defendant is not entitled to ask for entire files on the chance*

21   *something good (for him) will turn up.  The request is denied.*

22   **46.    All reports or documents detailing any contacts between Anthony Manuel and Don**

23   **Vilfer after he became a government informant in August 2006.**

24   Government Response:

25   (1)  Unsure as to whether any such documents exist. The government has none.

26   (2)  Item(s) not in government's actual possession, custody, or control. Constructive possession

theories do not properly invoke Rule 16(a)(1)(E).

*Court Ruling – Salyer is simply seeking open file discovery here.  While something in these files may be material and producible, defendant is not entitled to ask for entire files on the chance something good (for him) will turn up.  It appears in any event that no such documents exist. The request is denied.*

**47.    Don Vilfer's entire file detailing his investigation of Anthony Manuel, Randal Rahal, and SK Foods, including his original notes.**

Government response:

(1)  Defendant has whatever Vilfer provided to the government.

(2)   With regard to any other documents, item(s) not in government's actual possession, custody, or control. Constructive possession theories do not properly invoke Rule 16(a)(1)(E).

*Court Ruling – The government's response is satisfactory.*

**48.    All documents and materials, including SK Foods product samples, taken by the following cooperating government witnesses or by other cooperating witnesses from SK Foods during the course of their employment there whether before or after he or she began cooperating with the government: Alan Huey, Jennifer Dahlman, Steven King, Shondale Seymour, Mark Grewal, Jeffrey Beasely, Mark McCormick, Lisa Crist, Jeanne Johnston.**

Government Response:

(1)  Yes, all extant tangible items taken from SK Foods and provided to investigators for this investigation have been produced or made available. The contents of the Manuel sample bags were destroyed: If any of these people took other things from SK Foods but did not give them to the government, such things have not been produced.

(2)  Constructive possession theories do not properly invoke Rule 16(a)(1)(E). Request is over broad in that it purports to seek an unknown universe of things unrestricted as to time, subject, or investigation.

*Court Ruling – The government's response is satisfactory.*

**49.     All documents and materials, including SK Foods product samples, delivered or otherwise provided to Agent Artley or any government agent by the following cooperating government witnesses or by any other cooperating witness during the course of their employment at SK Foods: Alan Huey, Jennifer Dahlman, Steven King, Shondale Seymour, Mark Grewal, Jeffrey Beasely, Mark McCormick, Lisa Crist, Jeanne Johnston, Randy Yingling.**

Government Response:

(1)  With regard to the investigation, yes, except for the samples that were destroyed after FDA / USDA testing. However, these people sent things like their tax returns to the government in the many years they were employed at SK Foods. Such items have not been produced at this time.

(2)  Request is over broad in that it purports to seek a vast universe documents that are unrestricted as to time, subject, or investigation. The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality. <u>Giglio</u> information need not be disclosed until witness testifies. Witness statements are not discoverable at this time.

*Court Ruling – The government's response is satisfactory.*

**50.     All USB "thumb drives," "zip drives" or "memory sticks" containing documents from SK Foods provided by Alan Huey, Jennifer Dahlman, and Jeffrey Beasely, or any other current or former SK Foods employee.**

Government Response:

(1) Yes.

(2) n/a

*Court Ruling – any dispute is moot.*

**51.     All correspondence, documents, e-mails, text messages, communications and faxes exchanged between the following cooperating government witnesses or any other cooperating government witness and any government agent, including Agent Artley: Randal Rahal, Alan Huey, Jennifer Dahlman, Steven King, Shondale Seymour, Mark**

1  **Grewal, Jeffrey Beagly, Mark McCormick, Lisa Crist, Jeanne Johnston, Randy Yingling,**

2  **James Wahl**.

3  Government Response:

4  (1) Yes, within the definition of "government" set forth in the Government's Memorandum in

5  Opposition. Some correspondence through attorneys has not been disclosed.

6  (2) Giglio information need not be disclosed until witness testifies. Witness statements are not

7  discoverable at this time. The request is outside the scope of Rule 16 because it is not

8  supported by a factual showing of materiality. Request is over broad in that it purports to seek a

9  vast universe documents that are unrestricted as to time, subject, or investigation.

10  *Court Ruling – The undesigned is unclear why (2) was included if all documents have been*

11  *produced (save for some attorney documents).  The definition of government has been resolved*

12  *in the prosecution's favor, so it appears that the dispute is moot.*

13  **52.     All reports or documents detailing any contacts between the following cooperating**

14  **government witnesses or any other cooperating government witness and the government:**

15  **Randal Rahal, Alan Huey, Jennifer Dahlman, Steven King, Shondale Seymour, Mark**

16  **Grewal, Jeffrey Beasley, Mark McCormick, Lisa Crist, Jeanne Johnston, Randy Yingling,**

17  **James Wahl.**

18  Government Response:

19  (1)  Yes for reports. No for "all documents."

20  (2)  Internal government document(s) excluded from discovery under Rule 16(a)(2). The request

21  is outside the scope of Rule 16 because it is not supported by a factual showing of materiality.

