UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

         NO. CR. S-10-061 LKK

    Plaintiff,

 v.                              O R D E R

FREDERICK SCOTT SALYER,

    Defendant.
                                      /

    The court is presented with a motion by the government to listen to and use, as they believe appropriate, phone calls made by the defendant to his various attorneys while he was in pretrial detention in the Sacramento County Jail. The defendant has responded seeking an order suppressing the recordings, relying on the attorney-client privilege. The government asserts the privilege does not apply because communications made in the presence of others are not within the privilege.

////

////

1

**I.  BACKGROUND**

Briefly, and somewhat over simplifying, calls made to the office of an attorney, who has registered his office number with the jail and is otherwise noted as the caller's attorney, are not monitored while all others are recorded. The jail's system does not allow for calls to an attorney's cell phone or home telephone. This is not without significance because Mr. Salyer was in a "protected status" such that there were times when he could only call after office hours; at least some calls were said to have been made to his attorney Malcolm Segal's home or cell phone.

The calls in issue were not made pursuant to the jail's procedure for making attorney client calls. Moreover, the room in which Mr. Salyer made the calls in issue had a sign above the phones which read "Notice-Phones May be Monitored". Additionally, the jail handbook distributed to inmates contains the following: "Keep in mind when talking on jail telephones that you have no right of privacy and the jail staff may monitor phone conversations." Moreover, a third factor in support of the government's case is a recording that appears on telephone calls to numbers not registered as attorney numbers warning that the message is being monitored. The government takes the position that these warnings ends the matter.

It is the court's view, however, that the sign, handbook, and verbal warnings in themselves, are not dispositive of the motion.[1]

---

[1] The recorded message will be discussed later.

A notice that a call may be monitored is not the same as one saying the calls will be monitored, recorded, and may be used against the caller. This is particularly significant because it appears undisputed that calls made to registered attorney's office phones are not monitored and this exception is not noted in the sign above the telephones or in the handbook. This circumstance suggests two possibilities. The first options is that the jail has determined that the lawyer-client privilege is overcome due to the lack of privacy determined by the jail. The second possibility is that the sign and handbook have no application to attorney calls, or at least attorney calls made pursuant to the jails system. Given that the privilege is mandated by law, the first interpretation appears unsupportable. This leaves the ambiguous alternative.

While it appears that a thousand attorneys have registered their office phone number, the method for insuring that attorneys are familiar with the system is, at best, haphazard.[2] It apparently rests on an occasional sign placed on a reception desk when a new provider is engaged, and perhaps on the public defender informing lawyers of the system.[3]

////

---

[2] Indeed, given the fact that there appears to be no method of insuring that any phone number is current, the court can't help but wonder, assuming that I registered more than thirty years ago when I was in practice, whether the jail records reflect my old office number.

[3] The idea that the public defender is in contact with every lawyer having a client in the county jail, is, to say the least, unrealistic. Moreover, it appears unlikely that the Sheriff can, on his own, shift his responsibility to the public defender.

While the record is unclear as to whether Mr. Malcolm Segal[4] or any of his team,[5] ever registered, Mr. Segal has asserted that he was never informed of the jail procedure. Whatever may be the case, it is clear from their behavior that Salyer's attorneys were unfamiliar with the jail's method of accommodating the attorney-client privilege. That is because, in all of the calls in issue, the attorney announced that he or she was an attorney and that the call was, thus, privileged. That statement followed a recorded message which said "Your call may be monitored or recorded . . . If you wish to accept this prepaid call, dial zero and hold. . . ." This recorded message was not played when Salyer made calls to registered attorney telephone numbers. See Testimony of Morrisey, Evidentiary Hearing, Nov. 18, 2010, Transcript at 83-84. While this message seems clear enough, it appears that the lawyers believed that the recorded message referenced nonprivileged calls and did not pertain to their phone calls because of the nature of the conversation.

## II. ANALYSIS

The questions that are tendered appear to be two fold. First,

---

[4] It is necessary to distinguish between Malcolm Segal, attorney for the defendant, and Matthew Segal, attorney for the government.

[5] The phone calls include calls to Salyer's lead attorney Malcolm Segal, and two others, Larry Lichtenegger and Cynthia Longoria. For reasons best known to the government, they concentrate on the calls to Ms. Longoria. As presented at the hearing on this matter, there appears to be no reason to distinguish between Ms. Longoria and the other attorneys. Ms. Longoria presented her bar card to the jail and was registered as an attorney visiting Mr. Salyer.

4

whether under the circumstances the presumption under which the attorneys were operating was reasonable, and even if so, whether the privilege was waived. I turn to those two questions.

I begin with the applicable rule, "Except as otherwise required by an Act of Congress or in rules prescribed by the Supreme Court . . . privilege . . . shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. . . ." Fed. R. Evid. 501. As a general matter "[a] client has a privilege to refuse to disclose and to prevent others from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between himself . . . and his lawyer. . . ." 3 Weinstein's Federal Evidence, 2d Ed. 503-9[6].

The Ninth Circuit has explained that the attorney client privilege applies,

> "(1) where legal advice of any kind is sought (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal advisor, (8) except the protection be waived."

United States v. Landof, 591 F.2d 36, 38 (9th Cir. 1978). The central question in this case is whether the condition precedent to

---

[6] It has been observed that "[t]he lawyer-client privilege is the oldest of the privileges for confidential communications recognized by the law." Weinstein, 503-11.

