I, Michael D. Celio, declare and state that:

1.  I am an attorney licensed to practice law in the state of California and before this Court. I am a partner in the law firm of Keker & Van Nest LLP, located at 710 Sansome Street, San Francisco, California 94111. I have knowledge of the facts set forth herein, and if called to testify as a witness thereto, could do so competently under oath.

2.  I represent Mark Grewal in his dealings with the United States Department of Justice relating to Mr. Grewal's time in the employ of SK Foods.

3.  I have reviewed the Memorandum in Support of United States' Motion to Disqualify the Law Firm Keker & Van Nest LLP. I unequivocally and totally reject the statement in that document that I have "proffered" that Mr. Grewal "will testify, under immunity, that when he was president of SK Foods under Salyer, the company was engaged in a criminal price fixing conspiracy." Memo at 1:25-2:1. Every part of that statement is unequivocally false. I have made no proffer to the Government much less one suggesting Grewal was part of or aware of a criminal conspiracy. Mr. Grewal has not been offered immunity for his testimony.

4.  Upon being retained, I immediately contacted Richard Cohen and Barbara Nelson of the Antitrust Division of the United States Department of Justice, who I understood from Mr. Grewal's prior counsel were assigned to the case and met with them soon thereafter. The only people present were Ms. Nelson, Mr. Cohen, myself and Rhonda Andrew, an experienced paralegal from my office.

5.  The meeting was not a "proffer." At the time of the meeting, I understood that Mr. Cohen had personally interviewed Mr. Grewal twice, both times prior to my engagement as his attorney. Having only been retained for two weeks, I would not have been in a position to proffer testimony to prosecutors. The purpose of the meeting was to introduce myself to the prosecutors and to persuade them that Mr. Grewal was nothing more than a witness – which is exactly what the Government ultimately determined.

6.  At no time during that meeting did I state to Mr. Cohen that Mr. Grewal committed a criminal offense or that he would so testify. We discussed Mr. Cohen's view of the case, but I repeatedly told him that I did not share his view in many important respects.

7.  During our meeting, Mr. Grewal was not promised and did not receive immunity for any

testimony he might provide at Mr. Salyer's trial. I have never discussed immunity for Mr. Grewal with Mr. Cohen at any time.

8. While I cannot control what Mr. Cohen "anticipates" (*see* Cohen Decl., ¶ 8), his impression that Mr. Grewal would testify that he undertook actions to assist in the fixing of domestic tomato paste prices could not reasonably be based on our single meeting. I did not state that Mr. Grewal would so testify.

9. After our single meeting, I heard nothing from Mr. Cohen for approximately one year, until May 24, 2011.

10. I spoke briefly with Ms. Nelson on the telephone, once in June 2010, and once in July 2010. In neither conversation did we discuss what Mr. Grewal might or might not testify to at Mr. Salyer's trial.

11. On May 24, 2011 I received a telephone call from Mr. Cohen and his colleague, Anna Pletcher. This call occurred a few days after my partner, John Keker, entered a special appearance on behalf of Scott Salyer at a hearing on May 18, 2011. This was the first contact I had had with Mr. Cohen since our single in person meeting.

12. The next day, Mr. Cohen and Ms. Pletcher called again to say that Mr. Grewal would be nothing more than a witness in this case. The government has since repeated that Mr. Grewal faces no criminal exposure in this matter on several occasions, including in the present motion.

13. Mr. Grewal signed a waiver permitting Keker & Van Nest to represent Mr. Salyer. I have not discussed Mr. Grewal's anticipated testimony with the lawyers representing Mr. Salyer, nor have they discussed matters relating to Mr. Salyer with me. I have likewise had no discussions of any kind regarding Mr. Salyer's possible testimony with Malcolm Segal, Mr. Salyer's other lawyer.

14. Keker & Van Nest has created an ethical wall to screen me (and my partner, Robert Van Nest, who has also done work on Mr. Grewal's behalf) from any involvement in the Salyer case. Neither Mr. Van Nest nor I have access to any documents, pleadings or information pertaining to that case. Mr. Van Nest and I are the only lawyers at this firm who have worked on Mr. Grewal's behalf. The files in Mr. Grewal's matter and Mr. Salyer's matter have been prominently marked so that no lawyer working on one matter has access to any information about the other.

15. This declaration is not a waiver of the attorney-client privilege, nor is it intended to be one. This declaration is based on my non-privileged conversations with the government and is not based in any way on my communications with my client.

I hereby declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct and that this declaration was executed on July 28, 2011, at San Francisco, California.

_____
MICHAEL D. CELIO