BENJAMIN B. WAGNER
United States Attorney
R. STEVEN LAPHAM
MATTHEW D. SEGAL
JARED C. DOLAN
Assistant U.S. Attorneys
501 I Street, Suite 10-100
Sacramento, California  95814
Telephone: (916) 554-2700

RICHARD COHEN
ANNA T. PLETCHER
TAI S. MILDER
Trial Attorneys
U.S. Department of Justice
Antitrust Division
450 Golden Gate Avenue, Room 10-0101
San Francisco, California 94102
Telephone: (415) 436-6660

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>          Plaintiff,  )<br>  )<br>v.  )<br>  )<br>FREDERICK SCOTT SALYER,  )<br>  )<br>          Defendant.  )<br>  )<br>  ) | CASE NO. 2:10-CR-61 LKK<br><br>UNITED STATES' MEMORANDUM IN<br>OPPOSITION TO MOTION TO<br>RECONSIDER<br><br>Date: Aug. 24, 2011<br>Time: 9:15 a.m.<br>Court: Hon. Lawrence K. Karlton |

**I.  THE DEFENDANT HAS FAILED TO MAKE A THRESHOLD SHOWING OF A PERSONAL PRIVACY INTEREST IN EVEN ONE PARTICULAR PIECE OF EVIDENCE SEIZED BY MANUEL.**

In his first motion to suppress, the Defendant presented the broad argument that Anthony Manuel "stole" SK Foods records and violated SK Foods information polices.  C.R. 145 at 5-9.  The Defendant contended that he had standing to challenge ***any*** search of SK Foods premises.  C.R. 250 at 6.  The Court analyzed and rejected

1

the arguments that the Defendant presented. C.R. 273. Now, on reconsideration, the Defendant avers that he "**could** nevertheless have standing as to **some** searches," and contends that it was error for the Court to rule without "having considered the facts and circumstances of any **individual** search." Mot. to Recon. at 1 (emphasis added). But he still has not made any factual showing of a privacy interest in any one particular piece of evidence. He has a solution: an evidentiary hearing where he can call the **Government's** anticipated trial witnesses to ask them about the **Defendant's** own expectation of privacy. Mot. to Recon. at 17-18.

That's not how it works. A year ago, the Defendant filed an opening brief that completely omitted any mention of standing. C.R. 145. He attached apparently all of the evidence that he claims Manuel illegally seized. C.R. 163-170. It is all plainly SK Foods business records, mostly from its computer network and even mostly bearing Manuel's name. C.R. 189 at 7-8, Exh. 29. Under <u>Simmons v. United States</u>, 390 U.S. 377, 394 (1968), Salyer could have offered proof of standing as to any particular item by providing an immunized affidavit that the item was his own private material. Indeed, under <u>Rakas v. Illinois</u>, 439 U.S. 128, 133 (1979), it was Salyer's threshold burden to come forward with evidence of standing. But he never did. He could not, because there is no evidence that Manuel ever took anything personal to Salyer. If the Court refreshes its recollection by paging through the ream of defense-filed, Manuel-seized evidence, the Court can again see plainly that Manuel took SK Foods emails, financial documents, and tomato paste samples, but nothing like Salyer's diary, wallet, personal financial records, or other private papers. C.R. 163-170. Thus, after the Court rejected

the Defendant's broad argument that the Defendant had standing over any search of SK Foods premises, the Court necessarily "agree[d] with the Government," which had begun its brief with its standing argument, noting that the Defendant had "attached a ream of paper to his motion," without showing "that even one page was personal to him."  C.R. 189 at 1-2.

Nothing has changed.  The Motion to Reconsider describes what Manuel took – the material is plainly corporate business records.  Mot. to Recon. at 13-17.[1]  The Defendant expressly said as much in his initial Motion to Suppress.[2]  The Court need not, and should not, hold a "search-by-search" evidentiary hearing when the Defendant has offered no such analysis himself.  He ignores SDI Future Health:

> **Except in the case of a small business over which an individual exercises daily management and control**, an individual challenging a search of workplace areas beyond his own internal office must generally show some **personal connection to the places searched and the materials seized**. To adapt Anderson, although all the circumstances remain relevant, we will specifically determine the strength of such personal connection with reference to the following factors: (1) whether the item seized is personal property or otherwise kept in a private place separate from other work-related material; (2) whether the defendant had custody or immediate control of the item when officers seized it; and (3) whether the defendant took precautions on his own behalf to secure the place searched or things seized from any interference without his authorization. Absent such a personal connection or exclusive use, a defendant cannot establish standing for Fourth Amendment purposes to challenge the search of a workplace beyond his internal office.

---

[1] The Defendant divides the "Materials collected through the government's warrantless searches of SK Foods" into the following categories: Financial documents, Product samples, Brokerage commission reports, and the "Ingomar investigation." Id. at 13-17.  He does not say that these were his own personal records.

[2] See, e.g., C.R. 145 at 8 ("Manuel searched through **company** records [and] downloaded proprietary records and data from the **SK Foods** computer system[.]") (emphasis added).

