1  BENJAMIN B. WAGNER
   United States Attorney
2  R. STEVEN LAPHAM
   MATTHEW D. SEGAL
3  JARED C. DOLAN
   Assistant U.S. Attorneys
4  501 I Street, Suite 10-100
   Sacramento, California  95814
5  Telephone: (916) 554-2700

6

7  ANNA TRYON PLETCHER
   RICHARD B. COHEN
   TAI S. MILDER
8  Trial Attorneys
   U.S. Department of Justice
9  Antitrust Division
   450 Golden Gate Avenue, Room 10-0101
10 San Francisco, California 94102
   Telephone: (415) 436-6660
11

12

          IN THE UNITED STATES DISTRICT COURT FOR THE
13
                EASTERN DISTRICT OF CALIFORNIA
14

15
   UNITED STATES OF AMERICA,      )  Case No. 2:10-CR-0061-LKK
16                                 )
                      Plaintiff,   )  UNITED STATES' OPPOSITION TO
17                                 )  DEFENDANT'S MOTION FOR
        v.                         )  SEVERANCE OF ANTITRUST CLAIMS
18                                 )  (COUNTS 8-12)
   FREDERICK SCOTT SALYER,         )
19                                 )  Judge: Hon. Lawrence K. Karlton
                      Defendant.   )  Hearing Date: November 29, 2011
20                                 )  Time: 9:15 a.m.
   _____ )  Trial Date: April 17, 2012
21

22 **I.   <u>INTRODUCTION</u>**

23      The Second Superseding Indictment ("Indictment") alleges

24 that Defendant Scott Salyer engaged in racketeering, bribery, and

25 fraud (Counts 1-6), obstruction of justice (Count 7), price

26 fixing and bid rigging (Counts 8-12).  These illegal activities

27 were not isolated acts.  They involved common participants, the

28 same conspiratorial objective, several common victims,

                              -1-

1  overlapping questions of proof and evidence, a shared modus

2  operandi and motive, and occurred primarily at the same time and

3  in the same locations.  Three witnesses – Randy Rahal, Alan Huey,

4  and Greg Pruett – will testify to the antitrust counts and the

5  racketeering, fraud, obstruction counts.

6     Nevertheless, the defendant would have this Court try him

7  twice – once for the racketeering, fraud, and obstruction

8  charges, and again for the antitrust charges.  He would have

9  three of the same witnesses testify twice about many of the same

10 people, organizations, victims, and acts.  He would have some of

11 the same documents authenticated and discussed twice.  He would

12 have a second lengthy trial calendared, a second jury empaneled,

13 and, presumably, a second round of pretrial motions.

14    The defendant is grasping at straws with his Motion for

15 Severance of Antitrust Claims ("Motion").  His arguments are

16 based on unwarranted assumptions and gross misreadings of the

17 Indictment.  His claims that the 61-page Indictment is

18 "barebones" or that a single trial would "exhaust" a jury strain

19 credulity.  He does not even try to muster facts to show that the

20 defendant would be prejudiced by a consolidated trial.

21    The primary goal of the joinder rules is to conserve

22 judicial resources.  Conducting two trials in this case, where

23 the antitrust and other counts overlap significantly, cannot be

24 justified.  The defendant's Motion should be denied.

25 **II.  <u>LEGAL FRAMEWORK</u>**

26    Rule 8 governs the joinder of offenses.  It provides:

27     The indictment or information may charge a defendant in
       separate counts with 2 or more offenses if the offenses
28     charged – whether felonies or misdemeanors or both – [1] are

1
2
    of the same or similar character, or [2] are based on the
    same act or transaction, or [3] are connected with or
    constitute parts of a common scheme or plan.

3  Fed. R . Crim. P. 8(a).  If any one of the three conditions is

4  satisfied, the counts are properly joined.  United States v.

5  Jawara, 474 F.3d 565, 572 (9th Cir. 2007).  In determining

6  whether the joinder is valid, the district court examines only

7  the allegations in the indictment.  Id. at 572-73.

