Dale C. Campbell, State Bar No. 99173
Zachary J. Wadlé, State Bar No. 231404
**weintraub** genshlea chediak
**tobin** & tobin
LAW CORPORATION
400 Capitol Mall, 11th Floor
Sacramento, California 95814
Telephone:   916.558.6000
Facsimile:    916.446.1611
dcampbell@weintraub.com

Attorneys for Movant
The Morning Star Packing Company, L.P.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FREDERICK SCOTT SALYER,<br><br>Defendant. | Case No. 2:10-cr-0061-LKK (GGH)<br><br>MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO QUASH SUBPOENAS<br><br>Date:  March 6, 2012<br>Time:  9:15 a.m.<br>Courtroom 4, The Hon. Lawrence K. Karlton<br><br>Complaint Filed:  February 18, 2010<br>Trial Date:  April 17, 2012 |

{1450432.DOCX;}

MPAs ISO Motion to Quash Subpoenas

## TABLE OF CONTENTS

| | | Page |
|---|---|---|
| I. | INTRODUCTION | 1 |
| II. | FACTUAL BACKGROUND | 2 |
| III. | SALYER'S RULE 17 SUBPOENAS ARE SUBJECT TO STRICT LEGAL STANDARDS | 5 |
| IV. | SALYER'S SUBPOENA REQUESTS ARE NOT SUPPORTED BY "EXCEPTIONAL CIRCUMSTANCES," DO NOT SATISFY THE *NIXON* STANDARDS, AND MUST BE QUASHED | 10 |
| V. | SALYER'S SUBPOENAS DO NOT MEET THE *NIXON* STANDARDS | 10 |
| VI. | CONCLUSION | 16 |

# TABLE OF AUTHORITIES

*Federal Cases*

| Case | Page |
|---|---|
| Bowman Dairy Co. v. United States, 341 U.S. 214 (1951) | 7 |
| Hickman v. Taylor, 329 U.S. 495 (1947) | 13 |
| In re Grand Jury Subpoena, 31 F.3d 826 (9th Circ. 1994) | 9 |
| Kenna v. U.S. Dist. Court, 435 F.3d 1011 (9th Cir. 2006) | 6 |
| United States v. Brown, 479 F.Supp. 1247 (D. Md. 1979) | 7 |
| United States v. Fields, 663 F.2d 880 (9th Cir. 1981) | 8, 12 |
| United States v. MacKey, 647 F.2d 898 (9th Cir. 1981) | 7 |
| United States v. Morris, 287 F.3d 985 (10th Cir. 2002) | 9 |
| United States v. Nixon, 418 U.S. 683 (1974) | passim |
| United States v. Reed, 726 F.2d 570 (9th Cir. 1994) | 7, 8, 11, 15, 16 |
| United States v. Reyes, 239 F.R.D. 591 (N.D. Cal. 2006) | 7, 9 |
| United States v. Rowe, 96 F.3d 1294 (9th Cir. 1996) | 9 |
| United States v. Tomison, 969 F.Supp. 587 (E.D. Cal. 1997) | 7, 8-9 |
| Upjohn Co. v. United States, 449 U.S. 383 (1981) | 13 |
| Weatherford v. Bursey, 429 U.S. 545 (1977) | 5 |

///

///

///

**Federal Statutes**

18 U.S.C. § 3771 (Crime Victim Rights Act) .................................................... 2, 6

Federal Rules of Criminal Procedure
    Rule 17, et seq. ....................................................................................... passim

Federal Rules of Evidence
    Rule 803(8)(B) ................................................................................................ 8

**Miscellaneous**

Miller & Star
    2 Federal Practice & Procedure ................................................................... 8

weintraub genshlea chediak
tobin & tobin
LAW CORPORATION

Movant The Morning Star Packing Company, L.P. respectfully submits these points and authorities in support of its Motion to Quash Subpoenas.

I. INTRODUCTION

This is a pending criminal case brought by the United States against Defendant Scott Salyer ("Salyer") for violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), wire fraud, obstruction of justice, and conspiracy to suppress and/or eliminate competition in the tomato processing industry by raising and fixing prices and rigging bids. Salyer has served two third-party subpoenas pursuant to Federal Rules of Criminal Procedure, Rule 17(c) on The Morning Star Packing Company ("Morning Star") and a private investigator Don Vilfer ("Vilfer") who has been retained by Morning Star's attorneys to assist them with investigations necessary to provide legal advice to Morning Star. The subpoenas do not satisfy Rule 17(c) standards, are overbroad, seek privileged information, and must be quashed.

