KEKER & VAN NEST LLP
JOHN KEKER, #49092
jkeker@kvn.com
ELLIOT R. PETERS, #158708
epeters@kvn.com
BRIAN L. FERRALL, #160847
bferrall@kvn.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415 391 5400
Facsimile:     415 397 7188

SEGAL & KIRBY LLP
MALCOLM S. SEGAL - #075481
msegal@segalandkirby.com
770 L Street, Suite 1449
Sacramento, CA  95814
Telephone:  (916) 441-0828
Facsimile:  (916) 446-6003

Attorneys for Defendant
FREDERICK SCOTT SALYER

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>FREDERICK SCOTT SALYER,<br><br>　　　　　Defendant. | Case No. 2:10-CR-0061-LKK (GGH)<br><br>**DEFENDANT F. SCOTT SALYER'S OPPOSITION TO MORNING STAR MOTION TO QUASH SUBPOENAS**<br><br>Courtroom:　4, 15th Floor<br>Judge:　　　Hon. Lawrence K. Karlton<br>Hearing:　　 March 16, 2012<br><br>Date Comp. Filed:   February 18, 2010<br>Trial Date:　　April 17, 2012 |

626283

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND FACTS .................................................................................... 2

     A.    Morning Star Enlists the Government in an Effort to Target SK Foods ............................................................................................................ 2

     B.    The Government Will Present Evidence Concerning Morning Star at Trial. ............................................................................................... 4

III.  DEFENDANT'S SUBPOENAS WERE PROPERLY ISSUED ............................... 5

     A.    Rule 17(c)(3) Poses No Bar to Defendant's Subpoenas. ............................... 5

     B.    Morning Star Waived Any Privilege Over the Subpoenaed Materials. ...................................................................................................... 6

     C.    Defendant's Subpoenas Satisfy the *Nixon* Requirements. ............................. 9

IV.  CONCLUSION ................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*United States v. Reyes*
   239 F.R.D. 591 (N.D. Cal. 2006) ................................................................................ 8, 10, 11, 13, 14

*United States v. Young*
   2004 U.S. Dist. Lexis 6301 (W.D. Tenn. Mar. 4, 2004) ............................................................... 10

*United States v. Lee*
   Case No. 10-345 (E.D. Cal. Feb. 16, 2011) ............................................................ 10, 11, 13, 14

## I.  INTRODUCTION

When Anthony Manuel left Morning Star in January 2005, the company discovered that its once-valued employee had actually been a thief—a masterful one, in fact, who managed to embezzle over a million dollars without anyone noticing.  When Morning Star eventually caught on to Manuel's misdeeds, however, it did not do what any company in its situation might do: sue Manuel to recover its funds.  For Morning Star, Manuel held something far more valuable than a million dollars.  The thief was now working for its main competitor SK Foods.  If Manuel were a mole within SK Foods, he could wreak far greater havoc at SK Foods than he ever did at Morning Star.  Morning Star enlisted the FBI in its efforts and "Operation Rotten Tomato" was born.  Defendant's subpoenas seek evidence further revealing Morning Star's efforts.

Defendant also seeks evidence to rebut the government's recently disclosed plan to tar him with evidence concerning Morning Star.  At trial, the government will present evidence that Defendant hired four Morning Star employees and induced them to bring Morning Star's proprietary information to SK Foods.  According to the government, Defendant also sought to induce a former Morning Star driver to provide confidential Morning Star information to SK Foods.  The government indicates this Morning Star evidence is admissible not just under Rule 404(b) but also as evidence "inextricably interwined with the charged conduct and admissible as intrinsic evidence."[1]  Consequently, Morning Star will figure prominently in the government's case-in-chief.  Morning Star may not have been aware of the government's intention to introduce this evidence when it filed its motion to quash, so its puzzlement at some of Defendant's requests is understandable.  The requests are, however, relevant and the subpoenaed materials are evidentiary precisely because they seek documents that would rebut the government's now-disclosed trial theme.  The Court so found when it approved the Rule 17 subpoena applications in the first place and should deny Morning Star's motion for the same reason today.

