1

2

3

4

5

6

7

8                       UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,              No.  No.  2:10-cr-0061 LKK

12              Plaintiff,

13        v.                                 FINDINGS AND RECOMMENDATIONS
                                             RE EXONERATION OF CASH BOND
14   FREDERICK S. SALYER,

15              Defendant.

16

17        On April 9, 2013, defendant Frederick S. Salyer, surrendered as ordered to the Bureau of

18   Prisons to serve the sentence imposed in the above-entitled action.  Thereafter, he moved this

19   court for an order exonerating the bond posted to secure his release.  (Dkt. No. 598.)  Specifically,

20   defendant Salyer sought from the court an order:  (1) exonerating the personal Appearance Bond

21   which he executed in this action; (2) directing the return of the $300,000 in cash posted to

22   partially secure that Appearance Bond; (3) directing the return of his passport and Federal

23   Aviation Commercial Pilot Proficiency Card which were deposited with the Clerk of the Court;

24   /////

25   /////

26   /////

27   /////

28   /////

                                                1

1    and (4) directing the Clerk of the Court to reconvey the six properties (see Dkt. Nos. 221-224,

2    226-27) which were also posted as collateral for the Appearance Bond.  (Dkt. No. 598.)[1]

3            Shortly after defendant filed his motion to exonerate bond, counsel on behalf of the Bank

4    of Montreal ("Bank") filed a motion for turnover of property subject to judgment creditor's lien

5    seeking a court order requiring that the $300,000 in cash posted to secure the defendant's release

6    be delivered by the court to the Bank pursuant to its lien. (Dkt. No. 600.)  The Bank also filed an

7    opposition to defendant's motion to exonerate bond.  (Dkt. No. 602.)  On April 22, 2013, counsel

8    for the government filed opposition to the defendant's motion to exonerate bond as well as a

9    motion seeking a court order directing payment of the $300,000 cash securing the defendant's

10   Appearance Bond to the United States Attorney to be applied to payment of any restitution

11   imposed as part of the sentence in this case.  (Dkt. Nos. 607 & 608.)  On April 29, 2013, counsel

12   for Linda Salyer Lee as trustee for the Linda Salyer Lee Revocable Trust filed oppositions to both

13   the Bank 's motion and to the U.S. Attorney's motion and instead seeking return of the $300,000

14   cash on the grounds that those funds were posted by the Linda Salyer Lee Revocable Trust to

15   secure the defendant's release and should be returned to the trust.[2]

16           At the Status Conference held on June 5, 2013, with respect to all matters referred to the

17   undersigned, counsel for movant Bank and Assistant United States Attorney Matthew D. Segal on

18   behalf of the United States both stated on the record their non-opposition to defendant's motion to

19   exonerate bond in all respects except to the extent that the defendant's motion sought the return of

20   the $300,000 cash posted to secure the Appearance Bond.  (Dkt. No. 629 at 6-7, 13.)  In addition,

21

---

22   [1]  On April 1, 2013, the assigned District Judge referred this matter to the undersigned with
     respect to the issue of restitution only for the issuance of findings and recommendations.  (Dkt.
23   No. 589.)  On April 19, 2013, an order was issued clarifying the referral to include the
     defendant's motion to exonerate bond to the extent it raised issues related to the government's
24   request for a restitution order as part of the defendant's sentence.  (Dkt. No. 604.)  The
     defendant's motion to exonerate bond related to the referred issue of restitution only to the extent
25   that various parties are seeking the $300,000 cash posted with the court to secure the Appearance
     Bond.  The motion to exonerate otherwise fell within the scope of duties to be performed by
26   Magistrate Judges in this District under Local Rule 302(b)(7) and 28 U.S.C. 636(b)(1)(A) and
     was therefore addressed by way of order.
27

28   [2]  Linda Salyer Lee is defendant Salyer's sister.

                                                                    2

1  neither the government nor any other party appearing before the court stated any opposition to the

2  order requested by the defendant exonerating the personal Appearance Bond which he executed,

3  directing the return of his passport and Federal Aviation Commercial Pilot Proficiency Card

4  which were deposited with the Clerk of the Court and directing the Clerk of the Court to reconvey

5  the six properties which were posted by individuals as collateral for the Appearance Bond.

6  Accordingly, on August 6, 2013, the undersigned ordered that:  the appearance bond filed

7  September 3, 2010 (Dkt. No. 208) be exonerated; the Clerk of the Court return defendant Salyer's

8  passport and Federal Aviation Commercial Pilot Proficiency Card to the defendant or his

9  attorneys; and the Clerk of the Court reconvey the real property posted as collateral for the

10  Appearance Bond (see Dkt. Nos. 221-224, 226-227) to the property owners and transmit quit

11  claim deeds to the appropriate County Clerks for recording.