22  Prospective witness statements are excluded from Rule 16 and available only pursuant to Jencks

23  at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This applies even if it is Brady. United

24  States v. Jones, 612 F.2d 453, 454 (9th Cir. 1979). Giglio  information need not be disclosed

25  until witness testifies. Outside the scope of Rule 16 if sought in support of a "sword" motion to

26  accuse the government of misconduct. Armstrong. Request is over broad in that it purports to

1   seek a vast universe documents that are unrestricted as to time, subject, or investigation.

2   *Court Ruling – Subject to the court's <u>Brady</u>/Giglio ruling, the government's response is*

3   *satisfactory.*

4   **53.     All correspondence, documents, e-mails, text messages, communications and faxes**

5   **exchanged between Morning Star employee Gregory Wuttke and any government agent,**

6   **including Agent Artley.**

7   Government Response:

8   (1)  Yes with regard to this investigation.

9   (2)  Request is over broad in that it purports to seek a vast universe documents that are

10   unrestricted as to time, subject, or investigation (his tax returns, e.g., have not been disclosed).

11   The request is outside the scope of Rule 16 because it is not supported by a factual showing of

12   materiality.

13   *Court Ruling – It appears that the dispute is mooted by the government response in (1).*

14   **54.     All reports or documents detailing any contacts between Gregory Wuttke and the**

15   **government.**

16   Government Response:

17   (1)  Yes for agent reports in this investigation, no for "all documents."

18   (2)  Internal government document(s) excluded from discovery under Rule 16(a)(2). The request

19   is outside the scope of Rule 16 because it is not supported by a factual showing of materiality.

20   Prospective witness statements are excluded from Rule 16 and available only pursuant to <u>Jencks</u>

21   at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This applies even if it is <u>Brady</u>. <u>United</u>

22   <u>States v. Jones</u>, 612 F.2d 453, 454 (9th Cir. 1979). <u>Giglio</u> information need not be disclosed until

23   witness testifies. Outside the scope of Rule 16 if sought in support of a "sword" motion to accuse

24   the government of misconduct. <u>Armstrong</u>.

25   *Court Ruling – The government's response is appropriate.*

26   \\\\\

**55.     All notes prepared by Gregory Wuttke during the course of the investigation or otherwise relied upon by him.**

Government Response:

(1)  No.

(2)  Item(s) not in government's actual possession, custody, or control. Constructive possession theories do not properly invoke Rule 16(a)(1)(E).

*Court Ruling – Given the government's response, and it singular objection, the undersigned assumes that it either has no such documents or that it has disclosed what was otherwise in the possession of the government.  If the undersigned is in error on the latter assumption, the notes shall be produced.*

**56.     All correspondence, documents, e-mails, text messages, communications and faxes exchanged between Chris Rufer and any government agent, including Agent Artley.**

Government Response:

(1)  Unsure. All documents Rufer sent to FBI and IRS-CI in this investigation have been disclosed. But this request is extremely broad. For example, tax returns not disclosed and we cannot say what in all of history Rufer has sent to other government components.

(2)  The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality. Request is over broad in that it purports to seek a vast universe of documents that are unrestricted as to time, subject, or investigation.

*Court Ruling – The undersigned understands by this response that the government (as defined) has disclosed all Rufer documents pertinent to the Salyer et al. investigation.  If so, the response is appropriate.*

**57.     All reports or documents detailing any contacts between Chris Rufer and the government.**

Government Response:

(1)  Yes for agent reports in this investigation. No for all documents.

(2)  Internal government document(s) excluded from discovery under Rule 16(a)(2). The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality. If he had unrelated meetings, they have not been disclosed. <u>Giglio</u> information need not be disclosed until witness testifies.

*Court Ruling - The government's response is appropriate and satisfactory.*

**58.     All correspondence, documents, e-mails, text messages, communications and faxes exchanged between any Morning Star employee or agent and any government agent, including Agent Artley.**

Government Response:

(1)  No.

(2)  Request is over broad in that it purports to seek a vast universe of documents that are unrestricted as to time, subject, or investigation. The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality.

*Court Ruling – The government's response is appropriate and satisfactory.*

**59.     All reports or documents detailing any contacts between any Morning Star employee or agent and the government.**

Government Response:

(1)  Yes for reports in this investigation. No for "all documents."

(2)  Request is over broad in that it 'purports to seek a vast universe documents that are unrestricted as to time, subject, or investigation. Read literally, the defendant is asking for all contacts with any Morning Star employee, for whatever reason (FDA/USDA/IRS). The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality. <u>Giglio</u> information need not be disclosed until witness testifies. Internal government document(s) excluded from discovery under Rule 16(a)(2).

*Court Ruling – The government's response is appropriate and satisfactory.*

\\\\\

1  **60.     All correspondence, documents, e-mails, text messages, communications and faxes**

2  **exchanged between any other government informant or agent and any government agent,**

3  **including Agent Artley.**

4  Government Response:

5  (1)  No.