5

finding the privilege applies, namely whether Salyer reasonably believed that his communications were made in confidence. Sayler's subjective belief that a communication is confidential is not determinative. See United States v. Van Poyck, 77 F.3d 285, 291-92 (9th Cir. 1996). Rather, the court must determine whether it was reasonable for him to believe that the communication was in confidence. Id. The burden of proof is on the party asserting the privilege to prove that he reasonably believed that the communication was confidential. United States v. Gann, 732 F.2d 714, 723 (9th Cir. 1984).

Two Ninth Circuit cases bear on this issue, Gann, 732 F.2d 714, and Van Poyck, 7 F.3d 285. In both cases the court concluded that the holder of the privilege failed to meet the burden. In Gann the defendant disclosed incriminating evidence to his attorney over the phone while a detective was in his home. Id. at 723. The Circuit concluded that the call was not made in confidence because the defendant knew or should have known that the detective was present. Id.

In Van Poyck, the Court of Appeals considered a far more similar situation, yet for the reasons described below, one distinguishable from the case at bar. Van Poyck brought a Fourth Amendment claim against a prison facility that recorded incriminating statements he made to his friends through the prison's telephone. Van Poyck, 77 F.3d at 287. The Circuit concluded that Van Poyck had no reasonable expectation of privacy in the telephone calls, despite his subjective belief that they

6

were private, because (1) the facility displayed signs over the phones stating that using the phones constituted consent to be monitored unless making a properly placed call to an attorney and (2) Van Poyck had signed a consent form to have his calls monitored by the facility. Id.

The court concludes that unlike Van Poyck, Salyer had a reasonable belief that his communications to his attorneys were confidential. From all that appears, Salyer and his attorneys were provided with no information about how to place an unmonitored attorney call. There was no mention of the policy in the handbook nor were there any advisements in the call room. Rather, the facts demonstrate a belief on the part of the attorneys and, therefore Salyer, who obviously depended on their advice, that the calls were protected by the attorney-client privilege. No possible benefit would be derived from the repeated invocation of the privilege if the parties did not believe in its efficacy. That they may have been wrong is not the end of the matter. It appears to the court that Rule 502 bears on the instant case. That rule provides protection against inadvertent waiver of the attorney-client privilege when made in a federal proceeding or to a federal agent.[7] It appears to the court that the bare facts support application of the rule.

While the jail had a procedure for protected communications,

---

[7] In the instant case, the monitoring was initially made by county officers, continued at the request of a federal agent and then turned over to the federal authorities.

7

1  it was not fairly made known, and was not known to the attorneys
2  advising Mr. Salyer. Moreover, those attorneys assumed that an
3  assertion of the privilege was sufficient to establish its
4  protection even in a jail setting. Confidentiality is defined by
5  the client's intent. It cannot be doubted that had the parties to
6  the conversations known of the government's position of non-
7  applicability, they would not have engaged in them. Given the
8  totality of circumstances, the court concludes that the parties had
9  the requisite intent, and under the circumstances, such intent was
10 not unreasonable.

11      Furthermore, it is clear to this court that Salyer did not
12 waive his attorney client privilege as to these calls. Under Fed.
13 R. Evid. 502(b), the privilege is waived if the holder failed to
14 promptly take reasonable steps to rectify the error. While his
15 counsel waited nearly a month to assert his right of privilege
16 after notification by the government of the calls, such is
17 reasonable under the circumstances of this case. This short delay
18 does not make the response untimely due to the volume and
19 complexity of the case.

20      Finally, the court must be frank, it appears that the
21 government has been preparing its case for years. It has seized
22 thousands of documents, and has at least three cooperating
23 witnesses. It thus appears that this issue is something of a
24 tempest in a teapot. If the government cannot succeed without
25 invading the attorney client privilege, it should not proceed. If,
26 as appears likely, no significant damage will accrue to the

government by denying its motion, it ought to get on with it. That point seems further supported by defense counsel's suggestion that if the motion is granted he will feel compelled to withdraw as counsel.

Nonetheless, the government has raised a potential concern as to whether the communications with Longoria were actually attorney client communications as opposed to communications of a personal nature. As discussed above, the privilege only applies "where legal advice of any kind is sought." Landoff, 591 F.2d at 38. For this reason, the court refers determination of whether the calls to Longoria were attorney client calls to a Magistrate Judge, who will listen to the calls and report to the court on their nature.

### IV. CONCLUSION

For the foregoing reasons the court ORDERS as follows:

(1) As to all recorded telephone calls made to attorneys other than Longoria, the government's motion (Doc. No. 129) is DENIED and defendant's motion (Doc. No. 141) is GRANTED.

(2) The court refers the calls made to Longoria to the Magistrate Judge to determine whether they are attorney client communications.[8] All documents and recordings will be provided directly to the Magistrate Judge, and shall not be filed in this case. Insofar as

---

[8] The court notes that the current Duty Magistrate Judge is Magistrate Judge Kendall J. Newman, who has recused himself from this case. Accordingly, this matter is referred to Magistrate Judge Edmund F. Brennan, the following Duty Magistrate Judge.

9

|   |   |
|---|---|
| 1 | the Magistrate Judge determines that the calls are |
| 2 | attorney client communications, the government's |
| 3 | motion is DENIED and the defendant's motion is |
| 4 | GRANTED. Insofar as he determines that the calls are |
| 5 | not attorney client communications, the government's |
| 6 | motion is GRANTED and the defendant's motion is |
| 7 | DENIED. Only the calls that are not determined to be |
| 8 | attorney client communications may be presented to or |
| 9 | filed before this district court. |
| 10 | IT IS SO ORDERED. |
| 11 | DATED: February 17, 2011. |

_____
LAWRENCE K. KARLTON
SENIOR JUDGE
UNITED STATES DISTRICT COURT