3

SDI Future Health, 568 F.3d at 698.  This Court correctly rejected the Defendant's claim that SK Foods's corporate information policies established a "personal connection" for Salyer as an individual.  See id. ("The security measures that SDI took to ensure the privacy of its business records are relevant only to the standing of the corporation itself, not of its officers.")

**II.  THE MANUEL EVIDENCE IS STILL WHAT IT WAS BEFORE — SK FOODS BUSINESS RECORDS.**

The Defendant contests the scope of Manuel's authority to access records of SK Foods.  But those arguments are immaterial because he concedes the nature of what Manuel brought from SK Foods to the FBI:

- Email or email attachments from Manuel's own SK Foods email account.
- Reports from the SK Foods corporate AAS computer inventory system.
- Documents (agendas, sign-up forms, PowerPoint presentations, etc.) for SK Foods corporate meetings.
- SK Foods documents related to corporate matters.
- SK Foods corporate announcements and telephone directories.
- Notes in Manuel's own handwriting or typing; and
- Samples of SK Foods tomato paste.

C.R. 189 at 7-8.

Salyer has made no threshold showing that he has any "personal connection" to even one item among these materials.  The rule of SDI Future Health applies, because this is not "the case of a small business over which an individual exercises daily management and

4

control." Id., 568 F.3d at 698.[3] The Defendant has offered no threshold proof that any particular item was (1) "his personal property or otherwise kept in a private place separate from other work-related material;" (2) in his own "custody or immediate control" at the time of the seizure; or (3) something taken from a place that the Defendant "took precautions on his own behalf," as opposed to the company's, to secure. SDI Future Health, 568 F.3d at 698.

With this filing, the Court has received six briefs on this subject. C.R. 145 (Mem. in Spt.), 189 (Opp.), 250 (Proffer), 269 (Response); 340 (Mot. to Recon). The initial motion to suppress did not mention standing at all – the Defendant only briefed this issue when he was ordered to. By now, the Defendant has certainly had ample opportunity to file a Simmons declaration for some particular piece of evidence. But if Manuel had taken any specific item from Salyer's personal papers, the Court would have heard about it over a year ago. The materials are in the Court's record. They are clearly corporate documents not personal to anyone. And it was not Salyer's personal tomato paste samples that Manuel "stole" from an SK Foods warehouse.

**III. NO EVIDENTIARY HEARING IS NECESSARY**

The Defendant contends that in business search cases, "courts have conducted a detailed, specific, factual analysis of the individual's role in the business and control over the property." Mot. to Recon. at 5. But the Defendant has not submitted a Simmons declaration for even one of Manuel's seizures.

---

[3] SDI Future Health distinguished Gonzalez on this basis. See 568 F.3d at 696-697, distinguishing United States v. Gonzalez, 412 F.3d 1102, 1117 (9th Cir. 2005).

5

"A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one." United States v. Howell, 231 F.3d 615, 621 (9th Cir. 2000) (quoting United States v. Harris, 914 F.2d 927, 933 (7th Cir. 1990). The Defendant offers only speculation about what others might say about his own personal connection to the evidence. That falls far short of the "definite, specific, detailed, and nonconjectural showing" that he had to make and failed to. United States v. Walczak, 783 F.2d 852, 857 (9th Cir. 1986). The Court need not hold an evidentiary hearing unless "sworn statements and exhibits present directly contradictory accounts of the sequence of events," which are "sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." United States v. DiCesare, 765 F.2d 890, 895-896 (9th Cir. 1985), citing United States v. Ledesma, 499 F.2d 36, 39 (9th Cir. 1974).

There is a reason that "[e]videntiary hearings should not be set as a matter of course." Cohen v. United States, 378 F.2d 751, 760 (9th Cir. 1967). "[F]actual allegations which are general and conclusory or based upon suspicion and conjecture will not suffice, for 'claims that taint attaches to any portion of the Government's case must satisfy the trial court with their solidity and not be merely a means of eliciting what is in the Government's possession before its submission to the jury.'" Id., quoting Nardone v. United States, 308 U.S. 338, 342 (1939). That is transparently what the

Defendant seeks here.[4]

Naturally, "Salyer proposes a hearing that begins with testimony from Manuel and Agent Artley." Mot. to Recon. at 17. But he cites no authority that entitles him to an evidentiary hearing to call the Government's anticipated trial witnesses to make his own threshold showing of a "personal connection" to the evidence. He has personal knowledge of what items were personal to him. He has Simmons immunity to say so. And he has no excuse for failing to carry his threshold burden.