8       Courts have construed Rule 8 broadly in favor of initial

9  joinder, both of offenses and of defendants.  Id. at 573 (citing

10 States v. Friedman, 445 F.2d 1076, 1082 (9th Cir. 1971)).  This

11 is because Rule 14 is available "as a remedy for prejudice that

12 may develop during the trial."  Id.  Under Rule 14, if the

13 joinder of offenses "appears to prejudice a defendant or the

14 government, the court may order separate trials of counts, sever

15 the defendants' trials, or provide any other relief that justice

16 requires."  Fed. R. Crim. P. 14(a).

17      The decision to sever counts under Rule 14 lies within the

18 discretion of the trial court.  United States v. Brashier, 548

19 F.2d 1315, 1323 (9th Cir. 1976).  However, "joinder is the rule

20 rather than the exception."  United States v. Whitworth, 856 F.2d

21 1268, 1277 (9th Cir. 1988) (quoting United States v. Armstrong,

22 621 F.2d 951, 954 (9th Cir. 1980)); see Friedman, 445 F.2d at

23 1082 ("a substantial public interest supports joint trials").

24 Accordingly, a court should deny a motion to sever unless the

25 defendant can show that "joinder was so manifestly prejudicial

26 that it outweighed the dominant concern with judicial economy and

27 compelled the exercise of the court's discretion to sever."  Id.;

28

                              -3-

accord <u>United States v. Lewis</u>, 787 F.2d 1318, 1321 (9th Cir.
1986); <u>Brashier</u>, 548 F.2d at 1323.

**III.  DISCUSSION**

> **A.    The Indictment Satisfies All Three Tests for Rule 8(a) Joinder.**

Although an indictment need meet only one of the tests for
joinder set forth in Rule 8, the Indictment here satisfies all
three.   That is, the Antitrust, RICO, Wire Fraud, and Obstruction
counts are (1) "of the same or similar character;" (2) "based on
the same act or transaction;" and (3) part of "a common scheme or
plan."  <u>See</u> Fed. R . Crim. P. 8(a).

> **1.    "Same or Similar Character"**

In determining whether two sets of offenses are the "same or
similar character," the Ninth Circuit has directed courts to look
to the indictment for similarities that are "readily apparent or
reasonably inferred."  <u>Jawara</u>, 474 F.3d at 578.   Factors district
courts may consider include: (i) the elements of the statutory
offenses; (ii) the temporal proximity of the acts; (iii) the
likelihood and extent of evidentiary overlap; (iv) the physical
location of the acts; (v) the modus operandi of the crimes; and
(vi) the identity of the victims.  <u>Id.</u>   The weight given to any
factor "depends on the specific context of the case and the
allegations in the indictment." <u>Id.</u>   These factors weigh
strongly in favor of joinder here.

***Elements of the Offenses***

Although the literal language of each charged statute
varies, there are common issues of proof among the Counts.   For
example, Count 10 charges the defendant with price fixing related

-4-

to Kraft.  In order to ensure that the price-fixing scheme would work, the defendant paid bribes to a Kraft purchasing agent. Count 10 ¶4(d).  These same bribe payments constituted, in part, the predicate mailings to the RICO charges in Counts 1 and 2 and the deprivation of honest services charges in Counts 4 and 5. See Indictment Count 1 ¶¶43-49, Count 2 ¶¶2-3, Count 4 ¶2, Count 5 ¶2.

The obstruction charge set forth in Count 7 applies equally to the antitrust charges and the others.  The Indictment alleges that the defendant was responsible for falsifying a December 2007 SK Foods Board meeting record by omitting Rahal's name.  Count 7, ¶3.  This action obstructed the investigation of both the antitrust and the other counts.

In addition, the government will have to prove an interstate commerce element for Counts 1 through 6 and 8 through 12.

***Temporal Proximity***

The time period for the alleged antitrust activity overlaps in its entirety with the time period for all other charges. Counts 1 through 3 define the relevant time period as January 1998 through April 2008.  Counts 4 through 6 define it as January 2004 through April 2008.  Count 7 describes obstructive conduct that took place in April 2008.  Finally, Counts 8 through 12 allege antitrust violations occurring between August 2005 and April 2008.