Morning Star is a competitor of Salyer's former company, SK Foods ("SK"), in the tomato processing industry and a victim of Salyer's crimes that have suppressed and/or eliminated competition in the industry. In early 2005, Morning Star's attorneys Weintraub Genshlea Chediak Tobin & Tobin Law Corporation ("Weintraub"), through attorney Dale Campbell ("Campbell"), engaged Vilfer to assist Weintraub in an investigation necessary to enable Weintraub to provide legal advice related to former Morning Star employees who had subsequently gone to work for SK, and related issues. The investigation uncovered evidence of embezzlement, theft of trade secrets, and also revealed evidence of possible bid rigging and/or commercial bribery by SK. At direction of counsel, Vilfer prepared a report specifically for the Federal Bureau of Investigation ("FBI") for its use, further investigation, and possible prosecution. As the Government's investigation continued, Morning Star, through its attorney's supervision of and direction to Vilfer, provided the FBI with additional written investigative reports from time to time. Except for the information that has been provided to the FBI, Weintraub, Vilfer, and Morning Star have kept the remainder of the investigative files regarding Morning Star's former employees, Salyer, and SK confidential and have not disclosed the information to any third party. Salyer's Rule 17(c) subpoenas to Morning Star and Vilfer

improperly seek information related to Morning Star's internal and confidential investigation conducted by and through counsel, including investigative files and information that have not been provided to any third party, including the FBI or the Department of Justice.

Rule 17(c) subpoenas are only appropriate under narrow circumstances, especially when the subpoenaed party is a victim of the defendant's crimes. Under the Crime Victim Rights Act, 18 U.S.C. § 3771, where personal or confidential information about a victim such as Morning Star is sought, "exceptional circumstances" must be shown to exist before the court may grant an ex parte request for a subpoena under Rule 17(c). Even if such "exceptional circumstances" exist, Salyer must still identify the materials to be produced with specificity, and clearly demonstrate that the materials sought are both relevant to and admissible in his pending criminal case. Salyer must also demonstrate that the documents sought are not obtainable from other sources, and do not include privileged material. As detailed herein, Salyer cannot satisfy any of these requirements. There are no "exceptional circumstances" supporting Salyer's subpoenas. The documents sought from Morning Star and Vilfer are ambiguously defined, extremely overbroad and seek information that is not relevant and/or admissible in Salyer's pending criminal case.[1] Salyer can obtain the portion of the investigative file that was shared with the FBI through the United States Attorney's office and applicable discovery procedures in his criminal case. As a result, the subpoenas served on Morning Star and Vilfer are improper and must be quashed.

II.   **FACTUAL BACKGROUND**

1.   Morning Star and its owner, Chris Rufer ("Rufer), have been clients of Weintraub for over 20 years. Dale Campbell has represented Morning Star in various litigation matters since at least 1992. Declaration of Dale C. Campbell ("Campbell Decl."), ¶ 2.

---

[1] Morning Star does not know what information and arguments were presented to the Court in order to obtain the subpoenas since the subpoenas were obtained *ex parte* without notice to Morning Star. Moreover, Salyer's moving papers have not been filed in the public record. Nevertheless, based upon the nature of the overly-broad and non-specific requests, coupled with the fact that Salyer expressly demands hearsay and privileged documents, Morning Star concludes that Salyer's application did not contain the necessary supporting detailed evidence required by *U.S. v. Nixon*, 418 U.S. 683 (1974), and the Ninth Circuit.

2. Morning Star, through Chris Rufer, consulted with Weintraub, seeking legal advice about various issues related to one or more of its employees and former employees who were then working for SK. In February 2005, Weintraub retained Don Vilfer, a former Special Agent with the FBI, and his investigative firm Vilfer & Associates (collectively, "Vilfer") to assist Weintraub with its investigation, analysis, consultation, and legal advice to Morning Star. Vilfer reports his investigative findings to Weintraub, and to no other third party, except the FBI as described below. Vilfer continues to serve as a confidential investigator and consultant to Weintraub. Campbell Decl., ¶ 3.

3. Vilfer, at the direction of and in conjunction with Weintraub, has investigated various facts and circumstances arising from the departure of one or more of Morning Star's former employees and related issues and evidence that arose during the course of that investigation, including facts related to Salyer and SK. Vilfer reports his investigative findings to Weintraub to be used in providing legal advice to Rufer and Morning Star. Campbell Decl., ¶ 4.

4. The investigation conducted at the direction of Weintraub revealed evidence of embezzlement and other fraudulent acts by Anthony Manuel ("Manuel") and the theft of trade secrets by Manuel and another former employee of Morning Star then employed by SK. The investigation also revealed possible evidence of improper conduct by SK in the tomato processing industry. Campbell Decl., ¶ 6.