---

[1] Declaration of Paven Malhotra in Support of Defendant's Opposition to Morning Star's Motion to Quash ("Malhotra Decl."), Exh. 6 (Correspondence from Government dated January 17, 2012).

1

## II.     BACKGROUND FACTS

**A.     Morning Star Enlists the Government in an Effort to Target SK Foods.**

The government's prosecution of Defendant had its origins in an investigation Morning Star commenced in early 2005. Anthony Manuel resigned from his employment at Morning Star on January 31, 2005 and began working at SK Foods shortly thereafter. Morning Star suspected that Manuel had been secretly embezzling its funds and hired former FBI Agent Don Vilfer to investigate.[2]

By August 2005, Vilfer had gathered enough evidence to confirm that Manuel had embezzled approximately $1 million from Morning Star.[3] Vilfer also gathered evidence suggesting that Manuel had provided Morning Star's trade secrets to SK Foods employee Jeff Beasley. Rather than attempting to recover the funds and trade secrets, Morning Star realized that Manuel had something far more valuable to offer—the ability to cripple SK Foods, one of Morning Star's principal competitors.

In the weeks and months that followed, Morning Star, Vilfer, and Morning Star's counsel Dale Campbell worked behind the scenes to orchestrate much of the government's investigation of SK Foods. They provided the government with a list of customers to whom Morning Star had lost business,[4] detailed personal and financial information on food purchasing managers who were suspected of receiving bribes from Randall Rahal,[5] and the fruits of Vilfer's "dumpster dives" through the trash at Rahal's New Jersey offices.[6] During the course of the government's

---

[2] Before he left for private practice, Vilfer had been Agent Paul Artley's supervisor at the FBI.
[3] *See* Malhotra Decl., Exh. 15 (USAO1849-860).
[4] *See id.*, Exh. 18 (USAO-2128-129).
[5] *See id.*, Exh. 20 (USAO-30198-208).
[6] *See id.*, Exh. 7 (USAO-2334-2362).

2

investigation, Vilfer met with the FBI at least five times.[7]  Morning Star also supplied Agent Artley with Greg Wuttke, a Morning Star employee who acted as an undercover informant on the government's behalf.  Wuttke not only placed calls to food purchasing managers to secure evidence[8] but, while wearing a wiretap, met with Manuel to try to secure information about SK Foods' activities.[9]

The degree to which Morning Star successfully turned the government's investigation into a vehicle to pursue SK Foods is laid bare in Manuel's first formal interview with the FBI on October 18, 2006.[10]  The *entire* interview concerns alleged improprieties at SK Foods.  Manuel's embezzlement at Morning Star is not even discussed once.  Indeed, because Manuel's wrongdoing at Morning Star had not been discussed, *Manuel's lawyer* requested a second interview with the government in December 2006 to disclose the details of Manuel's embezzlement at Morning Star.[11]

Morning Star's interest in the investigation stemmed from its desire to eliminate a competitor.  Indeed, Morning Star's motivation and its influence over the investigation are laid bare in an email Don Vilfer sent to Agent Artley on December 23, 2008.[12]  Vilfer provided a checklist of admissions Morning Star and its outside counsel Dale Campbell wanted the government to include in all guilty pleas because of their potential value in Morning Star's civil lawsuits.  Vilfer explained, "Dale [Campbell] really wants to prove that SK bribed Morning Star

---

[7] *See id.*, Exh. 4 (USAO-1846); Exh. 5 (USAO-2131); Exh. 7 (USAO-2334); Exh. 8 (USAO-2809); Exh. 9 (USAO-2979).
[8] *See id.*, Exh. 22 (USAO-2171).
[9] *See id.*, Exh. 23 (USAO-2149).
[10] *See id.*, Exh. 24 (USAO-2178-179).
[11] *See id.*, Exh. 25 (USAO-1717-718).
[12] *See id.*, Exh. 26 (USAO-5662-663).