12      The court now turns to the dispute surrounding the disposition of the $300,000 in cash

13  posted with the court to partially secure the defendant's pretrial release.[3]

14  I.  Arguments of the Parties

15      A.    Bank of Montreal

16      The Bank asserts that on August 10, 2012, it obtained a judgment in excess of $128

17  million against defendant Frederick S. Salyer in the U.S. District Court for the Northern District

18  of California and that the judgment has not been satisfied.  The Bank filed a Notice of Lien

19  pursuant to Rule 69 of the Federal Rules of Civil procedure and Section 708.410 of California's

20  Enforcement of Judgments Law.  The Bank takes the position that since defendant Salyer is

21  entitled to recover the $300,000 in cash posted to partially secure his release on bond, the Clerk of

22  Court should be directed to remit those monies to the Bank to be applied to its judgment against

23  defendant Salyer.

24      In arguing that the $300,000 belongs to defendant Salyer and is therefore subject to its lien

25  the Bank first points to the assigned District Judge's release order of September 17, 2010 which

26

27  [3]  Separate findings and recommendations will issue addressing the actual restitution issue
    referred to the undersigned now that the extended briefing schedule requested by the parties with

28  respect to that issue has come to a close.

3

1   directed that the defendant "shall post cash bail in the amount of $300,000." (Dkt. No. 217.)  The

2   Bank also notes that in moving to exonerate bond the proposed order submitted by the

3   defendant's counsel called for the return of the cash "to the Defendant or his attorney."  From

4   this, the Bank concludes that there is no dispute that defendant Salyer deposited the $300,000

5   with the court and that he is entitled to it, thereby making the cash subject to the Bank's lien.

6          Subsequently, the Bank argued that any claim by the Linda S. Lee Revocable Trust to the

7   funds should be rejected because there was no written agreement between Ms. Lee and her

8   brother regarding those funds.  Alternatively, the Bank argues that because the Trust did not wire

9   the funds directly to the Court but instead wired them to defendant Salyer's counsel who

10  deposited them in a trust account and then delivered them to the court, those funds came under

11  defendant Salyer's sole dominion and control thus make his sister, at most, an unsecured creditor

12  with a claim to the $300,000 junior to that of the Bank's.  Finally, the Bank argues that any

13  restitution claims are also subordinate to its lien.  However, the Bank suggests that the court defer

14  distribution of the funds to allow the Bank and Government counsel an opportunity to explore an

15  amicable resolution of the matter.

16          B.      The United States

17          The United States poses a similar opposition to defendant Salyer's motion to exonerate

18  bond to the extent that it also seeks the $300,000 posted to secure the defendant's release.  Like

19  the Bank, the United States takes the position that the $300,000 was defendant Salyer's when it

20  was deposited with the Clerk of the Court to partially secure his release on bond.  The United

21  States carefully parses the language of the District Judge's release order and notes that it

22  specifically directed "You [referring to defendant Salyer] shall post cash bail in the amount of

23  $300,000.00" and "cause . . .  friends, family, or neighbors" to post real property.  (citing Dkt.

24  No. 217 at 3-4.)  The United States also observes that the defendant's motion to exonerate bond

25  seeks the return of the cash to "the Defendant or his attorney."  (citing Dkt. No. 598-1 at 2.)

26  /////

27  /////

28  /////

4

1    Accordingly, the United States seeks the return of the cash to the United States Attorney to go

2    toward the still yet to be determined restitution amount pursuant to 28 U.S.C. § 2044.[4]

3          C.      Defendant Salyer

4         Defendant Salyer argues that while the posting of bail to secure his release had a lengthy

5    and somewhat tangled history, it was always clear that the cash posted to partially secure his was

6    not his own and was eventually provided by his sister, Linda Salyer Lee. Accordingly,

7    according to the defendant, the $300,000 in bail funds must be returned to its rightful owner, the

8    Linda Salyer Lee Revocable Trust.

9         Defendant Salyer recounts the following history of the proceedings related to the posting

10    of bond to secure his release. On March 25, 2010, the court ordered the defendant released on a

11    $300,000 cash bond along with a $6 million property bond secured by his and his daughters'

12    interest in a family home in Pebble Beach or, alternatively, property of friends and neighbors.