6  (2)  Request is over broad in that it purports to seek a vast universe of documents that are

7  unrestricted as to time, subject, or investigation. This request perfectly exemplifies the

8  defendant's claim of entitlement to every government document ever created. The request calls

9  for the government to produce all documents relating to every criminal investigation using an

10  informant ever in its history. The request is outside the scope of Rule 16 because it is not

11  supported by a factual showing of materiality. Giglio information need not be disclosed until

12  witness testifies. Prospective witness statements are excluded from Rule 16 and available only

13  pursuant to Jencks at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500.  This applies even if

14  it is Brady. United States v. Jones, 612 F.2d 453, 454 (9th Cir. 1979). Outside the scope of Rule

15  16 if sought in support of a "sword" motion to accuse the government of misconduct. Armstrong.

16  *Court Ruling – Even if deemed to be a request relating to the Salyer et al. investigation, the*

17  *request bears no indicia of materiality as defined in law. The government's response is*

18  *appropriate and satisfactory.*

19  **61.     All reports or documents detailing any contacts between any other government**

20  **informant or agent and the government**.

21  Government Response:

22  (1)  No.

23  (2)  Again, this request best exemplifies the defendant's demands as covering everything the

24  government has ever done. The request is over broad in that it purports to seek a vast universe of

25  documents that are unrestricted as to time, subject, or investigation. A literal response to this

26  request would require the government to produce all documents relating to every criminal

investigation using an informant in its history. The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality. <u>Giglio</u> information need not be disclosed until witness testifies. Prospective witness statements are excluded from Rule 16 and available only pursuant to <u>Jencks</u> at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This applies even if it is <u>Brady</u>. <u>United States v. Jones</u>, 612 F.2d 453, 454 (9th Cir. 1979). Outside the scope of Rule 16 if sought in support of a "sword" motion to accuse the government of misconduct. <u>Armstrong</u>.

*Court Ruling – Same as 60.*

**62.     All correspondence, documents, e-mails, text messages, communications and faxes exchanged between any of SK Foods' customers and any government agent or the government, including Agent Artley, or otherwise obtainable by the government including: copies of customers' handbooks, contract specifications (including recipes), customer samples and results, customer quality control policies and audits, internal customer lab sheets and reports, freight documents for SK Foods products from 2004-2008, receiving documents for SK Foods products from 2004-2008, batch usage reports, final product testing results (including out of specification/on hold reports), audit reports, HACCP procedures, and retail customer complaints.**

Government Response:

(1)  All third party business records obtained for this investigation have been disclosed or made available. Other documents have not.

(2)  Request is over broad in that it purports to seek a vast universe documents that are unrestricted as to time, subject, or investigation. Read literally, this would require production of anything that any of these food companies has ever sent to FDA or USDA. The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality. Victim negligence would be no defense in this case. The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality. He has what the government has of SK

Foods's customers' business records of their prices, testing procedures, complaints received, and audits. But that does not make them material to these charges for the reasons set forth above.

*Court Ruling – Same as 60.*

**63.     All reports or documents detailing any contacts between any of SK Foods's customers and the government.**

Government Response:

(1)  No.

(2)  Request is over broad in that it purports to seek a vast universe documents that are unrestricted as to time, subject, or investigation. Government cannot search for all documents exchanged between, for example, Kraft or Con Agra and the FDA and USDA. The request is also outside the scope of Rule 16 because it is not supported by a factual showing of materiality. Giglio information need not be disclosed until witness testifies. Witness statements are not discoverable at this time.

*Court Ruling– Same as #60.*

**64.     All correspondence, documents, e-mails, text messages, communications and faxes exchanged between any of SK Foods'competitors, including Ingomar and Los Gatos, and any government agent, including Agent Artley.**

Government Response:

(1)  No. In its discretion, the government will at a later time produce some attorney correspondence responsive to this request.

(2)  Request is over broad in that it purports to seek a vast universe documents that are unrestricted as to time, subject, or investigation. Government cannot search for all documents exchanged between, for example, Kraft or Con Agra and the FDA and USDA. The request is also outside the scope of Rule 16 because it is not supported by a factual showing of materiality. A defendant may not use discovery as a fishing expedition to probe the strength of the government's case before trial. United States v. Chon, 210 F.3d 990, 994-95 (9th Cir 2000) (defendants are

entitled to the discovery of only those materials that are relevant to the defendant's response to the Government's case in chief), United States v. Marshal, 532 F.2d 1279, 1285 (9th Cir 1976). Defense counsel is not entitled to review government files in search of materials that are arguably discoverable. Pennsylvania v. Ritchie, 480 U.S. 39 (1987). Giglio information need not be disclosed until witness testifies.  Prospective witness statements are excluded from Rule 16 and available only pursuant to Jencks at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This applies even if it is Brady. United States v. Jones, 612 F.2d 453, 454 (9th Cir. 1979).

*Court Ruling – Same as 60.*

**65.    All reports or documents detailing any contacts between any of SK Foods's competitors, including Ingomar and Los Gatos, and the government**.