**IV. IT IS WITHIN THE COURT'S DISCRETION TO DECLINE TO RECONSIDER THE MERITS OF THIS ISSUE.**

A motion to reconsider a suppression ruling is addressed to the Court's discretion. See United States v. Hobbs, 31 F.3d 918, 923 (9th Cir. 1994); United States v. Buffington, 815 F.2d 1292, 1298 (9th Cir. 1987). A court does not abuse its discretion by denying reconsideration when the moving party cannot justify his failure to

---

[4] The Defendant's reliance on United States v. Torres-Ramos, 2008 WL 4667119 (C.D. Calif.) is unavailing. That case follows the very reasoning the Ninth Circuit rejected in SDI Future Health. Indeed, Torres-Ramos liberally cites the now-reversed district court suppression order in SDI Future Health. Torres-Ramos, like the reversed district court opinion in SDI Future Health, both reason that a manager/owner can have standing over corporate areas that he, as a corporate officer, subjects to corporate security measures. Torres-Ramos actually cites the reversed SDI Future Health order for that point. 2008 WL 46671119 *11, *12 ("The manager's office contained important materials such as the safe, cash receipts, and the company computer. As a result, George Torres took measures to tightly control access to the office." and "George Torres played an integral role in developing the security apparatus at each of the stores, as security was crucial to the company's success."). No court has cited Torres-Ramos. The Ninth Circuit's teaching in SDI Future Health is that when a defendant-manager directs corporate security measures, it does not establish standing. 568 F.3d 698.

7

raise the new facts or arguments in his first motion. See <u>United States v. Howell</u>, 231 F.3d 615, 623 (9th Cir. 2000); <u>United States v. Dickerson</u>, 166 F.3d 667, 678 (4th Cir. 1999), reversed on other grounds, 530 U.S. 428 (2000).

Here, the Defendant is really just asserting the same theory as before. This is clear where he claims that "substantial evidence" supports his blanket challenge to the whole undifferentiated mass of Manuel searches. (<u>Id.</u> at 9.) The Defendant thinks that it matters that SK Foods was a limited partnership whose income he reported on his tax returns, that he personally guaranteed some of SK Foods's debt, and that he paid an employee bonus with a personal check. (<u>Id.</u>) The Defendant thinks that it matters that he was the highest-level manager and took an active role in running the company. (<u>Id.</u> at 10.) He thinks that it matters that he had a master key and was actively involved in creating "***company*** confidentiality policies." (<u>Id.</u>, emphasis added.)

These arguments are the same kind of assertions that the Defendant made in his initial attempt to claim the entity's Fourth Amendment rights.[5] The Court correctly rejected that theory six months ago. As this Court has taught, "motions to reconsider are not vehicles permitting the unsuccessful party to 'rehash' arguments

---

[5] <u>See</u> Def. Mem. Resp. to Ct's Ord., C.R. 250, at 8 (discussing Salyer's ownership of SK Foods); at 9 (discussing Salyer's direct input and decisions in SK Foods management decisions); at 10 ("Mr. Salyer's relationship the entity was so intimate and intertwined that one year he paid Manuel his annual bonus with a $25,000 check from his personal checking account."); at 12 (discussing Salyer's efforts regarding SK Foods privacy and proprietary information and physical security of SK Foods premises); at 13 (discussing Salyer's "full access to premises" and "day-to-day presence"); at 14-15 (Salyer's active and routine "control of operations").

1  previously presented.  Nor is a motion to reconsider justified on the
2  basis of new evidence which could have been discovered prior to the
3  court's ruling." <u>United States v. Navarro</u>, 972 F.Supp. 1296, 1299
4  (E.D. Calif. 1997) (Karlton, J.), rev'd on other grounds, 160 F.3d
5  1254 (9th Cir. 1998).  "Finally, 'after thoughts' or 'shifting of
6  ground' do not constitute an appropriate basis for reconsideration."
7  <u>Id.</u>

## V.  CONCLUSION

The Defendant has not shown a personal connection to any particular item among the evidence seized and, as the Court has already correctly ruled, he cannot invoke the Fourth Amendment interests of SK Foods, LP.  This is entirely fair.  When it suited his purposes, Salyer liberally availed himself of the corporate form. Whatever he put on his tax returns or guarantees to certain lenders, in the bankruptcy proceeding, there are a lot of creditors attending a bitter lesson in limited liability.

> "[W]hen a man chooses to avail himself of the privilege of doing business as a corporation ... he may not vicariously take on the privilege of the corporation under the Fourth Amendment; documents which he could have protected from seizure, if they had been his own, may be used against him, no matter how they were obtained from the corporation.  Its wrongs are not his wrongs; its immunity is not his immunity.

<u>SDI Future Health</u>, 568 F.3d 696 n.5, quoting <u>Lagow v. United States</u>, 159 F.2d 245, 246 (2d Cir. 1946) (per curiam).

The Defendant has failed to carry two distinct threshold burdens: he has failed to show a personal connection to any of the evidence and he has failed to demonstrate an appropriate basis for

///
///
///

asking the Court to reconsider its order.  The Court has ruled, and correctly.

```
                                 Respectfully Submitted,
                                 BENJAMIN B. WAGNER
                                 United States Attorney

Date:  August 10, 2011            /s/ Matt Segal
                           By:   R. STEVEN LAPHAM
                                 MATTHEW D. SEGAL
                                 JARED C. DOLAN
                                 Assistant United States Attorneys
```