The defendant claims there is little to no temporal overlap between the antitrust and the other counts because the Indictment describes specific instances of product mislabeling dating back to 2001 and bribery as early as 2004.  Motion at 6.  The

-5-

defendant picks isolated facts from the Indictment and ignores
the dates and date ranges explicitly set forth throughout the
Indictment.   The Indictment clearly alleges that during the
entire time he was committing antitrust violations, Salyer was
also engaged in extensive racketeering activities, a racketeering
conspiracy, various acts of fraud, and the obstruction of
justice.   In fact, nearly all of the specific instances of fraud
described in Count 1 fell between August 2005 and April 2008.

***Physical Location of the Acts***

The Indictment alleges that the antitrust activity took
place in the same locations as the other counts.   The Indictment
states that the antitrust and other charges occurred in part "in
the Eastern District of California and elsewhere."   See
Indictment Count 1, ¶32; Count 2 §2; Count 3, ¶2; Counts 4 and 5,
¶¶2, 4; Count 6, ¶¶2, 4; Count 8, ¶2; Count 9, ¶2; Count 10, ¶2;
Count 11, ¶2; Count 12, ¶2.

Despite this clear language, the defendant claims that the
antitrust acts took place in different locations from the other
criminal conduct.   He contends that the antitrust violations
happened at CTEG meetings or via email or telephone
conversations, which were "far from" the places where Jennifer
Dalman mailed fraudulent invoices and Randy Rahal bribed
purchasing managers.   Motion at 7.   Again, the defendant ignores
the plain text of the Indictment.   The Indictment does not limit
the antitrust activity or any of the criminal conduct to the
Eastern District of California.   It alleges that Salyer engaged
in the charged conduct primarily from three locations: (1) the
Eastern District of California; (2) the Northern District of

1  California; and (3) the District of New Jersey. Indictment ¶¶ 41-
2  43, 49-51, 58-59, 66, 78-79, 81, 87.

3      Furthermore, the defendant is incorrect that email
4  communications related to the antitrust charges took place "far
5  from" Jennifer Dalhman and Randy Rahal.  In fact, emails related
6  to the antitrust, racketeering, and fraud charges were sent or
7  received from the same SK Foods offices in Lemoore and Monterey,
8  California and Intramark's offices in New Jersey.  Cohen Decl.
9  ¶2.  Moreover, emails containing evidence of antitrust violations
10 and the other charges were located on the same SK Foods server
11 located in Lemoore, California.  See Declaration of Paul Artly,
12 Docket No. 269-1.

13 *Identity of the Victims*

14     The victims of several of the antitrust counts – ConAgra in
15 Counts 9 and 11, Kraft in Count 10, General Mills in Counts 11
16 and 12, Frito Lay in Count 11, Nestle and Barilla in Count 12 –
17 are also victims in Counts 1, 2, 3, 4, and 5.  Cohen Decl. ¶3.
18 The defendant's claim that there were no victims of the antitrust
19 counts is entirely unsupported.  See Motion at 7.

20 *Modus Operandi*

21     The defendant contends that there is no similarity in the
22 modus operandi of the antitrust counts and the others.  In
23 support, he offers only his general opinion that "bribing
24 purchasing managers or mislabeling products bears no resemblance
25 to the negotiation of price fixing agreements."  Motion at 7.
26 Such abstractions are meaningless.  As the defendant notes,
27 joinder analysis "depend[s] on the specific context of the case."
28 Motion at 6 (citing Jawara, 474 F.3d at 578).

-7-

In this case, facts alleged in the Indictment make clear that the antitrust and other counts share a modus operandi in two ways.  First, the Indictment states that bribing purchasing agents was one of the means that the defendant and his coconspirators used to further their anticompetitive activity. Count 10, for example, specifically alleges in the "Means and Methods" section that the defendant and coconspirators "brib[ed] a purchasing agent for Kraft to obtain confidential bid information in order to monitor compliance with the agreements reached."  Indictment Count 10, ¶4(d).