5. At the request of Campbell, Vilfer has compiled numerous reports of his investigation findings from 2005 to the present and has provided them to Weintraub for its confidential use in conjunction with legal advice provided to Rufer and Morning Star. These reports remain confidential and have not been disclosed to any third parties. Campbell Decl., ¶ 5; Declaration of Chris Rufer ("Rufer Decl."), ¶ 2; Declaration of Don Vilfer ("Vilfer Decl."), ¶ 4.

6. Due to the overwhelming evidence of embezzlement and theft of trade secrets by the former Morning Star employee Manuel, and the possible bid rigging and/or commercial bribery by SK, Weintraub directed Vilfer to prepare a report of findings and supporting

evidence to be delivered to the FBI for their use in conducting a possible investigation and potential prosecution. This report was delivered to the FBI in late August 2005. Campbell Decl., ¶ 7. This report appears to be referenced in the Affidavit of Special Agent Paul S. Artley in Support of Search Warrants dated April 13, 2008 ("Search Warrant Affidavit") at paragraphs 26 and 27. Docket No. 1 (January 5, 2010 Complaint).

7. As the Government's investigation continued, Morning Star, through its attorney's supervision and direction to Vilfer, provided the FBI with additional investigative reports and other documentation from time to time. Vilfer Decl., ¶ 6; Campbell Decl., ¶ 8.

8. Weintraub, Morning Star, and Vilfer have retained the remainder of Vilfer's investigation work product and have not disclosed it to any third parties. Campbell Decl., ¶ 9; Vilfer Decl., ¶ 7; Rufer Decl., ¶ 2. Vilfer continues to assist Weintraub at the direction of Campbell with additional investigative work related to Salyer, SK, Anthony Manuel, and others. Campbell Decl., ¶ 5.

9. On February 18, 2010, Salyer was formally charged with violations of RICO, wire fraud, and obstruction of justice. Docket No. 1 (February 18, 2010 Indictment). A Superseding Indictment was filed against Salyer on April 29, 2010 and a Second Superseding Indictment was filed on August 17, 2011 (the "Indictment"). The Indictment charged Salyer with conspiracy to suppress and/or eliminate competition in the tomato processing industry by raising and fixing prices and rigging bids. Docket No. 365.

8. The Indictment includes several references identifying Morning Star as a victim of Salyer's criminal conduct:

• James Wahl, the buyer for Frito-Lay, agreed not to buy from Morning Star as a result of the bribes paid by Salyer and SK. Docket No. 365, ¶¶ 37 and 38.

• James Wahl, in return for bribe payments from Salyer and SK, transmitted to Salyer and SK a confidential bid that Morning Star had submitted to Frito-Lay. Docket No. 365, ¶¶ 39 and 41.

///
///

- Robert Watson, a buyer for Kraft, provided Salyer and SK (through their agent Randall Rahal) a contract proposal submitted by Morning Star. Docket No. 365, ¶ 49 and p. 44:5-8.

- As a competitor, Morning Star is also a victim of Salyer's.

10. The Department of Justice identifies Morning Star as a victim of Salyer's criminal conduct. The Department of Justice periodically informs Morning Star, as a victim of a federal crime, of the status of Salyer's prosecution. See letter dated December 30, 2011 from United States Department of Justice. Rufer Decl., ¶ 3, Exh. 1.

11. On February 6, 2012, Salyer served Morning Star and Vilfer with subpoenas seeking information about Morning Star's internal and confidential investigation. Rufer Decl., ¶ 4, Exh. 2; and Vilfer Decl., ¶ 8, Exh. 1.

12. Morning Star promptly brings this motion to quash the subpoena issued to Morning Star and Vilfer.

III. SALYER'S RULE 17(C) SUBPOENAS ARE SUBJECT TO STRICT LEGAL STANDARDS

Federal Rules of Criminal Procedure, Rule 17(c) governs the issuance and enforcement of criminal trial subpoenas by a defendant on a third party. The Rule reads as follows:

(c) Producing Documents and Objects.

(1) In General. A subpoena may order the witness to produce any books, papers, documents, data or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

(2) Quashing or Modifying the Subpoena. On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

(3) A subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

Criminal discovery is narrow and created by statute, not required by the Constitution. *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977). To ensure that Rule 17 does not expand

the statutory limits of criminal discovery, case law requires that any party requesting a subpoena under Rule 17(c) must make a factual showing that the subpoena seeks specific, trial-admissible evidence, rather than merely relevant but unknown information. In the case of a subpoena to a third-party victim like Morning Star, section 17(c)(3) also requires that the Court find "exceptional circumstances" before allowing a Rule 17(c) subpoena to be issued ex parte and served with giving prior notice to the victim.[2]

*U. S. v. Nixon*, 418 U.S. 683, 699-700 (1974) established the threshold requirements that must be met by a defendant in order to enforce a subpoena under Rule 17(c). The requirements are as follows:

(1) the documents sought pursuant to subpoena must be specifically described, relevant, and admissible;

(2) the documents must not be otherwise procurable reasonably in advance of trial by exercise of due diligence;

(3) the subpoenaing party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and

(4) the application is made in good faith and is not intended as a general "fishing expedition."