employees while they were still Morning Star employees.  That should fit into some kind of predicate act for industrial espionage."[13]  Vilfer encouraged Artley to seek as large a fine against SK Foods as possible—that is, unless the "fine money only goes to the Government . . . then we do not want big fines.  Something has to be left over for victims."[14]

Notably, although by August 2005 Morning Star had gathered enough evidence to file suit against Anthony Manuel and recover the funds he had embezzled and the trade secrets he had stolen, it elected not to file suit for three years.  It waited to file suit until May 14, 2008—one month after the government had executed its search warrants on SK Foods' offices and Defendant's home.[15]  In short, Morning Star waited to pursue Manuel until he had gathered enough evidence inside SK Foods to force the collapse of the company.  The fact the government permitted its investigation to be commandeered by Morning Star and its campaign to rid the marketplace of a competitor constitutes outrageous government conduct.

### B. The Government Will Present Evidence Concerning Morning Star at Trial.

The government recently disclosed its Rule 404(b) evidence, and Morning Star figures prominently on that list.  The government plans to introduce evidence that Defendant hired four Morning Star employees[16] and induced them to bring Morning Star's proprietary information to SK Foods.[17]  The government also plans to introduce evidence that Defendant attempted to

---

[13] *See id.*

[14] *See id.*

[15] *Morning Star Packing Company v. SK Foods L.P., et al.*, Case No. 151242 (Sup. Ct. Merced County) (lawsuit filed May 14, 2008).

[16] The four employees are identified by the government as Jeff Beasley, Anthony Manuel, Michael Poretti, and Beth Claire.

[17] *See* Malhotra Decl., Exh. 6 (Correspondence from Government dated January 17, 2012).

4

induce a former Morning Star driver[18] to provide to SK Foods Morning Star's proprietary information.[19] The government indicates this Morning Star evidence is admissible not just under Rule 404(b) but also as evidence "inextricably interwined with the charged conduct and admissible as intrinsic evidence."[20] Consequently, Morning Star will play an important role in the government's case-in-chief.

### III.   DEFENDANT'S SUBPOENAS WERE PROPERLY ISSUED

On January 25, 2012, Defendant submitted an *ex parte* application for issuance of Rule 17 subpoenas to Morning Star and Donald Vilfer. On February 1, 2012, the Court granted Defendant's application. Morning Star argues that decision was improper because it received insufficient notice under Rule 17(c)(3), because the subpoenas seek privileged information, and because the subpoenaed materials fail the *Nixon* standards. Morning Star's arguments lack merit.

- Morning Star was not entitled to notice and its suggestion otherwise rests upon a misreading of Rule 17(c)(3).

- Defendant's subpoenas do not impinge upon any privilege because Morning Star waived any privilege when it voluntarily shared vast quantities of privileged information with the government in an effort to target SK Foods.

- Defendant's subpoenas satisfy the *Nixon* standard. The Court so found when it issued the subpoenas in the first place and need not revisit that decision now.

**A.   Rule 17(c)(3) Poses No Bar to Defendant's Subpoenas.**

Morning Star suggests that Defendant's subpoena was improperly granted because a "subpoena to a third party victim. . . must be supported by 'exceptional circumstances' before the subpoena can be issued *ex parte* and served on Morning Star. Rule 17(c)(3)."[21] Morning Star

---

[18] The former driver is identified by the government as Eric Lynn Childs.
[19] *See* Malhotra Decl., Exh. 6 (Correspondence from Government dated January 17, 2012).
[20] *See id.*
[21] Morning Star's Motion to Quash Memorandum of Points and Authorities [Dkt. 463-1] at 10:5-8.