13    (Dkt. No. 48.) On March 29, 2010 the $300,000 cash bond was posted with the Clerk of the

14    Court by defendant's counsel with funds provided by his daughters' trusts for the specific purpose

15    of bail. Thereafter, however, defendant Salyer was unable to post the Pebble Beach home as

16    collateral because it was encumbered by the Bankruptcy Trustee and/or his ex-wife. Accordingly,

17    on May 26, 2010 the defense sought and obtained an order from the assigned District Judge

18    directing the Clerk of the Court to return the posted bail funds to the trustee of the defendant's

19    daughters' trusts pending further bail proceedings. (Dkt. No. 107.) Later, on September 3, 2010,

20    the court ordered defendant Salyer released upon the posting of a $300,000 cash bail and at least

21    $5.7 million worth of property by the defendant's friends, family or neighbors. (Dkt. No. 206.)

22    On that same day, counsel for defendant Salyer again delivered a cashier's check in the amount of

23    $300,000 to the Clerk of the Court to partially secure the defendant's release, but this time the

24    bail funds were provided by defendant's sister, Linda Salyer Lee.

25    /////

26

27

28

---

[4] The United States also argues that under the circumstances of this case it would not be appropriate to rely solely on a claim by the defendant that the $300,000 belongs to a third party. While the court has considered defendant Salyer's declaration it does not rely solely upon that declaration. See fn. 5, below.

1    Counsel for defendant Salyer argues that it was clear throughout the seven months of bail

2    proceedings in this case that the defendant himself did not have the funds necessary to secure his

3    release.  Indeed, defense counsel notes, the government argued exactly that.  Defense counsel also

4    point out that when the posting of property to secure the defendant's release in March of 2010 hit

5    a roadblock, the court ordered the return of the $300,000 that had been posted with the Clerk by

6    defense counsel to the trustee of the defendant's daughters trusts from where the funds had come.

7    Counsel for defendant Salyer rely on their own declarations and that of defendant's sister[5] along

8    with supporting bank records to establish the following chronology with the respect to the posting

9    of the $300,000 now at issue with the Court.  On September 2, 2010, Linda S. Lee as trustee of

10   her own revocable trust wired $300,000 to the Segal & Kirby (the law firm representing

11   defendant) trust account to be used to secure her brother's release on bond and with the explicit

12   understanding that the funds would be returned to her once that bond was exonerated.   The

13   following day defendant Salyer's attorneys had a cashier's check in the amount of $300,000

14   issued using Ms. Lee's funds and deposited that cashier's check with the Clerk of the Court to

15   partially secure their client's pretrial release.  Defense counsel did so with the understanding and

16   expectation that those funds would, of course, be returned to Ms. Lee upon the exoneration of the

17   bond.  Accordingly, counsel on behalf of defendant Salyer argue that neither the Bank lien nor the

18   Government's efforts to secure funds to satisfy his potential restitution obligation apply to the

19   $300,000 posted with the Court because those funds do not belong to him but rather belong to

20   Ms. Lee, who cannot be held responsible for either judgments entered against or restitution

21   ordered to be paid by her brother.[6]

22   /////

23

24   [5]  Defendant Salyer later submitted his own affidavit addressing this subject.  That affidavit is
     consistent with the position taken by his sister, the Trust's lawyers and his own counsel.  Given
25   the declarations of counsel with the bank records attached thereto, there can be no legitimate
     dispute as to where the bail funds came from and how they were deposited with the court.

26
27   [6]  Defendant Salyer's counsel accepts a degree of responsibility for any confusion caused in this
     regard based upon the initial proposed order which inartfully failed to call for the return of the
     cash bail directly to the Linda S. Lee Revocable Trust, even though it was always counsel's
28   intention to return the funds to that Trust.

6

1    In support of this contention, defendant's counsel cite this court to published decisions

2    recognizing the common sense notion that when a family member or friend posts a cash bail on

3    behalf of a criminal defendant, even when posted with the court through the defendant's counsel,

4    those funds cannot be presumed to become the defendant's.

5         D.     Linda Salyer Lee

6    Counsel for Linda S. Lee as trustee for her Revocable Trust argues that this is a simple

7    matter since it cannot be disputed that the $300,000 belongs to the Trust and must be returned to

8    the Trust.[7]  Counsel for the Trust highlights the fact that when the first $300,000 cash bond posted

9    on behalf of the defendant was returned pending further bail proceedings, the court ordered it

10   returned to the trustee of the defendant's daughters' trusts from which the funds had originated.