Government Response:

(1)  No.

(2)  Request is over broad in that it purports to seek a vast universe documents that are unrestricted as to time, subject, or investigation. Giglio information need not be disclosed until witness testifies. Prospective witness statements are excluded from Rule 16.and available only pursuant to Jencks at the time of testimony. Rule 16(a)(2), 18 U.S.C. 3500. This applies even if it is Brady. United States v. Jones, 612 F.2d 453, 454 (9th Cir. 1979). Internal government document(s) excluded from discovery under Rule 16(a)(2).

*Court Ruling – Same as 60.*

**66.    All scripts or list(s) of questions provided by Agent Artley or any other government agent to persons or informants making any telephone calls or sending any emails on behalf of the government during its investigation.**

Government Response:

(1)  Yes.

(2)  n/a

*Court Ruling – Any dispute regarding this request is moot.*

**67.    All authorization memoranda and confirmation letters to and from the United States Attorney or the FBI corresponding to each respective occasion in which a government informant or government agent wore a body wire or consensually monitored a telephone call during the course of the government's investigation.**

Government Response:

(1)  No.

(2)  Internal government document(s) excluded from discovery under Rule 16(a)(2). The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality. Fails the materiality test, both as a "sword" request and because the courts do not enforce internal executive branch guidelines. United States v. Ani, 138 F.3d 390, 392 (9th Cir. 1998); United States v. Cacares, 440 U.S. 741, 755-56 (1979). Materials relevant to agency guidelines are not discoverable as "material to the defense" or Brady. See, e.g., United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000).

*Court Ruling – The government's privilege objection is sustained.*

**68.    Chain of custody forms for all recordings of body wire and consensually recorded telephone conversations, including the sealing of any original tapes or compact discs memorializing same.**

Government Response:

(1)  Yes. Chain of custody forms (1B envelopes) are maintained in ELSUR department and available for inspection.

(2)  n/a

*Court Ruling – Any dispute regarding this request is moot.*

**69.    Copie(s) of minimization training memorand(a) provided by the United States Attorney to any individuals or agents involved in any of the Title III intercepts in this case.**

Government Response:

(1)  Yes

(2)  n/a

*Court Ruling – any dispute regarding this request is moot.*

**70.      Minimization logs, the pen register records and logs, the minimization briefing notes and instructions, the names of all agents working on the Title III and their assignments, the authorization and confirmation letters to the FBI and United States Attorney for each body wire and consensually-monitored telephone call, the signed consent forms by Anthony Manuel or anyone else who agreed to wear a body wire or have calls monitored. All such consent forms are requested even if no recording was made or no contact with the target of the call was achieved.**

Government Response:

(1)  Yes, yes, yes, no, no (again), yes.

(2)  The government has no duty to "turn over all documents within its call." The underlined elements of the request are outside the scope of Rule 16 because it they are not supported by a factual showing of materiality. Defendant cannot just broadly claim that he wants to check if these documents will help him in motions practice, particularly where he only broadly invokes "proper statutory procedures" and cannot explain materiality factually and specifically. The list of agents and the "confirmation letters" fail the materiality test, both as a "sword" request and because the courts do not enforce internal executive branch guidelines. United States v. Ani, 138 F.3d 390, 392 (9th Cir. 1998); United States v. Cacares, 440 U.S. 741, 755-56 (1979). Materials relevant to agency guidelines are not discoverable as "material to the defense" or Brady. See, e.g., United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000). Internal government document(s) excluded from discovery under Rule 16(a)(2).

*Court Ruling – The government's response is appropriate and satisfactory.*

**71.      FBI files relating to the Title III applications and use, as maintained in Sacramento and in FBI headquarters, including any administrative memoranda describing and discussing the Title III and its implementation.**

Government Response:

(1)  No.

(2)  The request is outside the scope of Rule 16 because it is not supported by a factual showing of materiality. The defendant cannot just broadly state that "certain things are required" and he wants to check if the affidavit's recitation of, for example, DOJ approval, is true. He cites no case at all on this point, much less one that entitles him to all of FBI's files relevant to the wire on Rahall. Defendant cannot just broadly claim that he wants to check if these documents will help him in motions practice. Fails the materiality test, both as a "sword" request and because the courts do not enforce internal executive branch guidelines. United States v.  Ani, 138 F.3d 390, 392 (9th Cir. 1998); United States v. Cacares, 440 U.S. 741, 755-56 (1979). Materials relevant to agency guidelines are not discoverable as "material to the defense" or Brady. See, e.g., United States v. Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000). Internal government document(s) excluded from discovery under Rule 16(a) (2).

*Court Ruling – This request is repetitive and is denied for reasons previously set forth.*

**72.    To the extent that Agent Artley or his partner agent on the ongoing Title III intercepts, including any 10 day progress reports or extensions, provided verbal reports to the issuing District Court Judge, all memoranda and FBI administrative memoranda describing the report or the court reporter's transcript of the meeting with the Judge.**

Government Response:

(1)  There were no verbal reports.