Second, the antitrust, racketeering, and fraud activities were designed to accomplish a common goal: to enrich the defendant and his coconspirators by artificially inflating the price of SK Foods' products.  Indictment Count 1, ¶30; Count 2, ¶1 (incorporating Count 1, ¶30); Count 8, ¶3; Count 9, ¶2; Count 10, ¶3; Count 11, ¶3; Count 12, ¶3.

***Evidentiary Overlap***

Given the overlap of questions of proof, time, location, victims, modus operandi, and motivation, the government will rely on evidence to prove the RICO, fraud, obstruction, and collusion charges that is substantially – and at times, inextricably – interwoven.

The antitrust and other counts share three common witnesses. The government expects that Intramark President Randy Rahal, SK Foods Vice President Alan Huey, and Ingomar President Greg Pruett will offer testimony to prove the collusion and RICO counts. Cohen Decl. ¶¶5-8.  In addition, Rahal and Huey will also provide testimony relevant to the fraud and obstruction counts.  Id.  For

-8-

1   example, Rahal is expected to testify that, with Salyer's

2   encouragement, he bribed Kraft purchasing manager Bob Watson.

3   Cohen Decl. ¶¶5-6.  The bribery was intended to help secure

4   inflated prices for tomato products SK Foods sold to Kraft.

5   Documents from SK Foods and Kraft will also prove relevant to the

6   racketeering, fraud, and collusion counts in which Kraft was a

7   victim.  Cohen Decl. ¶¶5-7.  In addition, the same witnesses may

8   authenticate documents, such as emails located on the SK Foods

9   server, and other evidence, including recordings that will be

10   used to prove the antitrust and other counts.  Cohen Decl. ¶4.

11       Citing <u>Jawara</u>, 474 F.3d at 578, the defendant complains that

12   the Indictment is "barebones" and, as a result, fails to disclose

13   a relationship between the antitrust and the remaining counts.

14   Motion at 3-4.  He claims that the Indictment omits "basic

15   facts," such the names of coconspirators, details concerning the

16   roles of Salyer and other SK Foods employees, the date when the

17   price-fixing agreements were struck, and the terms of those

18   agreements.

19       It is hornbook law that an Indictment need only set forth

20   facts sufficient to inform a defendant of the charges against

21   him.  <u>See</u> Fed. R. Crim. P. 7(c)(1); <u>United States v. Buckley</u>, 689

22   F.2d 893, 896 (9th Cir.1982), <u>cert. denied</u>, 460 U.S. 1086 (1983).

23   This 61-page speaking Indictment goes above and beyond that

24   standard.  <u>See</u> Findings & Recommendations at 12, Docket No. 303

25   (describing the Indictment as "fairly specific with respect to

26   what is being charged"); Order, Docket No. 309 (adopting Findings

27   & Recommendations, Docket No. 303).

28

1   This Court need not engage in "inferential gymnastics or
2   resort to implausible levels of abstraction" to find that the
3   antitrust counts share common questions of proof, time frame,
4   location, victims, modus operandi, motive, and evidence. <u>See</u>
5   <u>Jawara</u>, 474 F.3d at 578.  As Magistrate Judge Hollows stated:

6           The indictment alleges several criminal law violation
        theories, e.g., racketeering, wire/mail fraud, price fixing,
7       but *the factual overlays for each theory all rely, more or
        less, on the same facts.*
8
    <u>Id.</u> (emphasis added).  The counts are, in short, "of the same or
9   similar character."[1]
10
                    **2.   "Same Act or Transaction"**
11
12   The antitrust counts are "based on the same act or
    transaction" as the racketeering, fraud, and obstruction counts.
13
    Courts have long interpreted the term "transaction" flexibly.
14
    <u>Friedman</u>, 445 F.2d at 1083. "It may comprehend a series of many
15
    occurrences, depending not so much on the immediateness of their
16
    connection as upon their logical relationship." <u>Id.</u>  In
17
    determining whether offenses are based on "acts or transactions
18
    connected together, the predominant consideration is whether
19
    joinder would serve the goals of trial economy and convenience;
20
    the primary purpose of this kind of joinder is to insure that a
21
    given transaction need only be proved once." <u>United States v.</u>
22
    <u>Roselli</u>, 432 F.2d 879, 900-01 (9th Cir. 1970) (internal
23
    quotations omitted).
24

25 ──────────────
26          [1] The defendant notes the fact that prosecutors from the
    Antitrust Division are trying this case jointly with the United
27   States Attorney's Office as a factor weighing in favor of
    severance.  He cites to no authority suggesting that the
28   specialties of the prosecutors are relevant to joinder analysis.