In *Nixon*, the Special Prosecutor subpoenaed audio tapes from a third party – the President of the United States. The Special Prosecutor was required to make a clear and unmistakable preliminary factual showing satisfying the essential *Nixon* requirements of relevancy, admissibility, and specificity.

- To satisfy the **relevance** requirement, the Special Prosecutor's subpoena application was accompanied by "sworn testimony or statements of one or more of the participants in the conversation(s) as to what was said at the time" in many of the conversations on the audio tapes. *Id.* at 700. As for the other conversations, the identity of the participants and time and place of the conversations were known, and in the context of the known conversations, permitted the inference of relevance to the indictment. *Id.*

---

[2] Section 3 is a recent addition to Rule 17(c) and followed enactment of the Crime Victim Rights Act ("CVRA"), 18 U.S.C. § 3771, signed into law on October 30, 2004. The CVRA further narrowed a criminal defendant's right to discovery from third party victims of the defendant's crimes. The CVRA makes crime victims "independent participants in the criminal justice process" and gives them "eight different rights" that the victims or the Government may enforce. *Kenna v. U.S. Dist. Court*, 435 F.3d 1011, 1013 (9th Cir. 2006). The CVRA also provides crime victims with an expedited writ of mandamus process to enforce their rights under the CVRA.

{1450432.DOCX;}                                6                           MPAs ISO Motion to Quash Subpoenas

- To satisfy **admissibility** under the hearsay rule, the Special Prosecutor satisfied the Supreme Court that the tapes were not hearsay because they were the recordings of the out-of-court statements of defendants and co-conspirators. *Id.* at 701.

- To satisfy **specificity**, the Special Prosecutor was able to fix the time, place, and persons present in the discussions, and enumerated the specific meetings and conversations demanded by the subpoena. *Id.* at 688.

*Nixon* stressed that Rule 17(c) was not intended to provide general criminal discovery, but instead was designed to expedite trial by providing a time and place before trial for the inspection of subpoenaed materials. *Id.* at 698-99, *citing Bowman Dairy Co. v. United States*, 341 U.S. 214 (1951) ("This case recognized certain fundamental characteristics of the subpoena duces tecum in criminal cases: (1) it was not intended to provide a means of discovery for criminal cases, *id.*, at 220; (2) its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of subpoenaed materials, *ibid.*"). This strict interpretation of Rule 17(c) has been repeatedly confirmed by subsequent decisions in the Ninth Circuit. *United States v. MacKey*, 647 F.2d 898, 901 (9th Cir. 1981) ("[A] Rule 17(c) subpoena is not intended to serve as a discovery tool . . . or to allow a blind fishing expedition seeking unknown evidence." (citing *Bowman Dairy Co.* at 220; *United States v. Brown*, 479 F.Supp. 1247, 1251 n.7 (D. Md. 1979)); *see, also, United States v. Reyes*, 239 F.R.D. 591, 597 (N.D. Cal. 2006) ("Rule 17(c) is not as broad as its plain language suggests ..."); and *United States v. Reed*, 726 F.2d 570, 577 (9th Cir. 1994).

Salyer may attempt to argue that the Court's holding in *United States v. Tomison*, 969 F.Supp. 587, 597 (E.D. Cal. 1997) expanded his discovery rights from third parties pursuant to a Rule 17(c) subpoena. Such an argument would be an overly broad reading of *Tomison*. *Tomison* fundamentally dealt with the Government's objection to the *ex parte* motion procedure used by the defendant to obtain the issuance of Rule 17(c) subpoenas. In a footnote, the Court remarked that "Rule 17(c) may well be a proper device for discovering documents in the hands of third parties," (*id.* at 593, n. 14), but this comment was made in the context of the Court's discussion of the Government's standing to challenge a Rule 17(c) subpoena and not about the proper scope of a Rule 17(c) subpoena. In any event, *Tomison* makes clear that a Rule 17(c) subpoena to a third party was undoubtedly held to the same

threshold *Nixon* standards of "relevancy, admissibility and specificity." *Id.* at 594 ("[A] defendant seeking pre-trial production must make a demonstration of relevancy, admissibility and specificity."). Furthermore, the Ninth Circuit has held that the *Nixon* evidentiary standards are no less stringent when applied to third parties. *United States v. Fields*, 663 F.2d 880, 881 (9th Cir. 1981) ("[W]e see no basis for using a lesser evidentiary standard merely because production is sought from a third party rather than the United States.").