5

misreads Rule 17(c)(3). That Rule applies to a subpoena served on a third party, *not* on the alleged victim. The rationale is simple: a third party does not have the same incentive to protect the interests of a victim as the victim itself and, as a result, may disclose confidential or personal information that the victim would prefer remain undisclosed. *See* Fed. R. Crim. P. 17 Advisory Committee's Note, 2008 Amendments ("Third party subpoenas raise special concerns because a third party may not assert the victim's interests, and the victim may be unaware of the subpoena."). As a result, when a subpoena is directed to a third party, Rule 17(c)(3) requires the Court to notify an alleged victim whose sensitive information may be disclosed "so that the victim can move to quash or modify the subpoena or otherwise object." Special notification is unnecessary when the subpoena is directed to the "victim" because that party is perfectly capable of asserting its own rights, as Morning Star has done here.

In any event, even if Rule 17(c)(3) were to apply, the Rule would be satisfied because "exceptional circumstances" did exist before the Court issued the subpoena *ex parte*. The 2008 Advisory Committee that drafted Rule 17(c)(3) specifically noted that an "exceptional circumstance" exists "where the defense would be unfairly prejudiced by premature disclosure of a sensitive defense strategy." *Id.* In his subpoena application, Defendant noted that public disclosure of the application would unfairly prejudice him because it would provide the government with a preview of his case for the upcoming trial. For that reason, the Court determined that the subpoena should issue to Morning Star "without entry upon the records of the court or service upon opposing counsel or other government agencies." Order Permitting Issuance of Pre-Trial Return of Rule 17 Subpoena Duces Tecum, Dated Feb. 1, 2012.[22] Even under Morning Star's erroneous reading of Rule 17(c)(3), the *ex parte* grant of Defendant's subpoena was proper.

### B.     Morning Star Waived Any Privilege Over the Subpoenaed Materials.

At the same time Morning Star claims privilege over the subpoenaed materials, it asks

---

[22] Decl. of Don Vilfer in Support of Motion to Quash Subpoenas, Exh. 1 [Dkt. 463-4] at 9.

6

Defendant to obtain them from the government. The irony, of course, is rich. The fact that Morning Star regularly communicated with the government and shared the results of its own investigations with the government disposes of any privilege objection. The privilege was waived long ago when Morning Star decided to use the government to target SK Foods. As the facts reveal, in its zeal to pursue SK Foods, Morning Star paid little attention to the niceties of attorney client privilege or attorney work product—even when it was Morning Star's own privilege at stake.

- On no fewer than *seven occasions*, Morning Star investigator Donald Vilfer provided the FBI with documents marked "Privileged and Confidential Attorney Work Product."[23]

- Vilfer shared with FBI Agent Artley his communications with Morning Star outside counsel Dale Campbell, including communications concerning the civil litigation Morning Star was contemplating filing[24] and a checklist of the admissions Mr. Campbell thought useful for Morning Star's civil litigation.[25]

- Vilfer had face-to-face meetings with the FBI at least five times.[26] During these meetings he discussed Manuel's thefts from Morning Star[27] and Rahal and SK Foods' alleged bribe scheme with various food purchasing companies.[28]

- Morning Star's CEO Chris Rufer met with the FBI on at least two occasions, one of which included a tour of Morning Star's plant in Williams, California.[29] Rufer shared information about bribes Rahal paid to food purchasing managers as well as the details of Morning Star employees who had joined SK Foods.[30]

When confronted with similar circumstances, courts have not hesitated to find a waiver of

---

[23] Malhotra Decl., Exh. 14 (USAO-27850); Exh. 16 (USAO-30181); Exh. 18 (USAO-2128); Exh. 19 (USAO-1945); Exh. 20 (USAO-30198); Exh. 21 (USAO-30155); Exh. 7 (USAO-2334).
[24] *Id.*, Exh. 9 (USAO-2979).
[25] *Id.,* Exh. 26 (USAO-5662).
[26] *Id.*, Exh. 4 (USAO-1846); Exh. 5 (USAO-2131); Exh. 7 (USAO-2334); Exh. 8 (USAO-2809); Exh. 9 (USAO-2979).
[27] *Id.*, Exh. 4 (USAO-1846).
[28] *Id.*
[29] *Id.*, Exh. 5 (USAO-2131); Exh. 8 (USAO-2809).
[30] *Id.*