11   Counsel for the Trust argues that it is obvious that the same action should be taken by the court

12   now – order the cash bail returned to the trust from which it came.  Counsel for the Trust argues

13   that the decision in United States v. Rubenstein, 971 F.2d 288, 295 (9th Cir. 1992) dictates such a

14   result.  The Trust also contends that numerous courts have recognized that bail money provided

15   by a third party cannot be acquired by the Government to satisfy restitution pursuant to 28 U.S.C.

16   §2044.  Finally, counsel for the Trust argues that under the California Rules of Professional

17   Conduct it is clear that the $300,000 from the Trust that were deposited into the Segal & Kirby

18   Trust Account remained the property of the Trust and never became the property of defendant

19   Salyer.  The undersigned finds all of the Trust's arguments to be persuasive.

20   II. Analysis

21   Rule 46(g) of the Federal Rules of Criminal Procedure provides:

22        The court must exonerate the surety and release any bail when a
     bond condition has been satisfied or when the court has set aside or

23        remitted the forfeiture. The court must exonerate a surety who
     deposits cash in the amount of the bond or timely surrenders the

24        defendant into custody.

25

26   [7]  It appears likely that Linda S. Lee as trustee for the Linda S. Lee Revocable Trust retained
     separate counsel to appear in this matter and make this argument in response to the Bank's

27   technical arguments that defendant Salyer lacked standing to raise arguments on behalf of his
     sister's Trust, that defendant Salyer's counsel did not represent the Trust and that the Trust could

28   appear only through counsel and should be required to make its own motion.  (See Dkt. No. 609.)

7

1    In releasing bail funds pursuant to this rule, it is the court's obligation "to determine to whom

2    they should be released." Rubenstein, 971 F.2d at 293. See also United States v. Arnaiz, 842

3    F.2d 217, 222 (9th Cir. 1988) ("[T]he court's statutory duty of 'releas[ing] any bail' [cannot] be

4    fulfilled without a determination of which party [is] entitled to receive it."); United States v. Ener,

5    278 F. Supp.2d 441, 447 (E.D. Pa. 2003). In making this determination, the court "should not

6    presume that money posted as bail is the defendant's." Rubenstein, 971 F.2d at 295-96 (and cases

7    cited therein).

8         Here, consideration of the circumstances presented in Rubenstein is particularly helpful.

9    In that case, bail was posted with the District Court by the defendant's attorney in the form of two

10   cashier's checks drawn on the law firm's client trust account. 971 F.2d at 290-91. The receipts

11   issued by the Clerk of Court reflected the same and the appearance bonds signed by the defendant

12   did not indicate any surety other than the defendant himself. Id. at 291 & n.1. However, it was

13   undisputed that a third-party (a Dr. Sherman) was the actual source of the defendant's bail money.

14   Id. at 296. The question presented was whether defendant Rubenstein acquired ownership of the

15   funds as a result of their posting as bail. Id. In vacating the District Court's order adopting a

16   state court determination that the bail funds had become defendant Rubenstein's, the Ninth

17   Circuit relied upon the fact that Dr. Sherman had wired the funds to Rubenstein's lawyer's trust

18   account and had instructed the attorney to use the money for Rubenstein's bail. Id. The court

19   also found that it was irrelevant to the question of who the funds belonged to that Dr. Sherman

20   was not identified as the source of the bail funds when posted in District Court. Id.

21        The reasoning of the Ninth Circuit in Rubenstein is consistent with that of the other courts

22   which have on rare occasion been required to address such issues regarding to whom to return

23   funds upon the exoneration of a defendant's bail. See United States v. Parr, 594 F.2d 440, 443

24   (5th Cir. 1979) ("Clearly it was the intention of all concerned that upon disposition of the case

25   Manges [the source of the bail funds ] was to receive his deposit or so much of it that was subject

26   to remission. The title to the funds deposited by Manges did not pass to [defendant] Parr.");

27   United States v. Bursey, 515 F.2d 1228, 1237 (5th Cir. 1975) ("[T]he district court would have

28   been obliged to return" to the defendant's parents the cash bail posted "had it been demonstrated

1  that it was their property . . . ."); Jacobson v. Hahn, 88 F.2d 433, 434 (2d Cir. 1937); United

2  States v. Ener, 278 F. Supp.2d 441, (E.D. Pa. 2003) (ordering the Clerk of the Court to return a

3  cash bond posted to secure the defendant's release to the wife of a co-defendant because the bail

4  funds originated from her bank account and at no time did she intend to give them to the

5  defendant in allowing them to be used for purposes of bail); United States v. Markiewicz, No.