(2)  n/a

*Court Ruling – This response is satisfactory.*

**73.    All correspondence, documents, e-mails, text messages, communications and faxes exchanged between any government agent, including Agent Artley or the United States Attorneys prosecuting this case, and the bankruptcy Trustee or his counsel or the United States Trustee.**

1   Government Response:

2   (1)  No.

3   (2)  The request is outside the scope of Rule 16 because it is not supported by a factual showing

4   of materiality. Internal government document(s) excluded from discovery under Rule 16(a)(2).

5   Giglio information need not be disclosed until witness testifies. Outside the scope of Rule 16 if

6   sought in support of a "sword" motion to accuse the government of misconduct. Armstrong.

7   Request is over broad in that it purports to seek a vast universe documents that are unrestricted as

8   to time, subject, or investigation. Internal government document(s) excluded from discovery

9   under Rule 16(a)(2).

10  *Court Ruling – While it is not beyond conception that there may be some material documents*

11  *pertinent to this request, this civil discovery "all documents" request is inappropriate in*

12  *criminal discovery.*

13  **74.    All reports or documents detailing any contacts between any government agent,**

14  **including Agent Artley or the United States Attorneys prosecuting this case, and the**

15  **bankruptcy Trustee or his counsel or the United States Trustee.**

16  Salyer Materiality Overview:

17      The case law is manifest that the United States Trustee and

18  the SK Foods bankruptcy trustee are sufficiently identified with

19  the U.S. Department of Justice and a member of the prosecution

20  team, regardless of whether or not this is a "bankruptcy fraud

21  case." The bankruptcy Trustee's recent billing statements also

22  make it clear that the prosecution has met and conferred with the

23  Trustee and his counsel. Whether or not they are members of the

24  prosecution team, to the extent the government has had any

25  contact with the Trustees, their counsel, or the creditors in the

26  bankruptcy, that information should be provided insofar as the

1  Trustee's actions in bankruptcy-related proceedings constitute

2  -government- conduct for purposes of the Fourth Amendment. Any

3  subsequent contact or information-sharing between the United

4  States Trustee, the bankruptcy Trustee, and the United States

5  Attorneys Office is material to the defense claim in this regard

6  and likely contains potential impeachment evidence.

7  Government Response

8  (1)  No.

9  (2)  "Likely contains potential impeachment evidence" is not materiality showing. (Def. Reply at

10  34.)  Rather, it is exactly the argument that failed in <u>Santiago</u>. The request is outside the scope of

11  Rule 16 because it is not supported by a factual showing of materiality. Internal government

12  document(s) excluded from discovery under Rule 16(a)(2). <u>Giglio</u> information need not be

13  disclosed until witness testifies. Outside the scope of Rule 16 if sought in support of a "sword"

14  motion to accuse the government of misconduct. <u>Armstrong</u>. Request is over broad in that it

15  purports to seek a vast universe documents that are unrestricted as to time, subject, or

16  investigation. Internal government document(s) excluded from discovery under Rule 16(a)(2).

17  *Court Ruling – The undersigned has included Salyer's materiality statement as it exemplifies the*

18  *improper overbreadth and assertion that if it is conceivable that any documents within the "all*

19  *documents" request could be helpful or impeaching, all documents must be produced.  The*

20  *government's objection is appropriate and the request is denied.*

21  **75.    All correspondence, documents, e-mails, text messages, communications and faxes**

22  **exchanged between any government agent, including Agent Artley or the United States**

23  **Attorneys prosecuting this case, and any creditor involved in the bankruptcy proceedings,**

24  **including the Bank of Montreal or ANZ Bank.**

25  Government Response:

26  (1)  No.

1   (2) "Likely contains potential impeachment evidence" is not materiality showing. (Def. Reply at

2   34.) Rather, it is exactly the argument that failed in Santiago. The request is outside the scope of

3   Rule 16 because it is not supported by a factual showing of materiality. <u>Giglio</u> information need

4   not be disclosed until witness testifies. Outside the scope of Rule 16 if sought in support of a

5   "sword" motion to accuse the government of misconduct. <u>Armstrong</u>.  Request is over broad in

6   that it purports to seek a vast universe documents that are unrestricted as to time, subject, or

7   investigation.

8   *Court Ruling – There is simply no specific showing of materiality.  Salyer believes that pursuant*

9   *to Rule 16 he is entitled to be informed on every aspect of the government's investigation, or*

10  *what it has not investigated.  This belief is erroneous.  The request is denied.*

11  **76.     All reports or documents detailing any contacts between any government agent,**

12  **including Agent Artley or the United States Attorneys prosecuting this case, and any**

13  **creditor involved in the bankruptcy proceedings, including the Bank of Montreal or ANZ**

14  **Bank.**

15  Government Response:

16  (1)  No.