In this case, the antitrust charges are logically related to
the other charges.  The Indictment alleges that the defendant
engaged in racketeering and fraud with the goals, among others,
of enhancing SK Foods' profits on tomato products, ensuring that
certain customers purchased tomato products from SK Foods rather
than their competitors, ensuring that those customers paid an
inflated price for those products, and inducing customers'
purchasing agents to disclose bidding and other information of SK
Foods' competitors.  Indictment Count 1, ¶¶30, 31.  The alleged
price fixing and bid rigging, which took place during the same
time frame, in the same locations, and involved the same core
group of participants, also furthered those goals.

As discussed in more detail below, evidence of the bid
rigging alleged in Count 10 overlaps with evidence for several
other counts.  In addition, the obstruction of justice alleged in
Count 7 relates to, and connects, all other charges, including
the antitrust counts.  Salyer allegedly altered documents to omit
reference to Rahal as "Director & Officer" of SK Foods.
Indictment Count 7, ¶3.  The Indictment states that Rahal had
"routinely paid bribes to purchasing managers of many of SK Foods
customers."  Indictment Count 7, ¶2.  Count 10, as well as the
racketeering and fraud counts, allege the same bribery activity.
Indeed, Rahal was deeply involved in both the antitrust and
non-antitrust counts as Salyer's sales broker and intimate
associate.  See Indictment Count 1, ¶5.  Thus, Salyer's
obstruction was relevant to Count 10 as well as the other counts.
The government plans to rely on Rahal to testify to each of those
counts.  Cohen Decl. ¶¶5-6.

### 3. "Common Scheme or Plan"

Courts generally permit joinder under the "common scheme or plan" test where the counts "grow out of related transactions." Jawara, 474 F.3d at 574 (citations omitted). Put differently, the test is whether "commission of one of the offenses either depended upon or necessarily led to the commission of the other; proof of the one act either constituted or depended upon proof of the other." Id. (internal quotation marks omitted). Typically, common schemes or plans involve a "concrete connection between the offenses that goes beyond mere thematic similarity." Id. Thus, charges of marriage fraud and making a false statement on an asylum application that occurred several years earlier and involved no overlapping witnesses were improperly joined. See Id. But counts of espionage and tax evasion were properly joined where the tax evasion was an attempt to conceal the illegal proceeds of the espionage. See Whitworth, 856 F.2d at 1277.

Here, the bid-rigging agreement alleged in Count 10 is closely intertwined with the racketeering and fraud charges in Counts 1, 2, 4, and 5. Count 10 alleges that the defendant and coconspirators bribed a Kraft purchasing agent to obtain confidential information which assisted in carrying out the bid-rigging agreement. See Indictment Count 10, ¶4(d); Count 1, ¶¶31(a), 46. Counts 1, 2, 4, and 5 allege that the defendant encouraged the bribes related to Kraft in order to "ensure that those customers paid an inflated price for such products" and "induce the customers' purchasing agents to disclose bidding and other proprietary information to certain of SK Foods' competitors." Count 1, ¶31(a). The bribes "allowed SK Foods to

-12-

1  sell processed tomato products to Kraft at inflated prices."
2  Count 1, ¶46.

3       From the face of the Indictment, it is clear that these
4  instances of bribery involved an overlapping time period
5  (beginning in or about January 2007 until April 2008), the same
6  victim (Kraft), the same locations (SK Foods' facilities located
7  in the Eastern District of California), the same means and
8  methods (collusion with coconspirators, including SK Foods'
9  employees and agents, and the payment of bribes), the same
10 motivation (to artificially inflate the price of SK Foods'
11 product), and the same harmful effects (increasing the cost to
12 the victim).   See Cohen Decl. ¶6;  Count 1, ¶¶43-50, Count 10.
13 In addition, the bribery involved the same actors (Salyer, Rahal,
14 and Watson) and the same witnesses – Rahal and Huey.  It is clear
15 that the bribery alleged in Count 10 is the same bribery alleged
16 in the other counts related to Kraft.