Since *Nixon*, the Ninth Circuit has further clarified the essential *Nixon* requirements of relevance, admissibility, and specificity to ensure that Rule 17(c) subpoenas are not used for general discovery by criminal defendants.

Relevance – Impeachment evidence is not relevant until a witness actually testifies. A court errs by approving a Rule 17(c) subpoena relevant only for such purposes. In *United States v. Fields*, 663 F.2d 880 (9th Cir. 1981), a defendant's subpoena sought a bank's transcripts of interviews with its own employees. *Id.* at 881. The district court's approval of the subpoena was reversed and the subpoena quashed. The Ninth Circuit reasoned that because such impeachment evidence was not relevant or admissible until and unless the interviewed witnesses testified, the *Nixon* standards could not possible be met. *Id.*

Admissibility – Hearsay: The hearsay rule is a primary barrier to Rule 17(c) subpoenas because the requesting party must demonstrate the documents sought are admissible non-hearsay. In *United States v. Reed*, 726 F.2d 570 (9th Cir. 1984), a defendant subpoenaed a local law enforcement agency's investigative file. *Id.* at 576-77. The subpoena was properly quashed because investigation files will almost always be hearsay, and therefore fail the *Nixon* admissibility requirement. *Id., citing* Fed. R. Evid. 803(8)(B) (law enforcement reports are inadmissible hearsay in a criminal case). Furthermore, to the extent the investigative file contains witness statements, such documents cannot be subpoenaed at all. Fed R. Crim. P. 17(h) ("No party may subpoena a statement of a witness or of a prospective witness.").

Admissibility – Privilege: The attorney-client and work product privileges are another barrier to Rule 17(c) subpoenas because a subpoena "should be quashed or modified if it calls for privileged matter." Miller & Star, 2 Federal Practice & Procedure § 275, at 258; *United*

*States v. Tomison*, 969 F. Supp. 587, 597 (E.D. Cal. 1997) (citing *In re Grand Jury Subpoena*, 31 F.3d 826 (9th Cir. 1994); *see, also, United States v. Reyes*, 239 F.R.D 591 (N.D. Cal. 2006). In *Tomison*, the Court recognized that attorney client and/or work product privileged material is not subject to production under a Rule 17(c) subpoena. The Court recognized that "it is established that 'the attorney-client privilege applies to communications between corporate employees and counsel, made at the direction of corporate superiors in order to obtain legal advice.'" *Id.* at 597 (citations omitted). The Court further recognized "it is also established that 'fact-finding which pertains to legal advice counts as professional legal services'" subject to protection. *Id., citing United States v. Rowe*, 96 F.3d 1294, 1297 (9th Cir. 1996). After finding that the requested notes of statements made to the corporation's attorneys were "(a) prepared by one of the members of the firm (b) were obtained by the attorneys pursuant to the direction of the corporations (c) for the purpose of providing legal advice to the corporation (d) that it was intended they were to be kept confidential, and (e) with one exception have not been revealed to anyone else,"[3] the Court quashed the subpoena request of the privileged material. *Id*.

Specificity – *Reed* also held that a subpoena for an entire investigative file fails *Nixon's* requirement that a trial subpoena identify "specific documents." 726 F.2d at 576-77. *Reed* clearly instructs that a party may not obtain a subpoena for an entire file of unknown contents. *Id*. Even if a class of documents "appears highly relevant and arguably admissible," a requestor cannot satisfy *Nixon* unless he can "identify the item sought and what the item contains, among other things." *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002). In *Morris*, the defendant sought a subpoena directed to all documents collected during an FBI investigation and for an undercover FBI agent's personnel file. *Id*. The defendant's counsel could not specify ahead of time what the file contained and what specific documents were

///

---

[3] The exception was that a report prepared by one of the attorneys was supplied to the government, which effectively waived any claim of privilege over that particular report, but not the remaining privileged material. *Id*.

{1450432.DOCX;}   9   MPAs ISO Motion to Quash Subpoenas

requested. *Id.* Therefore, his request was impermissible and the subpoena rejected. *Id.* "[R]equests for an entire file are evidence of an impermissible fishing expedition." *Id.*

### IV. SALYER'S SUBPOENA REQUESTS ARE NOT SUPPORTED BY "EXCEPTIONAL CIRCUMSTANCES," DO NOT SATISFY THE NIXON STANDARDS, AND MUST BE QUASHED.