7

privilege. One such case is *United States v. Reyes*, 239 F.R.D. 591, 602 (N.D. Cal. 2006), a case Morning Star cites for the proposition that "attorney-client and work product privileges are another barrier to Rule 17(c) subpoenas." In fact, *Reyes* found a waiver of the privilege. Gregory Reyes, the former CEO of Brocade Communications, was being prosecuted for stock options backdating. Brocade had hired two law firms—Morrison & Forester (MoFo) and Wilson, Sonsini, Goodrich & Rosati (WSGR)—to investigate the company's accounting practices and both firms conducted numerous interviews with various employees at Brocade. Reyes subpoenaed MoFo and WSGR's files related to these investigations. Both firms objected on privilege grounds. The Court found the privilege waived because the firms had met with the government and shared information derived from their investigations. As the Court noted, "the law firms waived both the attorney-client privilege and the work-product privilege when they disclosed the substance of their investigative interviews, reports, and conclusions with the government." 239 F.R.D. at 602.

Morning Star, no doubt, will argue that any waiver is limited to the documents actually shared with the FBI. The *Reyes* court rejected such self-serving cherry-picking. "Parties cannot be permitted to pick and choose in their disclosure of protected communications, waiving the privilege for some and resurrecting the claim of confidentiality to obstruct others." *Id*. at 603 (citation and internal quotation marks omitted). In *Reyes*, neither law firm shared *any* documents with the government but a waiver was still found for all documents in the firms' possessions whose "subject matter" was disclosed to the government. *Id.* at 606 (citing *In re Sealed Case*, 877 F.2d 976, 981 (D.C. Cir. 1989)). Notably, the law firms in *Reyes* at least attempted to preserve their privilege by not showing the government documents marked "Attorney Work Product." Morning Star did not exercise such precautions and disclosed documents stamped "Attorney Work Product" ***seven times***. Additionally, Morning Star waived any privilege over materials relating to the subject matters it shared with the FBI, which based upon Morning Star's disclosures to the government cover the precise areas targeted by Defendant's subpoena:

8

- Morning Star's investigation of an alleged bribery scheme engaged in by SK Foods and Randy Rahal.[31]

- Tony Manuel's theft from Morning Star.[32]

- Morning Star's inability to secure contracts with various food purchasing companies.[33]

- Former Morning Star employees who allegedly provided SK Foods with proprietary information.[34]

### C. Defendant's Subpoenas Satisfy the *Nixon* Requirements.

Although this Court previously found the *Nixon* requirements satisfied when it granted Defendant's subpoena application, Defendant addresses why those requirements are satisfied for each Subpoena request below.

Request No. 1. COMMUNICATIONS YOU [or any of YOUR attorneys][35] have had with the DOJ or the FBI (including, but not limited to, FBI Agent Paul Artley) CONCERNING F. Scott Salyer, SK FOODS, any SK FOODS customer, Anthony Manuel, Jeff Beasley, Beth Claire, Michael Poretti, or Eric Lynn Child.

**Specificity**: The requests are sufficiently specific. They identify both the subject matter and recipient of communications at issue. As this Court has previously held, "The court does not expect the subpoenaing party to be able to describe with absolute preciseness that which it does

---

[31] Documents substantiating disclosure of this information to the government are contained at Malhotra Decl., Exh. 4 (USAO-1846); Exh. 5 (USAO-2131); Exh. 7 (USAO-2334); Exh. 14 (USAO-27850); Exh. 15 (USAO-1849).

[32] Documents substantiating disclosure of this information to the government are contained at Malhotra Decl., Exh. 4 (USAO-1846); Exh. 5 (USAO-2131); Exh. 15 (USAO-1849); Exh. 16 (USAO-30181); Exh. 21 (USAO-30155).

[33] Documents substantiating disclosure of this information to the government are contained at Malhotra Decl., Exh. 5 (USAO-2131); Exh. 11 (USAO-3466); Exh. 12 (USAO-3517); Exh. 18 (USAO-2128); Exh. 19 (USAO-1945); Exh. 20 (USAO-30198).