6  Crim. A. 96 CR-122 (RSP), 1998 WL 37592, at *1 (N.D.N.Y. Jan. 28, 1998) (concluding that

7  where the source gave bail funds to the defendant's attorney for posting, the attorney acted as the

8  source's agent in posting the funds to secure the defendant's release and the source was entitled to

9  the return of the bail funds upon exoneration).

10       Here it cannot be disputed that the Linda S. Lee Revocable Trust was the source of the

11  $300,000 used to partially secure defendant Salyer's release.  The uncontroverted evidence before

12  the court establishes that those funds were deposited into the trust account of defendant's

13  attorneys solely for the purpose of securing his pretrial release on bond, for no other purpose and

14  with the understanding that they would be returned to his sister's trust upon the exoneration of the

15  bond.  Because the $300,000 belongs to the Linda S. Lee Revocable Trust and not to defendant

16  Salyer, it is simply not subject to the Bank's lien.[8]  For the same reason, the $300,000 cannot be

17  used to satisfy any potential restitution obligation imposed on defendant Salyer under 28 U.S.C. §

18  2044.  See United States v. Higgins, 987 F.2d 543, 546 n.3 (8th Cir. 1993) ("Section 2044

19  codifies the discretion courts have long exercised, to pay, on a proper motion, bond or bail money

20  to the parties with a legally established superior claim to it.") (and cases cited therein); United

---

[8]   As noted at the June 5, 2013, status hearing, in the undersigned's experience it is normally the case that a defendant indicted in federal court does not have the ability to post property or cash to secure his or her own release.  Rather, most defendants are dependent on the ability and willingness of family and friends to post bail on their behalf.  Indeed, it is the very strength of those close ties that the court often relies upon in ordering a defendant released on bond under the presumption that a defendant would not likely jeopardize the property and funds of their family and friends by failing to appear in court despite the severity of the punishment they may face if convicted.  The suggestion that the District Judge in this case specifically ordered defendant Salyer to personally post his own funds to secure his release is, frankly, ridiculous and completely unsupported.  Moreover, a failure to apply the legal principles discussed in Rubenstein and similar decisions in addressing motions to exonerate bond would potentially jeopardize the bail system long relied upon by the federal courts in ensuring the timely release of those defendants from custody where adequate conditions of release can be fashioned.

9

1   States v. Sparger, 79 F. Supp. 2d 714, 718-20 (W.D. Tex. 1999) (Holding "that Section 2044 does

2   not apply to bail money belonging to third parties."); United States v. Equere, 916 F. Supp. 450,

3   452 (E.D. Pa.1996) (Title 28 section 2044 "does not extend such authority to a situation like the

4   present case, in which a third party, not the defendant, has provided his own money to post

5   defendant's bail."); United States v. Gonzalez, No. 11-CR-80211-MARRA, 2013 WL 654918, at

6   *2-5 (S.D. Fla. Feb 21, 2013) (denying the government's motion to apply bond deposit to

7   restitution); United States v. Dipofi, Nos. 04-80707-01, 07-50695, 2008 WL 2622954, at *1-2

8   (E.D. Mich. July 3, 2008) (same).

9   III.   Conclusion[9]

10           For all of the reasons set forth above, IT IS HEREBY RECOMMENDED that:

11           1. Defendant's Motion to Exonerate Bond (Doc. No. 598) with respect to the $300,000

12   cash bail be granted;

13           2.  The Bank of Montreal's Motion for Turnover of Property Subject to Judgment

14   Creditor's Lien (Doc. No. 600) be denied; and

15           3.  The Clerk of the Court be directed to return the sum of $300,000, deposited as bail to

16   partially secure the defendant's release, to the Linda Salyer Lee Revocable Trust.

17           These findings and recommendations are submitted to the United States District Judge

18   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

19   after being served with these findings and recommendations, any party may file written

20   objections with the court and serve a copy on all parties.  Such a document should be captioned

21   "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

22   shall be served and filed within fourteen days after service of the objections.  The parties are

23   /////

24   /////

25   /////

26

27   _____

     [9]  The undersigned apologizes to all of the parties for the delay in the issuance of these findings
     and recommendations, which were drafted over two months ago.  The undersigned mistakenly
28   believed they had been filed on the docket at that time and just learned that was not the case.

1    advised that failure to file objections within the specified time may waive the right to appeal the

2    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

3    Dated:  February 3, 2014

4

5                                            _____
                                             DALE A. DROZD
6                                            UNITED STATES MAGISTRATE JUDGE

7

8
     DAD1.crim
9    salyer10cr0061.exoneratebond.wpd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                                11