17  (2)  "Likely contains potential impeachment evidence" is not materiality showing. (Def. Reply at

18  34.) Rather, it is exactly the argument that failed in Santiago. The request is outside the scope of

19  Rule 16 because it is not supported by a factual showing of materiality. <u>Giglio</u> information need

20  not be disclosed until witness testifies. Outside the scope of Rule 16 if sought in support of a

21  "sword" motion to accuse the government of misconduct. <u>Armstrong</u>.  Request is over broad in

22  that it purports to seek a vast universe documents that are unrestricted as to time, subject, or

23  investigation. Internal government document(s) excluded from discovery under Rule 16(a)(2).

24  *Court Ruling – Same ruling as for #75.*

25  **77.     A copy of any SK Foods Employee handbook, signed by Anthony Manuel, Randal**

26  **Rahal, Alan Huey, Jennifer Dahlman, Steven King, Shondale Seymour, Mark Grewal,**

**Jeffrey Beasely, Mark McCormick, Lisa Crist, and Jeanne Johnston.**

Salyer Materiality Overview:

In the search warrant affidavits, the government asked for the opportunity to seize copies of SK Foods employee handbooks. The request is material to determine whether the government seized copies of handbooks during the search, or whether they were consensually provided by cooperating government witnesses outside of the search. In any case, such handbooks are material because the government itself, in indictments of alleged co-conspirators, has alleged that they guide the conduct of employees and form the basis for prosecution under the theory of deprivation of honest services to the person's employer.

Government Response:

(1)  Unsure. If the government has these documents, they are available for inspection among the documents from SK Foods.

(2)  n/a

*Court Ruling – The government shall identify where in the seized documents these materials may be found.  The government need not attempt to procure these documents if not already in the possession of the "government" as defined.*

**78.     All interview reports of Ingomar principal Gregory Pruett (the government has produced an interview report with missing page(s)).**

Government Response:

(l)  Yes. Missing pages will be provided in forthcoming production.

(2)  n/a

*Court Ruling – The government has agreed to produce this document; there is no further need to order it.*

**79.     The entire file maintained by the Department of Commerce and the Department of Justice regarding CTEG, including the application form(s) for the Export Trade Certificate of Review from the United States Department of Commerce applied for in December 2005, which was issued in February 2006, all reports or documents detailing any contacts with any CTEG members or principars, including any interview of Scott Salyer which occurred in or about October 2005, and all correspondence, documents, e-mails, communications and faxes exchanged between any CTEG member or applicant and the government.**

Government Response:

(1)  No.  Materials from DOJ Antitrust have been disclosed, but not from Commerce.

(2)  See below:

The Department of Commerce is not part of the "government" for discovery purposes pursuant to Rule 16. Thus, the government is not required to obtain or produce any Department of Commerce documents in response to these discovery requests.

This material is irrelevant and the defense has not carried its burden to show factually that it is material. The ETC specifically prohibits domestic price fixing. Neither the ETC nor its application process presents a defense to the charges of domestic collusion. Despite all the materials he has, the defendant shows no facts of materiality. He merely argues that the antitrust charges contained in the Indictment arise from the CTEG Export Trade Certificate. The charges actually pre- and post- date the certificate. This case is about domestic price fixing and bid rigging, not the ETC process. It is similarly insufficient to claim that the defense wants to "test the allegations" in the search warrant affidavit about CTEG's participants, regulations, and certificates. That's all public record. This is a "sword" request, and besides, the ETC and regulations speak for themselves.  Finally, the defendant's request is over broad as it seeks all documents between any one of three companies and the government, without regard to time or subject matter.

1  *Court Ruling – The undersigned is not prepared to rule on the relevance argument or "sword"*

2  *argument herein; however, as previously ruled, the Department of Commerce is not part of the*

3  *government for purposes of Rule 16. Salyer must make a FOIA request, or if appropriate under*

4  *standards governing criminal trial subpoenas, he may make a Rule 17 request.*

5  **80.      Product samples taken by the FDA from the Kraft facility in Garland, Texas (as**

6  **mentioned in the order dated July 5, 2007, extending authorization of the Title III**

7  **intercept), and any testing reports, correspondence, electronic communications, the**

8  **shipping documents, the applicable certificates of analysis from SK Foods, and all other**

9  **documents and information related to that investigative effort by the FDA as part of the**

10  **Title III and general investigative effort by the agencies participating in this case to test**

11  **these samples, including any documents or communications in which the government**

12  **requested that samples be destroyed.**

13  Salyer Materiality Overview:

14      During the course of the investigation, the government sent

15  product samples to labs for analysis. Among those samples tested

16  by the FDA were product samples of purported adulterated tomato

17  paste tracked to an SK Foods customer, Kraft Foods, in Garland,

18  Texas. The results of that testing, which are needed by the

19  defendant to assess the veracity of statements made by the

20  government in connection with the Title III intercepts, has not

21  been provided by the government.

22  Government Response:

23  (1)  No to the samples, which were destroyed. Yes to FDA's report of analysis, which will be sent

24  out soon. No to general and argumentative request for all other documents.

25  (2)  Internal government document(s) excluded from discovery under Rule 16(a)(2). The request

26  is outside the scope of Rule 16 because it is not supported by a factual showing of materiality.