17      The defendant contends that the Indictment does not provide
18 enough detail to determine whether the bribery described in Count
19 10 is connected to any other counts.  He claims that the
20 Indictment needed to name the purchasing manager, identify more
21 specifically when the particular bribe took place, describe in
22 detail the circumstances of the bribe, and specify the
23 relationship between the bribes described in Count 10 and the
24 others in the Indictment.  As described above, the Indictment
25 provides more than enough detail to show a "common scheme or
26 plan" with respect to Count 10.

27      **B.    Joinder Creates No Risk of Prejudice under Rule 14.**

28

1    The defendant argues that even if the Court finds the

2  antitrust counts properly joined under Rule 8, it should sever

3  those counts under Rule 14.  He claims that the 12-count

4  Indictment will lead jurors to infer a general criminal

5  disposition or misconstrue the strength of the evidence of

6  certain counts.  Motion at 7.

7    Defendant faces a "heavy burden" in moving for severance

8  under Rule 14.  Brashier, 548 F.2d at 1323.  He must prove that

9  "joinder is so manifestly prejudicial that it outweighs the

10  dominant concern with judicial economy and compels the exercise

11  of the court's discretion to sever."  Id.  The mere presence of

12  some risk of prejudice is insufficient to override the interest

13  in judicial economy.  See, e.g., United States v. VonWillie, 59

14  F.3d 922, 930 (9th Cir. 1995) (severance of drug counts from

15  firearms counts not warranted because evidence of guilt on both

16  counts was "overwhelming" and trial court had taken precautions

17  to guard against undue prejudice).  A jury is able to

18  "compartmentalize" evidence pertaining to separate counts, United

19  States v. O'Neal, 834 F.2d 862, 866 (9th Cir. 1987), and limiting

20  instructions can be used to mitigate any possible prejudice.

21  See, e.g., Brashier, 548 F.2d at 1324.

22    The defendant does not even attempt to meet the high hurdle

23  set by Rule 14.  He does not explain how he would be prejudiced

24  by the Indictment in its current form.  He does not and cannot

25  claim, as the defendant did in Lewis, 787 F.2d at 1331-32, that

26  joinder of weak counts with strong ones provides a vehicle for

27  the prosecution "to paint as evil a picture of the defendant as

28  possible."  Id. at 1323.  The defendant does not claim that

-14-

1   evidence will be admissible to prove the antitrust charges that

2   would be inadmissible to prove the other counts, or vice versa.

3   See id. at 1321-22. The mere fact that the defendant has been

4   charged with multiple counts for interrelated criminal

5   activities, standing alone, is insufficient to require severance.

6   See, e.g., United States v. Lopez, 477 F.3d 1110, 1116 (9th Cir.

7   2007) (upholding decision not to sever a drug possession charge

8   from a firearm possession charge because requisite prejudice had

9   not been shown).

10  **IV.  CONCLUSION**

11      The antitrust counts cannot be isolated from the rest of the

12  charges. The detailed Indictment on its face makes clear that

13  the antitrust counts are closely related to the others. They

14  share several common actors, conspiratorial goals, victims,

15  questions of proof, evidence, modus operandi and motive, time

16  frame, location, and witnesses. To separate the cases would

17  involve much duplication of effort and wasted time. The joinder

18  rules exist to conserve judicial resources in situations like

19  this. The Court should deny the defendant's Motion.

20

21  DATED: October 28, 2011        Respectfully submitted,

22

                                   BENJAMIN B. WAGNER
23                                 United States Attorney

24

                                   /s/ Anna Tryon Pletcher
25                                 ANNA TRYON PLETCHER
                                   TAI S. MILDER
26                                 RICHARD B. COHEN
                                   Trial Attorneys
27                                 U.S. Department of Justice
                                   Antitrust Division

28

                                  -15-