As an initial matter, Salyer's subpoena to a third party victim of his crimes such as Morning Star (including his attorney's and investigator's files) must be supported by "exceptional circumstances" before the subpoenas can be issued ex parte and served on Morning Star. Rule 17(c)(3). Salyer's subpoenas were served on Morning Star and Vilfer without prior notice to Morning Star and without any opportunity to object to the subpoenas before the Court allowed them to be issued. Morning Star and Vilfer are unaware of any "exceptional circumstances" that justify the service of Salyer's subpoenas without prior notice to the victim and the opportunity to object prior to issuance as provided by Rule 17(c)(3).

### V. SALYER'S SUBPOENAS DO NOT MEET THE NIXON STANDARDS.

Even if Salyer can demonstrate "exceptional circumstances" to allow the issuance of his subpoenas ex parte, the subpoenas must still satisfy the *Nixon* standards. The language of the specific requests served on Morning Star and Vilfer is reproduced below. The requests do not satisfy the Rule 17 and *Nixon* standards for the following reasons:

Subpoena Request No. 1: COMMUNICATIONS YOU [or any of YOUR attorneys][4] have had with the DOJ or the FBI (including, but not limited to, FBI Agent Paul Artley) CONCERNING F. Scott Salyer, SK FOODS, any SK FOODS customer, Anthony Manuel, Jeff Beasley, Beth Claire, Michael Poretti, or Eric Lynn Child.

Reasons Why Request No. 1 Is Improper: There is no specificity to this request. There is only a general reference to communications concerning various individuals and/or companies that may or may not be related to Salyer's pending criminal case. Even if a class of documents "appears highly relevant and arguably admissible," a requestor cannot satisfy

---

[4] The bracketed language in the subpoena request is the additional language in the subpoenas directed to Morning Star. Otherwise, with the exception of Subpoena Request No. 5, the language of the subpoenas served on Morning Star and Vilfer is identical.

weintraub genshlea chediak
tobin & tobin
LAW CORPORATION

*Nixon* unless he can "identify the item sought and what the item contains, among other things." *United States v. Morris*, 287 F.3d 985, 991 (10th Cir. 2002). No effort has been made here to identify the exact communications sought, the information the requested communications contain, the participants or dates of the communications, and/or why or how such information is relevant. This request constitutes the proverbial "fishing expedition" prohibited under *Nixon* and related Ninth Circuit precedent.

Request No. 1 also seeks information that is inadmissible hearsay, and therefore fails the admissibility requirement of *Nixon*. The requesting party must always show that the documents he seeks are admissible non-hearsay. *United States v. Reed*, 726 F.2d 570, 576-77 (9th Cir. 1984) (defendant's early return subpoena for local law enforcement investigative file was properly quashed because investigation files will almost always be hearsay). Here, the request seeks evidence of out-of-court third-party communications by Morning Star, Morning Star's attorneys, and/or Vilfer with the DOJ and/or FBI. Such communications are inadmissible hearsay, and therefore prohibited under the *Nixon* standards.

Request No. 1 seeks the production of witness statements by any of the parties identified in the subpoena language, it is also flatly prohibited by Federal Rules of Criminal Procedure, Rule 17(h), which states that "no party may subpoena a statement of a witness or of a prospective witness."

Subpoena Request No. 2: DOCUMENTS YOU [or any of YOUR attorneys] provided to the DOJ or the FBI (including, but not limited to, FBI Agent Paul Artley) CONCERNING F. Scott Salyer, SK FOODS, any SK FOODS customer, Anthony Manuel, Jeff Beasley, Beth Claire, Michael Poretti, or Eric Lynn Child.

Reasons Why Request No. 2 Is Improper: The request is facially overbroad in that it only references documents concerning various individuals and/or companies without an specification. Request No. 2 does not identify the exact documents sought, the information the requested documents contain, and/or why or how the requested information is relevant. This request again constitutes the proverbial "fishing expedition" prohibited under *Nixon* and related Ninth Circuit precedent.

To the extent Request No. 2 seeks evidence for impeachment purposes relating to the individuals identified in the request, it is also improper. Impeachment evidence is not relevant until a witness testifies. It is well-settled that a court errs by ordering early return of documents relevant only for possible impeachment. *United States v. Fields*, 663 F.2d 880 (9th Cir. 1981). In *Fields*, the Ninth Circuit reasoned that because such impeachment evidence was not relevant or admissible until and unless the witnesses testified, the *Nixon* standard could not be met if the early return subpoena sought such information.

Request No. 2 also ignores the *Nixon* requirement that the documents are not otherwise procurable reasonably in advance of trial by exercise of due diligence. The subpoena references documents provided to the DOJ and/or the FBI. To the extent such documents are in the possession of the DOJ and/or the FBI and Salyer believes he is entitled to them, Salyer can request production from those government entities. If Salyer believes that the DOJ and/or FBI have not properly provided such information to him he can enforce his discovery rights under Federal Rule of Criminal Procedure 16 and Local Rule 440. Subpoenas directed to third parties is not the appropriate procedure to resolve this issue.