[34] Documents substantiating disclosure of this information to the government are contained at Malhotra Decl., Exh. 1 (USAO-1994); Exh. 2 (USAO-1991); Exh. 3 (USAO-1995); Exh. 5 (USAO-2131); Exh. 9 (USAO-2979); Exh. 17 (USAO-2003); Exh. 19 (USAO-1945); Exh. 13 (USAO-2037).

[35] Requests 1-4 to Morning Star and Vilfer are identical with the exception of the bracketed language, which appears in the Morning Star subpoena. Requests 5 to Morning Star and Vilfer are not identical and are presented separately below.

not have but is attempting to seek." *United States v. Lee*, Case No. 10-345 (E.D. Cal. Feb. 16, 2011) (GH) (slip opinion attached as Malhotra Decl., Exh. 10 at 3). Moreover, the *Reyes* court found similar requests to be sufficiently specific. *See Reyes*, 239 F.R.D. at 599 (request calling for "any reports, in whatever form, related to Brocade's option granting practices, which were shared with any agency of the government").

**Hearsay**: Morning Star's hearsay objections are overbroad to the point of being incomprehensible. Rather than referring to a specific document that it contends is hearsay, Morning Star simply asserts a blanket objection to *all* documents sought by this request. It is impossible to properly evaluate Morning Star's hearsay objection if the objection is not grounded in specific documents. In any event, much, if not all, of what Defendant seeks through this request is not hearsay. Communications with the government are not being offered for the truth of any specific matter being discussed but rather to document that certain communications were taking place between the government and Morning Star or Vilfer or that certain materials were being exchanged between the parties. *See* Fed. R. Evid. 801. This is relevant to establish Morning Star's efforts to target SK Foods and its attempts to use the government as part of its campaign.

**Rule 17(h)**: Morning Star argues that under Rule 17(h), Defendant cannot subpoena witness statements. Rule 17(h) only prohibits a party from subpoenaing witness statements from the government, not from third parties like Morning Star. *See United States v. Young*, Case No. 03-20400, 2004 U.S. Dist. Lexis 6301, at *9 (W.D. Tenn. Mar. 4, 2004) ("Young is not seeking documents in the possession of the government. Young is seeking documents in the possession of the NCAA and Philip Fulmer who are not parties to this litigation. Rules 17(h), Rule 26.2, and the Jencks Act only apply to statements in the government's possession."). Second, even if Rule 17(h) applied here, Defendant seeks far more than witness statements and such documents are subject to production.

Request No. 2. DOCUMENTS YOU [or any of YOUR attorneys] provided to the DOJ or the FBI (including, but not limited to, FBI Agent Paul Artley) CONCERNING F. Scott Salyer, SK FOODS, any SK FOODS customer, Anthony Manuel, Jeff Beasley, Beth Claire, Michael Poretti, or Eric Lynn Child.

**Specificity**: The requests are sufficiently specific. They identify both the subject matter and recipient of the communications at issue. As this Court has previously held, "The court does not expect the subpoenaing party to be able to describe with absolute preciseness that which it does not have but is attempting to seek." *United States v. Lee*, Case No. 10-345 (E.D. Cal. Feb. 16, 2011) (GH) (slip opinion attached as Malhotra Decl., Exh. 10 at 3). Moreover, the *Reyes* court found similar requests to be sufficiently specific. *See Reyes*, 239 F.R.D. at 599 (requests for "any reports, in whatever form, related to Brocade's option granting practices, which were shared with any agency of the government" were sufficiently specific).

**Impeachment:** The requested documents are not being sought for impeachment.

**Documents available from the Government:** The government has limited disclosure obligations under Rule 16, Jenks, and other applicable rules and laws. Thus, while Defendant has exercised diligence in attempting to seek documents from the government, it has no guarantee that all relevant documents have been produced. Consequently, disclosure from Morning Star and Vilfer are necessary.