1  Giglio information need not be disclosed until witness testifies. Outside the scope of Rule 16 if

2  sought in support of a "sword" motion to accuse the government of misconduct. Armstrong.

3  *Court Ruling – As previously ordered, the government shall include along with the testing*

4  *reports, any data sheets underlying the testing.  Liquid Sugars, supra.  The government shall*

5  *also produce documents, if any, relating to the destruction of the samples.  The government shall*

6  *produce any SK certificates of analysis relating to these samples.  Except as so ordered, the*

7  *request is denied as lacking materiality.*

8  **81.    All internal reports prepared by the government or its agents, including the FBI,**

9  **relating to the execution of the search warrants in April 2008, including reports, notes,**

10  **maps, pictures, agendas, and manpower assignments.**

11  Government Response:

12  (1)   Yes with regard to 302s, Memoranda of Interview, search warrant inventories, and

13  photographs taken in executions. No with regard to the "operations plan" for the searches.

14  (2)   Internal government document(s) excluded from discovery under Rule 16(a)(2). The request

15  is outside the scope of Rule 16 because it is not supported by a factual showing of materiality.

16  "Manpower assignments," where the local hospitals were, or directions to the search locations are

17  not material to the defense against the government's case in chief.

18  *Court Ruling – The government's objection is sustained.  Moreover, simply because the*

19  *government has produced some information which might have been considered internal does not*

20  *necessarily mean that the government has waived its Rule 16(a)(2) immunity.  The "planning"*

21  *documents are quite distinct from the "execution" documents.  United States v. Fort, supra.*

22  *Finally, Salyer has not argued waiver for any request in this Motion.*

23  **82.    All documents and correspondence, including authorizations from the Department**

24  **of Justice in Washington, D.C., relating to the use of a pen register on the defendant's**

25  **telephone on or about April 14, 2008.**

26  Government Response:

1  (1)  No.

2  (2)  The request is outside the scope of Rule 16 because it is not supported by a factual showing

3  of materiality. Defendant cannot just broadly claim that he wants to check if these documents

4  will help him in motions practice. Fails the materiality test, both as a "sword" request and

5  because the courts do not enforce internal executive branch guidelines. United States v. Ani, 138

6  F.3d 390, 392 (9th Cir. 1998); United States v. Cacares, 440 U.S. 741, 755-56 (1979). Materials

7  relevant to agency guidelines are not discoverable as "material to the defense" or Brady. See, e.g.,

8  United States v.  Fernandez, 231 F.3d 1240, 1246 (9th Cir. 2000). Internal government

9  document(s) excluded from discovery under Rule 16(a)(2).

10  *Court Ruling – The government's objections is sustained.*

11  **83.     All correspondence, documents, e-mails, text messages, communications and faxes**

12  **exchanged between any government agent, including Agent Artley or the United States**

13  **Attorneys prosecuting this case, and Google concerning the defendant's gmail account and**

14  **the search warrant executed in January 2010.**

15  Government Response:

16  (1)  Speaking only for the prosecution team, the answer is yes, except for a preservation letter.

17  Filter team's correspondence is unknown.

18  (2)  n/a

19  *Court Ruling – The government has sufficiently responded to this request.*

20  **84.     All documents obtained from Google as a result of the search warrant executed in**

21  **January 2010.**

22  Government Response:

23  (1)  Yes, insofar as the prosecution team has them. No, insofar as they are only available to the

24  filter team.

25  (2)  Filter team items are not currently in prosecution team's actual possession, custody, or

26  control. If these documents are to be made available to the defense, the prosecution team requests

1   that they also be ordered disclosed to the prosecution team.

2   *Court Ruling – The purpose of a CDT filter team is to screen out the irrelevant, private*

3   *information seized in an electronic search.  It makes no sense to produce this irrelevant*

4   *information to Salyer.  Request denied.*

5   **85.    All documents concerning the United States Attorneys' use and implementation of a**

6   **"taint team" (aka "CDT" team) to review any documents provided by Google in**

7   **connection with the search warrant executed in January 2010, including the Department of**

8   **Justice guidelines and the specific written guidelines or local or internal memoranda**

9   **discussing or otherwise outlining the procedures to be followed in this District by the**

10  **United States Attorneys Office and the FBI.**

11  Government Response :

12  (1)  No.

13  (2)  See below:

14          The rules of the warrant are set forth in the warrant itself, which the defendant has in

15  discovery. He knows what the prosecution received from the taint team, because he has also

16  received it. Thus, he knows whether the warrant requirements were complied with.

17          Internal memoranda analyzing the law and/or setting forth procedures are not disclosable

18  due to the attorney/client privilege, the work product doctrine, Rule 16(a)(2), and, possibly,

19  deliberative process.

20          This request is outside the scope of Rule 16 because it is not supported by a factual

21  showing of materiality. Defendant cannot just broadly claim that he wants to check if these

22  documents will help him in motions practice. This fails the materiality test, both as a "sword"

23  request and because the courts do not enforce the executive branch's observation of its own

24  internal procedures. United States  v. Ani, 138 F.3d 390, 392 (9th Cir. 1998); United States v.