<u>Subpoena Request No. 3</u>: DOCUMENTS in YOUR possession [or in the possession of YOUR attorneys that CONCERN] CONCERNING the employment of Anthony Manuel, Jeff Beasley, Beth Claire, or Michael Poretti at SK FOODS, including but not limited to DOCUMENTS CONCERNING Anthony Manuel, Jeff Beasley, Beth Claire, or Michael Poretti's transfer of YOUR COMPANY's proprietary information to SK FOODS or to Randall Rahal.

<u>Reasons Why Request No. 3 Is Improper</u>: This request again is facially overbroad. Request No. 3 is an overly-broad, non-specific demand for all documents concerning SK's employment of various individuals who were formerly employed at Morning Star. This includes plainly irrelevant documents, such as time records, compensation records, entire email accounts, and customer files worked on by the former employees. Request No. 3 also includes the expansive phrase "including but not limited to" documents related to the transfer of Morning Star's proprietary information. Even if the request was limited to this broad subset of documents, it fails to specify what information this subset of documents contains. Moreover,

1   even if Request No. 3 was limited to just this broad subset of documents, the documents are
2   not relevant to and/or admissible in Salyer's pending criminal case. The Indictment does not
3   accuse Salyer of the theft of Morning Star's proprietary information through the transfer by
4   Morning Star's now former employees Anthony Manuel, Jeff Beasley, Beth Claire, or Michael
5   Poretti. The only reference in the Indictment to Morning Star's proprietary information is in
6   reference to allegations that Salyer bribed the purchasing agents of SK's customers to disclose
7   bidding and other proprietary information of SK's competitors, including Morning Star's bid
8   and pricing information. See Docket No. 365, ¶¶ 31(a), 37, and 46. As such, evidence that
9   Morning Star's former employees transferred Morning Star's proprietary information to Salyer
10  and SK is not relevant to any of the counts alleged in the Indictment.[5]

11  Salyer's failure to specify the documents with requisite specificity makes it clear that
12  Request No. 3 also fails the admissibility test. Without specifying which documents are
13  requested, Salyer cannot explain how the document would be admissible. Salyer's request is
14  so broad as to include hearsay witness statements and attorney work product, all of which are
15  inadmissible and privileged.

16  Request No. 3 also runs afoul of the principle that a subpoena "should be quashed or
17  modified if it calls for privileged matter." The attorney-client privilege applies in the context of
18  an investigation or fact-finding inquiry conducted by a company's attorneys. *Upjohn Co. v.
19  United States*, 449 U.S. 383, 390 (1981). The work product privilege safeguards "written
20  statements, private memoranda and personal recollections prepared or formed by an adverse
21  party's counsel in the course of his legal duties." *Hickman v. Taylor*, 329 U.S. 495, 510
22  (1947). Documents in Morning Star's, Morning Star's attorney's, and/or Vilfer's possession
23  concerning "Anthony Manuel, Jeff Beasley, Beth Claire, or Michael Poretti's transfer of YOUR
24  COMPANY's proprietary information to SK FOODS or to Randall Rahal" were obtained

---

[5] Morning Star acknowledges that the Search Warrant Affidavit contains many references to evidence that several former Morning Star employees who became employees of SK took confidential and proprietary information from Morning Star and gave that information to Salyer and SK. However, the Government has not charged Salyer with the theft of trade secrets or referenced those facts in the Indictment.

1   pursuant to an internal investigation conducted by Morning Star's attorney and Vilfer. The
2   documents created and/or obtained pursuant to this investigation and retained by Morning
3   Star, Weintraub, and/or Vilfer[6] are privileged and not subject to production pursuant to a
4   Rule 17 subpoena.

5   To the extent this request seeks evidence for impeachment purposes relating to the
6   individuals identified in the request, it is also improper. Impeachment evidence is not relevant
7   and/or admissible until a witness testifies, therefore the *Nixon* standards cannot be met.

8   <u>Subpoena Request No. 4</u>: DOCUMENTS in YOUR possession [or in the possession of
9   YOUR attorneys] that CONCERN Eric Lynn Child's transfer of YOUR COMPANY's proprietary
10  information to SK FOODS.

11  <u>Reasons Why Request No. 4 Is Improper</u>: The request does not adequately specify the
12  information sought. Minimal effort has been made here to identify the exact documents that
13  Salyer requests and/or what information the documents contain. The only attempt to delineate
14  the request is the reference to documents "CONCERN Eric Lynn Child's transfer of YOUR
15  COMPANY's proprietary information to SK FOODS." However, even with respect to this vague
16  description of the documents sought by Salyer, such documents related to Mr. Childs' transfer
17  of proprietary information are not relevant to and/or admissible in Salyer's pending criminal
18  case for other charges. The Indictment does not accuse Salyer of the theft of Morning Star's
19  proprietary information through the transfer of Mr. Childs.