<u>Request No. 3. DOCUMENTS in YOUR possession [or in the possession of YOUR attorneys] that CONCERN the employment of Anthony Manuel, Jeff Beasley, Beth Claire, or Michael Poretti at SK FOODS, including but not limited to DOCUMENTS CONCERNING Anthony Manuel, Jeff Beasley, Beth Claire, or Michael Poretti's transfer of YOUR COMPANY's proprietary information to SK FOODS or to Randall Rahal.</u>

**Specificity**: Morning Star misreads this request. It is not seeking, as Morning Star argues, "time records, compensation records, entire email accounts, and customer files worked on by the former employees." Rather, it requests documents concerning these individuals' employment at competitor *SK Foods*. These requests are sufficiently specific. As this Court has previously held, "The court does not expect the subpoenaing party to be able to describe with absolute preciseness that which it does not have but is attempting to seek." *United States v. Lee*, Case No. 10-345 (E.D. Cal. Feb. 16, 2011) (GH) (slip opinion attached as Malhotra Decl., Exh. 10 at 3). Moreover, the *Reyes* court found requests even less specific to be adequate. *See Reyes*, 239 F.R.D. at 599 ("reports, notes, memoranda, comments or conclusions made in connection with Brocade's internal investigation in 2004 and 2005 related to any option grant to any Brocade employees").

**Relevance**: The requested materials are relevant to the Government's anticipated Rule 404(b) evidence that SK Foods requested former Morning Star employees transfer proprietary information to SK Foods.

**Hearsay**: As with its other hearsay objection, Morning Star makes a blanket hearsay objection without grounding it in any specific document. Absent further information, it is impossible to properly evaluate Morning Star's hearsay objection. In any event, much, if not all, of what Defendant seeks through this request is not hearsay. First, the documents qualify as business records. Documents reflecting the departure of the above-named employees to SK Foods would be made during the regular course of Morning Star's business as part of its human resources function. Additionally, records generated from the Morning Star computer systems that track data or file downloads/transfers would also constitute business records. Morning Star generated such data compilations when Anthony Manuel left its employ and similar records may exist for the other named employees.[36] Second, the documents may include statements against interest and thus would be admissible. Third, some documents may not be admitted for the truth of the matter asserted but rather to document Morning Star's efforts to target SK Foods and its attempts to use the government as part of its campaign.

**Privilege**: As explained above, Morning Star waived its privilege when it shared its work product and privileged information with the government including information about these individual's employment at SK Foods and their alleged theft of Morning Star information. *See* documents cited in *supra* note 34.

**Impeachment:** The requested documents are not being sought for impeachment.

Request No. 4. DOCUMENTS in YOUR possession [or in the possession of YOUR attorneys] that CONCERN Eric Lynn Child's transfer of YOUR COMPANY's proprietary information to SK FOODS.

**Specificity**: The requests are sufficiently specific. They identify both the individual and the individual's alleged conduct quite specifically—Eric Child's transfer of Morning Star's

---

[36] Malhotra Decl., Exh. 15 at USAO-1851.

12

proprietary information to SK Foods. As this Court has previously held, "The court does not expect the subpoenaing party to be able to describe with absolute preciseness that which it does not have but is attempting to seek." *United States v. Lee*, Case No. 10-345 (E.D. Cal. Feb. 16, 2011) (GH) (slip opinion attached as Malhotra Decl., Exh. 10 at 3). Moreover, the *Reyes* court found requests even less specific to be adequate. *See Reyes*, 239 F.R.D. at 599 ("Reports, notes, memoranda, comments or conclusions made in connection with Brocade's internal investigation in 2004 and 2005 related to any option grant to any Brocade employees.").

**Relevance**: The requested materials are relevant to the Government's Rule 404(b) evidence concerning SK Foods' alleged request that Mr. Childs transfer Morning Star proprietary information to SK Foods.

**Privileged**: As explained above, any privilege has been waived because Morning Star has shared its work product and privileged information with the government including information about Eric Child's alleged transfer of proprietary information to SK Foods. *See* Malhotra Decl., Exh. 13.