25  Cacares, 440 U.S. 741, 755-56 (1979). Materials relevant to agency guidelines are not

26  discoverable as "material to the defense" or Brady. See  e.g., United States v. Fernandez, 231

1  F.3d 1240, 1246 (9th Cir. 2000).

2  *Court Ruling – The government's objections are sustained.*

3  **86.    All documents concerning or relating to the application for surveillance at the San**

4  **Diego Frozen Foods Convention, February 24-26, 2008.**

5  Government Response:

6  (1)  No such document exists.

7  (2)  The defendant appears obsessed with establishing whether FBI complied with its own

8  bureaucratic requirements, which are not court- enforceable.

9  *Court Ruling – The government has sufficiently answered this request.*

10  **87.    Access to the following SK Foods documents:**

11  [sub-categories as set forth in original request]

12    **SK Foods' original corporate books, all meeting minutes, all corporate minute**

13  **books, director's records, public filings, notes and meeting memoranda for SK Foods and**

14  **related entities, particularly those which pertain to the last count of the indictment.**

15    **SK Foods' Book and Contract Specification Book, consisting of approximately two**

16  **binders containing, Inter alia, all signed contracts with SK Foods' customers and the**

17  **customers' contract specifications (likely taken from Alan Huey's office during the search**

18  **executed in April 2008).**

19    **All grower contracts from 2004 through 2008.**

20    **All Processing Tomato Advisory Board (PTAB) grade certificates from 2004**

21  **through 2008 (administered by the California Department of Food and Agriculture; PTAB**

22  **certifications are part of SK Foods' HACCP plan).**

23    **All grower field tags from 2004 through 2008.**

24    **All grower delivery reports from 2004 through 2008.**

25    **Copies of all grower payments from 2004 through 2008.**

26    **Copies of bin tags and labels (by product, number and year) from 2004 through**

2008.

Daily plant process sheets from 2004 through 2008.

Lab results (hand sheets), by system and plant, 2004 through 2008.

Computer lab results (by product and year), 2004 through 2008.

Pick lists, 2004 through 2008.

Bills of Lading (both plants), 2004 through 2008.

Customer contracts and invoices, 2004 through 2008.

Packaged product lab results, 2004 through 2008.

Warehouse tags, 2004 through 2008.

All customer "releases"

All plant inspection reports (as conducted by the USDA, FDA, GMI, NFPA, State of California).

5K Foods' HACCP handbook/binder.

Copies of all third party audits from 1999 through 2008 (NFPA, SAFE, ABA, customer audits).

Copies of all government audits from 1999 through 2008.

Copies of CCOF annual audits (organic) for growers, processors, finished goods, retail labels, and the retail organic certification permit license.

Copies of the USDA low-acid permit for 1999 through 2008.

Copies of all kosher foods permits.

Salyer Materiality Overview:

As explained in the defendant's moving papers, SK Foods was a business which produced hundreds of millions of pounds of products every year. It generated thousands and thousands of emails, purchase and production records, product samples, testing analyses, certificates of analysis, contracts, letters, shipping

records, and other documents as tomatoes were purchased from growers, manufactured into a product, packed, sold, and delivered. Inventory and production records, which are part of the government's case and material to the defense, controlled millions of pounds of products held and shipped to giants in the industry, such as Kraft Foods and Frito-Lay. Those companies produced their final product after testing the ingredients and followed strict labeling requirements. Since the indictment, including the RICO allegations, directly attack the integrity of the product, that process and associated documentation, from order to production to delivery, including product testing results, must be reviewed by the defense in sequential context. 5K Foods and customer email communications, correspondence, contract and production histories, are also germane to this process and all must be compared and related to determine whether the product was as desired by the buyer.

Government Response:

(1)  The defendant has access to all documents the government seized from SK Foods. The documents that the government believes are significant have been imaged for the defendant at government expense. Since requesting discovery, counsel has spent about four hours inspecting the other SK Foods documents residing at the FBI.

(2)  With regard to documents in possession of the bankruptcy trustee, the items are not in the government's actual possession, custody or control.  Constructive possession theories do not properly invoke Rule 16(a)(1)(E).

*Court Ruling – While there may be some material documents mixed within this omnibus request, it is not possible to tell or how to distinguish them from the vast amount of documentation which*

1  *is not.  The form of the request(s) is decidedly improper.  Request denied.*

2  <u>CONCLUSION TO MOTION</u>

3          Salyer's motion (docket # 109) is denied and granted as set forth herein.

4  Production of any information ordered herein is to be made within 21 days of the filed date of

5  this order.  Disclosure and/or Identification of <u>Brady/Giglio</u> material is to be made within 21 days

6  as well, and served on Salyer.    The court will issue a separate order on the "Motion for

7  Preservation" (docket #108).

8  DATED: July 8, 2010                           /s/ Gregory G. Hollows

9                                      _____
                                       UNITED STATES MAGISTRATE JUDGE

   salyer.dscy

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26