20  The request also improperly requests privileged material. Documents in Morning Star's,
21  Morning Star's attorney's, and/or Vilfer's possession concerning "Eric Lynn Child's transfer of
22  YOUR COMPANY's proprietary information to SK FOODS" were obtained pursuant to an
23  internal investigation conducted by Morning Star's attorney and Vilfer The documents created
24  and/or obtained pursuant to this investigation and retained by Morning star (and/or Vilfer) are
25  privileged and not subject to production pursuant to a Rule 17 subpoena.

---

[6] Morning Star and Vilfer acknowledge that there is no privilege applicable to documents they shared with the FBI, and Salyer has other means to obtain those documents other <u>than to subpoena the victim.</u>

{1450432.DOCX;}                              14                    MPAs ISO Motion to Quash Subpoenas

To the extent this request seeks evidence for impeachment purposes relating to Mr. Childs, it is also improper. As discussed above, impeachment evidence is not relevant until a witness testifies, and It is well-settled that a court errs by ordering early return of documents relevant only for such a purpose.

<u>Subpoena Request No. 5 (directed to Morning Star)</u>: DOCUMENTS in YOUR possession or in the possession of YOUR attorneys CONCERNING, evidencing, or recording any investigation YOU or YOUR attorney(s) conducted of either F. Scott Salyer or SK FOODS engaging in or allegedly engaging in any of the following: commercial bribery, price fixing, or mislabeling of PROCESSED TOMATO PRODUCTS.

<u>Reasons Why Request No. 5 Is Improper</u>: Any responsive documents in Morning Star's and/or Morning Star's attorney's possession concerning any "investigation" conducted of either F. Scott Salyer or SK FOODS were obtained pursuant to an internal investigation conducted by Morning Star's attorney and Vilfer. The documents created and/or obtained pursuant to this investigation and retained by Morning Star, Weintraub, and Vilfer are privileged under the attorney-client and work product privileges and not subject to production pursuant to a Rule 17(c) subpoena.

The requested documents also fail the admissibility requirement of *Nixon* because they constitute hearsay. In *United States v. Reed*, 726 F.2d at 576-77, the Ninth Circuit rejected a defendants' subpoena for a local law enforcement investigation file because such files will almost always be hearsay. The same principle applies to the investigation files of third party Morning Star's investigation into Salyer's and/or SK FOODS' conduct.

<u>Subpoena Request No. 5 (directed to Vilfer)</u>: DOCUMENTS CONCERNING, evidencing or recording any investigation YOU conducted of either F. Scott Salyer or SK FOODS from January 1, 2005 through the present.

<u>Reasons Why Request No. 5 Is Improper</u>: The request is facially overbroad because there is no specificity other than the broad identification of documents concerning "any investigation" conducted of either Salyer or SK Foods by Vilfer over the last approximately seven years. Request No. 5 to Vilfer does not even limit its scope to the counts alleged in the

1 Indictment: commercial bribery, price-fixing, or mislabeling of tomato products, as did Request No. 5 to Morning Star. Request No. 5 to Vilfer is even broader, with no specific scope of subject matter or time. Salyer made no effort to identify the exact investigative documents sought, the topic of the investigation documents, and/or what relevant and admissible information the requested documents contain. This request is prohibited under *Nixon* and related Ninth Circuit precedent.

Any responsive documents in Vilfer's possession were created and obtained during the course of an investigation conducted at the direction of Morning Star's attorney. The documents created and/or obtained pursuant to this investigation and retained in confidence by Vilfer are privileged and not subject to production pursuant to a Rule 17 subpoena.

The requested documents also fail the admissibility requirement of *Nixon* because they constitute hearsay. In *United States v. Reed*, 726 F.2d at 576-77, the Ninth Circuit rejected a defendant's subpoena for a local law enforcement investigation file because such files will almost always be hearsay. The same principle applies to the investigation files of Vilfer (created at the behest of Morning Star's attorney) into Salyer's and/or SK's conduct.

## VI. CONCLUSION

Based on the foregoing, Morning Star and Vilfer respectfully request the Court to quash the subpoenas served by Salyer in their entirety.

Dated: February 21, 2012

Respectfully submitted,

**weintraub** genshlea chediak
**tobin** & tobin
Law Corporation

By: /s/ Dale C. Campbell
   Dale C. Campbell
   State Bar No. 99173

Attorneys for Movant
The Morning Star Packing Company, L.P.