**Impeachment:** The requested documents are not being sought for impeachment.

<u>Request No. 5 to Morning Star. DOCUMENTS in YOUR possession or in the possession of YOUR attorneys CONCERNING, evidencing, or recording any investigation YOU or YOUR attorney(s) conducted of either F. Scott Salyer or SK FOODS engaging in or allegedly engaging in any of the following: commercial bribery, price fixing, or mislabeling of PROCESSED TOMATO PRODUCTS.</u>

**Privileged**: As explained above, any privilege has been waived because Morning Star has shared with the government its own work product and privileged information concerning SK Foods.

**Hearsay**: Morning Star's hearsay objections are overbroad to the point of being incomprehensible. Rather than referring to a specific document that it contends is hearsay, it simply asserts a blanket objection to *all* documents sought by this request. It is impossible to properly evaluate Morning Star's hearsay objection if the objection is not grounded in specific documents. In any event, much, if not all, of what Defendant seeks through this request is not hearsay. Documents from Morning Star's files are admissible under various hearsay exceptions including statements against interest and records of regularly conducted activity. The requested

13

documents also do not constitute hearsay because they may be admitted for the truth of the matter asserted but rather to document Morning Star's efforts to target SK Foods and its attempts to use the government as part of its campaign.

<u>Request No. 5 to Vilfer. DOCUMENTS CONCERNING evidencing or recording any investigation YOU conducted of either F. Scott Salyer or SK FOODS from January 1, 2005 through the Present</u>

**Specificity**: The requests are sufficiently specific.  They identify the specific subject of Vilfer's investigation—Salyer and SK Foods—for a specific time frame—2005 to the present.  As this Court has previously held, "The court does not expect the subpoenaing party to be able to describe with absolute preciseness that which it does not have but is attempting to seek." *United States v. Lee*, Case No. 10-345 (E.D. Cal. Feb. 16, 2011) (GH) (slip opinion attached as Malhotra Decl., Exh. 10 at 3).  Moreover, the *Reyes* court found similar requests to be adequate. *See Reyes*, 239 F.R.D. at 599 ("reports, notes, memoranda, comments or conclusions made in connection with Brocade's internal investigation in 2004 and 2005 related to any option grant to any Brocade employees").

**Privileged**: As explained above, any privilege has been waived because Morning Star has shared with the government work product and privileged information about the results of Morning Star's investigation of SK Foods and Salyer.

**Hearsay**:  Morning Star's hearsay objections are overbroad to the point of being incomprehensible.  Rather than referring to a specific document that it contends is hearsay, it simply asserts a blanket objection to *all* documents sought by this request.  It is impossible to properly evaluate Morning Star's hearsay objection if the objection is not grounded in specific documents.  In any event, much, if not all, Defendant seeks through this request is not hearsay.  The requested materials fall under the business records exception.  Mr. Vilfer is a professional investigator and the requested documents were prepared during the course of his investigation of Manuel and SK Foods.  Mr. Vilfer has personal knowledge of information he collected during the course of his investigation.  Further, the requested documents qualify as present sense impressions to the extent they reflect Mr. Vilfer's perceptions of events or conditions he observed during the course of his investigation.  The documents are also admissible to the extent

they contain statements against interest.  Finally, the requested documents would also not be admitted for the truth of the matter asserted but rather to document Morning Star's efforts to target SK Foods and its attempts to use the government as part of its campaign.

### IV.     CONCLUSION

For the foregoing reasons, Defendant respectfully urges the Court to overrule Morning Star's Motion to Quash the subpoenas directed to it and Donald Vilfer, and to order Morning Star and Vilfer to produce documents and information responsive to the subpoenas within 10 court days after issuance of the written order denying this motion.

Dated:  March 1, 2012                                KEKER & VAN NEST LLP

                                             By:    s/Paven Malhotra
                                                    PAVEN MALHOTRA

                                                    Attorneys for Defendant
                                                    FREDERICK SCOTT SALYER