1

WANGER JONES HELSLEY PC

2

265 E. River Park Circle, Suite 310
Fresno, California  93720

3

Telephone:     (559) 233-4800
Facsimile:     (559) 233-9330

4

Oliver W. Wanger, #40331

5

owanger@wjhattorneys.com

6

7

Attorneys for: Linda Salyer Lee, Trustee of the
               Linda Salyer Lee Revocable Trust

8

9

UNITED STATES DISTRICT COURT

10

FOR THE EASTERN DISTRICT OF CALIFORNIA

11

UNITED STATES OF AMERICA

Case No. 2:10-cr-0061 LKK

12

            Plaintiff,

APPLICATION OF LINDA S.
LEE AS TRUSTEE OF THE

13

     v.

LINDA SALYER LEE REVOCABLE
TRUST FOR IMMEDIATE RETURN

14

FREDERICK S. SALYER

OF CASH BAIL TO THE LINDA
SALYER LEE REVOCABLE TRUST

15

            Defendant.

(FED.R.CRIM.PROC. 46(g))

16

17

       TO THE HONORABLE LAWRENCE K. KARLTON, SENIOR UNITED

18

STATES DISTRICT JUDGE AND ALL PARTIES AND THEIR ATTORNEYS:

19

       Linda Salyer Lee, as Trustee of the Linda Salyer Lee

20

Revocable Trust respectfully requests that the motion of

21

Frederick S. Salyer to exonerate cash bond (Doc. 598) with

22

respect to the $300,000.00 cash bail previously deposited with

23

the registry of the Court to partially secure the Defendant's

24

release, be granted and those trust funds returned by the Clerk

25

of the Court to Linda Salyer Lee as Trustee for the Linda

26

Salyer Lee Revocable Trust in accordance with the now final and

27

unobjected to Findings and Recommendations re Exoneration of

28

{7441/002/00461088.DOC}

1

Cash Bond filed February 3, 2014 by United States Magistrate Judge Dale A. Drozd.  (Doc. 655.)  A true copy is attached and incorporated by this reference as Exhibit A.

More than 14 days have passed since filing on February 3, 2014 of the Findings & Recommendations.  No objection by any party has been served and filed within 14 days after service of the Findings & Recommendations.  More than 30 days since the entry of the Findings & Recommendations have passed and any right to appeal the Magistrate Judge's findings of fact has been waived. *Martinez v. Ylst*, 951 F.2d 1153, 1156-1157 (9th Cir. 1991) (although failure to object to Findings and Recommendations is not alone a waiver of the issue, such failure is a factor to be weighed in considering the propriety of finding waiver, and "[f]ailure to raise or brief an issue in a timely fashion may constitute waiver of the issue on appeal"); *Miranda v. Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) cert. denied, 133 S. Ct. 256, 184 L. Ed. 2d 137 (U.S. 2012) ("failure to object to a magistrate judge's factual findings waives the right to challenge those findings"); *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998) ("Failure to object to a magistrate judge's recommendation waives all objections to the magistrate judge's findings of fact.").

The Magistrate Judge's findings of fact must now be accepted as true and an order issued accordingly. *United States v. Bergera*, 512 F.2d 391, 394 (9th Cir. 1975) ("Since the magistrate sees and hears the evidence, the district court is entitled to rely upon his recommendations when making its

{7441/002/00461088.DOC}

decision on the motion. If, however, the district court chooses to reject the recommendation of the magistrate, it must itself hear the testimony and see the evidence before deciding the motion."); *Green v. Baca*, 219 F.R.D. 485, 489 (C.D. Cal. 2003) ("The clearly erroneous standard, which applies to a magistrate judge's findings of fact, is 'significantly deferential, requiring "a definite and firm conviction that a mistake has been committed."')

## PROCEDURAL HISTORY

On April 9, 2013, Defendant Frederick S. Salyer surrendered to the Bureau of Prisons as ordered by the presiding Judge. Because the Linda Salyer Lee Revocable Trust alone is entitled to return of the bail money, there is no reason to prolong this proceeding as to return of the Trust's $300,000.00, as any other ongoing restitution proceedings in this matter are completely unrelated and by law cannot involve Ms. Lee's trust funds. (Fed. R. Crim. Proc., Rule 46(g); *United States v. Rubenstein*, 971 F.2d 288, 295 (9th Cir. 1992) Here, as in *Rubenstein*, Defendant, after surrendering, moved for an order exonerating the bond posted to secure his release. (Doc. 598) Defendant Salyer sought from the Court an order:

1. Exonerating the personal Appearance Bond which he executed in this action;

2. Directing the return of the $300,000.00 in cash posted by the Linda Salyer Lee Revocable Trust to partially secure that Appearance Bond;

{7441/002/00461088.DOC}

3

1    3.    Directing the return of his passport and Federal

2   Aviation Commercial Pilot Proficiency Card which were deposited

3   with the Clerk of the Court; and

4    4.    Directing the Clerk of the Court to reconvey six

5   properties (see Doc. 221-224, 226-227) which were also posted

6   as collateral for the Appearance Bond.  (Doc. 598)

7    The Bank of Montreal ("Bank") filed a motion for

8   turnover of property subject to judgment creditor's lien

9   seeking a court order requiring that the $300,000.00 in cash

10  posted to secure the Defendant's release be delivered by the

11  Court to the Bank pursuant to its lien.  (Doc. 600)  The Bank

12  also filed an opposition to Defendant's motion to exonerate

13  bond.  (Doc. 602)  On April 22, 2013, the Government's counsel

14  filed opposition to the Defendant's motion to exonerate bond as

15  well as a motion seeking a court order directing payment of the

16  $300,000.00 cash securing the Defendant's Appearance Bond to

17  the United States Attorney to be applied to payment of any

18  restitution imposed as part of the sentence in this case.

19  (Doc. 607 & 608).

20   On April 29, 2013, counsel for Linda Salyer Lee, as

21  Trustee for the Linda Salyer Lee Revocable Trust, filed

22  oppositions to both the Bank's and the U.S. Attorney's motions

23  seeking return of the $300,000.00 cash on the grounds that

24  those funds were posted by the Linda Salyer Lee Revocable Trust

25  to secure the Defendant's release and should be returned to the

26  rightful owner, the Trust.  The Magistrate Judge has found that

27  Linda Salyer Lee is Defendant Salyer's sister.  (Doc. 655 at 2,

28
{7441/002/00461088.DOC}

fn.2)   It is also undisputed that Linda Salyer Lee is trustee of the Linda Salyer Lee Revocable Trust.  (Doc. 608-1)

At a Status Conference held June 5, 2013, with respect to all matters referred to Magistrate Judge Drozd, counsel for movant Bank and AUSA Matthew D. Segal, on behalf of the United States, both stated on the record their non-opposition to Defendant's Motion to Exonerate Bond in all respects, except to the extent that Defendant's Motion sought the return of the $300,000.00 cash posted to secure the Appearance Bond.  (Doc. 629, at 6-7, 13)  Neither the government nor any other party appearing before the Court opposed the order requested by the Defendant exonerating the personal Appearance Bond which he executed; directing the return of his passport and Federal Aviation Commercial Pilot Proficiency Card which were deposited with the Clerk of the Court; and directing the Clerk of the Court to reconvey the six real properties which were posted by individuals as collateral for the Appearance Bond.

An August 6, 2013 Order exonerated the Appearance Bond filed September 3, 2010 (Doc. 208); the Clerk of the Court was ordered to return Defendant Salyer's passport and Federal Aviation Commercial Pilot Proficiency Card to the Defendant or his attorneys and the Clerk of the Court was ordered to reconvey the real property posted as collateral for the Appearance Bond (see Docs. 221-224, 226-227) to the property owners and transmit quitclaim deeds to the appropriate County Clerks for recording.  All this has been done.

{7441/002/00461088.DOC}

By Findings & Recommendations filed February 3, 2014, the Magistrate Judge decided the remaining issue of the disposition of the $300,000.00 in cash posted with the Court to partially secure the Defendant's pre-trial release, as follows:

1.   Defendant's Motion to Exonerate Bond (Doc. 598) with respect to the $300,000.00 cash bail be GRANTED;

2.   The Bank of Montreal's Motion for Turnover of Property Subject to Judgment Creditor's Lien (Doc. 600) be DENIED; and

3.   The Clerk of the Court be directed to return the sum of $300,000.00 deposited as bail to partially secure the Defendant's release, to the Linda Salyer Lee Revocable Trust. (See Doc. 655 at p. 10)

THE PARTIES' POSITIONS

A.   <u>The Bank</u>

The Bank asserts a judgment lien based on an August 10, 2012 judgment in excess of $128,000,000.00 against Frederick S. Salyer in the U.S. District Court for the Northern District of California and further asserts that this judgment has not been satisfied.   The Bank filed a Notice of Lien pursuant to Rule 69 of the Fed. R. Civ. Proc. and § 708.410 of California's Enforcement of Judgments Law.   None of this matters as the Bank has no interest nor rightful claim whatsoever in the bail funds belonging to Ms. Lee's Trust.

<u>Factual Findings</u>

The District Judge's release order of September 17, 2010, directed that the Defendant "shall post cash bail in the

{7441/002/00461088.DOC}

amount of $300,000.00." (Doc. 217) In a motion filed by the Defendant's counsel, Defendant's counsel "called for the return of cash 'to the Defendant or his attorney.'" There is no written agreement between Ms. Lee and her brother regarding the funds posted by Ms. Lee's Revocable Trust. "On September 2, 2013, Linda S. Lee, as Trustee of her own Revocable Trust, wired $300,000.00 to the Segal & Kirby (the law firm representing Defendant) trust account to be used to secure her brother's release on bond and with the explicit understanding that the funds would be returned to her once that bond was exonerated." (Doc. 655 at 6:9-12) "The following day, Defendant Salyer's attorneys had a cashier's check in the amount of $300,000.00 issued using Ms. Lee's funds and deposited that cashier's check with the Clerk of the Court to partially secure their client's pretrial release. Defense counsel did so with the understanding and expectation that those funds would of course be returned to her once that bond was exonerated." (*Id.* at 6:12-17)

    B.   <u>United States</u>

        <u>Factual Findings</u>

    The United States argued the District Judge's initial release order specifically directed: "You [referring to Defendant Salyer] shall post cash bail in the amount of $300,000.00" and "cause . . . friends, family, or neighbors" to post real property. (Citing, Doc. 217 at 3-4) The United States also referenced the Defendant's Motion to Exonerate Bond seeking the return of cash to "the Defendant or his attorney."

1   (Citing, Doc. 598-1 at 2.)   The United States seeks return of

2   the cash to the United States Attorney to go toward the yet to

3   be determined restitution amount pursuant to 28 U.S.C. § 2044.

4   This contention is put to rest by *Rubenstein*, 971 F.2d at 290-

5   91, *United States v. Higgens*, 987 F.2d 543, 546 n.3 (8th Cir.

6   1998), and the Findings and Recommendations: "For the same

7   reason (". . . the $300,000.00 belongs to the Linda S. Lee

8   Revocable Trust and not to Defendant Salyer, . . .") the

9   $300,000.00 cannot be used to satisfy any potential restitution

10  obligation imposed on Defendant Salyer under 28 U.S.C. § 2044.

11  (Doc. 655 at 9:16-18)

12       C.   **Defendant Frederick S. Salyer**

13            **Factual Findings**

14       Defendant submitted a Declaration under penalty of

15  perjury that the cash posted to partially secure his release

16  was not his own and was eventually provided by his sister,

17  Linda Salyer Lee.   (Doc. 655 at 6:21-25, n.5)   In his

18  Declaration, Defendant specifically seeks return of the

19  $300,000.00 in bail funds to its rightful owner, the Linda

20  Salyer Lee Revocable Trust.   (Doc. 617)

21       On March 25, 2010, the Court ordered Defendant

22  released on a $300,000.00 cash bond along with a $6,000,000.00

23  property bond secured by his and his daughter's interest in a

24  family home in Pebble Beach or, alternatively, property of

25  friends and neighbors.   (Doc. 48)   On March 29, 2010, the

26  $300,000.00 cash bond was posted with the Clerk of the Court by

27  Defendant's counsel using funds provided by his daughter's

28

{7441/002/00461088.DOC}

APPLICATION OF LINDA S. LEE AS TRUSTEE OF THE LINDA SALYER LEE REVOCABLE TRUST FOR IMMEDIATE RETURN
OF CASH BAIL TO THE LINDA SALYER LEE REVOCABLE TRUST

trust for the specific purpose of bail.  Because Defendant Salyer was unable to post the Pebble Beach home as collateral, as it was encumbered by the Bankruptcy Trustee and/or his ex-wife, on May 26, 2010, the defense sought and obtained an order from the assigned District Judge directing the Clerk of the Court to return the posted bail funds to the Trustee of the Defendant's daughters' Trusts pending further bail proceedings. (Doc. 107).  These $300,000.00 in bail funds were returned to the daughters' Trusts.

On September 3, 2010, the Court ordered Defendant Salyer released upon the posting of a $300,000.00 cash bail and at least $5,700,000.00 worth of property by the Defendant's friends, family or neighbors.  (Doc. 206)  On the same day, September 3, 2010, Malcolm Segal, counsel for Defendant, again delivered a cashier's check in the amount of $300,000.00 to the Clerk of the Court to partially secure the Defendant's release. This time the bail funds were provided by the Defendant's sister, Linda Salyer Lee, from her Revocable Trust.  Both Defendant's counsel, Mr. Malcolm Segal, and the government's attorney, contrary to the Government's current contention, argued throughout the seven months of bail proceedings that the Defendant himself did not have cash funds necessary to secure his release.  (Doc. 655 at 5:19-24)

<u>Findings Regarding Posting Bond</u>

The Magistrate Judge found true the Declaration of counsel for Defendant, Mr. Malcolm Segal (Doc. 608-6), along with the Declaration under penalty of perjury of Linda Salyer

{7441/002/00461088.DOC}

Lee (Doc. 608-1), as well as supporting bank records, which established the following chronology, with respect to the posting of the $300,000.00 at issue in this Motion.

1.   On September 2, 2010, Linda S. Lee, as Trustee of her own Revocable Trust, wired $300,000.00 to the Segal & Kirby (the law firm then representing Defendant) trust account to be used to secure her brother's release on bond and with the explicit understanding that the funds would be returned to her once that bond was exonerated.  (Doc. 655 at 6:9-12)

2.   The following day, September 3, 2010, Defendant Salyer's attorneys (Malcolm Segal) had a cashier's check in the amount of $300,000.00 issued, using Ms. Lee's funds and deposited the cashier's check with the Clerk of the Court to partially secure Defendant, their client's, pre-trial release. (*Id.* at 6:12-15.)

3.   Defense counsel, Mr. Malcolm Segal, did so with the understanding and expectation that those funds would "of course, be returned to Ms. Lee upon the exoneration of the bond." (*Id.* at p. 6:15-17.)  Defense counsel, Defendant, and Ms. Lee, assert that undisputed evidence establishes that the funds never belonged and do not now belong to Defendant Salyer, but rather, belong to Ms. Lee, who cannot be held responsible for either judgment against or restitution ordered to be paid, by her brother.

4.   The Magistrate Judge specifically found:  "Given the Declarations of counsel with the Bank records attached thereto, there can be no legitimate dispute as to where the

{7441/002/00461088.DOC}

bail funds came from and how they were deposited with the Court." (*Id.* at 6:23-25, fn.5)

5. The Magistrate Judge further found that "Defendant Salyer's counsel accepts a degree of responsibility for any confusion caused in this regard based upon the initial Proposed Order which inartfully failed to call for the return of the cash bail directly to the Linda S. Lee Revocable Trust, even though it was always counsel's intention 'to return the funds to that trust.'" (*Id.* at 6:26-29, fn.6)

6. The Magistrate Judge also found that "defendant's counsel cite this Court to published decisions recognizing the common sense notion that when a family member or friend posts a cash bail on behalf of a criminal defendant, even when posted with the Court through the Defendant's counsel, those funds cannot be presumed to become the defendant's." (*Id.* at 7:1-4)

D.   Linda Salyer Lee

Counsel for Linda S. Lee, Mr. Foley, proved there was no dispute the $300,000.00 cash bond posted on behalf of Defendant belonged to the Trust. As the District Judge has previously ordered, in returning to the Trustee of the Defendant's daughters' Trusts, the initial $300,000.00 bail, from which those funds had originated and were returned to the daughters' Trusts. The same action should be taken by the District Judge now, ordering the cash bail returned to Defendant's sister's Trust, the rightful owner.

{7441/002/00461088.DOC}

The Magistrate Judge found especially persuasive all the arguments presented by the Trustee: (1) *Rubenstein*, 971 F.2d at 295 requires return of the bail money to the rightful owner; (2) numerous courts have recognized that bail money provided by a third party cannot be acquired by the Government to satisfy restitution pursuant to 28 U.S.C. § 2044; and (3) under the California Rules of Professional Conduct, the $300,000.00 from the Trust deposited into the Segal & Kirby Trust Account, remained the property of the Trust and never became the property of Defendant Salyer. (Doc. 655 at 7:19)

### LAW AND ARGUMENT

A.   Preliminary Statement

This is a classic case of arguments in search of supporting evidence, advanced by the Bank and the Government, both of which have abdicated their responsibility to seek truth and justice; and who have by their objections, wrongfully sequestered for almost one year, the Linda Salyer Lee Revocable Trust $300,000.00 bail money that remains in the Court's registry, despite Defendant's surrender on April 9, 2013.

Instead of acquiescing in return of the bail money to its rightful owner, the Linda Salyer Lee Revocable Trust through Ms. Lee as Trustee, for over a year, and without any evidence, the Bank and Government have wrongfully held the Trust's bail funds hostage in direct violation of federal bail law and the policy of the law that protects family members who provide bail to a Defendant who is without the means to do so. ///

{7441/002/00461088.DOC}

1   **B.   The Need To Exonerate the Surety and Release Bail**

2         Rule of Criminal Procedure, Rule 46(g) provides:

3         The court must exonerate the surety
4         and release any bail when a bond
          condition has been satisfied or when
5         the court has set aside or remitted
          the forfeiture.   The court must
6         exonerate a surety who deposits cash
          in the amount of the bond or timely
7         surrenders the defendant into custody.

8

9         This rule obligates the Court in releasing bail funds

10  "to determine to whom they should be released."   *Rubenstein,*

11  971 F.2d at 293; see also, *United States v. Arnaiz*, 842 F.2d

12  217, 222 (9th Cir. 1988) ("[T]he court's statutory duty of

13  'releas[ing] any bail' [cannot] be fulfilled without a

14  determination of which party [is] entitled to receive it.");

15  *United States v. Ener*, 278 F.Supp.2d 441, 447 (E.D.Pa. 2003).

16  In making this determination, the court "should not presume the

17  money posted as bail is the defendant's."   *Rubenstein*, 971

18  F.Supp.2d at 295-96 (and cases cited therein).

19        The *Rubenstein* facts are particularly apposite.

20  There, bail was posted with the District Court by the

21  defendant's attorney in the form of two cashier's checks drawn

22  on the law firm's client trust account.   971 F.2d at 290-91.

23  The receipts issued by the Clerk of Court reflected these facts

24  and the appearance bonds signed by the defendant did not

25  mention any surety other than the defendant himself.   *Id.*, at

26  291 & n.1.   However, it was undisputed that a third-party (a

27  Dr. Sherman) was the actual source of the defendant's bail

28  money.   *Id.*, at 296.   The dispute centered on whether, under

{7441/002/00461088.DOC}

1    those circumstances, defendant *Rubenstein* acquired ownership of

2    the funds as a result of the funds being posted as bail.   *Id.*

3    In vacating the District Court's order adopting a State Court

4    determination that the bail funds had become defendant

5    *Rubenstein's*, the Ninth Circuit found that Dr. Sherman had

6    wired the funds to *Rubenstein's* lawyer's trust account and had

7    instructed the attorney to use the money for *Rubenstein's* bail.

8    *Id.*   The court also found it was irrelevant to the question of

9    who owned the funds that Dr. Sherman was not identified as the

10   source of the bail funds when posted in the District Court.

11   *Id.*, at 297.

12          The *Rubenstein* decision is consistent with that of

13   the other courts that have addressed the issue, to whom to

14   return funds upon the exoneration of the defendant's bail.   See

15   *United States v. Parr*, 594 F.2d 440, 443 (5th Cir. 1979)

16   ("Clearly, it was the intention of all concerned that upon

17   disposition of the case, Manges [the source of the bail funds[

18   was to receive the deposit or so much of it that was subject to

19   remission.   The title to the funds deposited by Manges did not

20   pass to (defendant) Parr."); *United States v. Bursey*, 515 F.2d

21   1228, 1237 (5th Cir. 1975) ("[T]he District Court would have

22   been obliged to return" to the defendant's parents the cash

23   bail posted "had it been demonstrated that it was their

24   property . . .."); *Jacobson v. Hahn*, 88 F.2d 433, 434 (2d Cir.

25   1937); *United States v. Ener*, 278 F.Supp.2d 441, 450 (E.D.Pa.

26   2003) (ordering the Clerk of the Court to return a cash bond

27   posted to secure the defendant's release to the wife of a co-

28

{7441/002/00461088.DOC}

defendant because the bail funds originated from her bank account and at no time did she intend to give them to defendant in allowing them to be used for purposes of bail); *United States v. Markiewicz No. Crim. A. 96 CR-12(RSP)*, 1998 WL 37592, at *1 (N.D.N.Y. Jan. 28, 1998) (concluding that where the source gave bail funds to the defendant's attorney for posting bail, the attorney acted as the source's agent in posting the funds to secure the defendant's release and the source (owner) was entitled to the return of the bail funds upon exoneration); *United States v. Zhang*, 153 F.Supp.2d 341, 345 (S.D.N.Y. 2001) ("it has been the rule in this Circuit since 1937 that, once the bond is discharged, courts should not presume money posted as bail is the defendant's…Once the conditions of the bond have been satisfied, a person posting security has a superior claim to the funds posted."); *Bankers' Mortgage Co. of Topeka, Kan. V. McComb*, 60 F.2d 218, 22 (10th Cir. 1932) ("But when the conditions of the bail bond have been fully met and the whole of the bond or notes deposited, or a residue thereof, remains in the hands of the clerk, a court in a proper proceeding may and should inquire into the true title thereto as between third persons and the defendant or his creditors, and direct that they be delivered to the true owner.").  This has been done.

The Magistrate Judge here has found:

> [I]t cannot be disputed that the Linda
> S. Lee Revocable Trust was the source
> of the $300,000.00 used to partially
> secure Defendant Salyer's release.
> The uncontroverted evidence before the
> court establishes that those funds

1
2
3
4
5
6

                    were deposited into the trust account of defendant's attorneys solely for the purpose of securing his pre-trial release on bond, for no other purpose and with the understanding that they would be returned to his sister's trust upon the exoneration of the bond.  Because the $300,000.00 belongs to the Linda S. Lee Revocable Trust and not to Defendant Salyer, it is simply not subject to the Bank's lien.

7

(Doc. 655 at 9:10-16)

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

        As to the Government, the Magistrate Judge went on to hold:  "For the same reason, the $300,000.00 cannot be used to satisfy any potential restitution obligation imposed on Defendant Salyer under 28 U.S.C. § 2044.  (*Id.* at 9:16-18); *see United States v. Higgins*, 987 F.2d 543, 546, n.3 (8th Cir. 1993) ("Section 2044 codifies the discretion courts have long exercised, to pay, on a proper motion, bond or bail money to the parties with a legally established superior claim to it.") (and cases cited therein); *United States v. Sparger*, 79 F.Supp.2d 714, 718-20 (W.D. Tex. 1999) (Holding "that § 2044 does not apply to bail money belonging to third parties") [such as Ms. Lee as Trustee]; *United States v. Equere*, 916 F.Supp. 450, 452 (E.D. Pa. 1996) (Title 28, § 2044 "does not extend such authority to a situation like the present case, in which a third party, not the defendant, has provided his own money to post defendant's bail."); *United States v. Gonzalez*, No. 11 CR 80211-MARRA 2013 WL 654918, at *2-5 (S.D.Fla. Feb. 21, 2013) (denying the government's motion to apply bond deposit to restitution); *United States v. Dipofi*, No. S. 04-8070-01, 07-50695, 2008 WL 2622954, at *1-2 (E.D. Mich. July 3, 2008)

{7441/002/00461088.DOC}

(same);   *United States v. Bogart*, 490 F. Supp. 2d 885, 908 (S.D. Ohio 2007) *aff'd*, 576 F.3d 565 (6th Cir. 2009) and *aff'd sub nom. United States v. Elson*, 577 F.3d 713 (6th Cir. 2009) ("While Rule 46(g) of the Federal Rules of Criminal Procedure requires the release of bail when the conditions are exonerated, the fundamental issue of ownership must first be determined through a proper evidentiary hearing…If a defendant is the owner of the funds, then, upon motion by the government, the Court may order that the bail money be applied to a restitution order against him…*If Defendant did not have title to the funds, then they cannot be used to satisfy Defendant's restitution obligations.*") (emphasis added.)

Recognizing and apologizing for the delay in issuance of his Findings and Recommendations confined to the return of the $300,000.00 bail to Linda S. Lee, as Trustee, the Magistrate Judge explains he mistakenly believed the Findings and Recommendations had been filed on the docket. (Doc. 655 at 10, n.9)

C.   **The Policy of the Law is Well Served by Return to Linda S. Lee, Trustee, of Her Trust Funds**

The Magistrate Judge noted that his experience with bail was: "it is normally the case that a Defendant indicted in Federal Court does not have the ability to post property or cash to secure his or her own release." (Doc. 655 at 8, fn. 8) The Magistrate Judge recognizes that most Defendants depend on the ability and willingness of family and friends to post bail on their behalf.   (*Id.*)   "Recognizing, it is the very strength

{7441/002/00461088.DOC}

of those (family) close ties that the Court often relies upon in ordering a Defendant released on bond on the presumption that a Defendant would not likely jeopardize the property and funds of their family and friends by failing to appear in court despite the severity of the punishment they may face if convicted." (*Id.*)

Magistrate Judge Drodz found that the Bank's and Government's argument that the District Judge specifically ordered Defendant Salyer to "personally post his own funds to secure his release is, frankly, ridiculous and complete unsupported." Most importantly, the Magistrate Judge, who has years of experience evaluating bail motions and setting conditions of pre-trial release, recognized: ". . . A failure to apply the legal principles discussed in *Rubenstein* and similar decisions in addressing motions to exonerate bond would potentially jeopardize the bail system long relied upon by the Federal Courts in ensuring the timely release of those Defendants from custody where adequate conditions of release can be fashioned." (Doc. 655 at 9, fn. 8) To encourage the cynical course of conduct pursued by the Bank and the Government here would indeed destroy the very foundation of the bail system that assures a return to the true owner of the bail money once the Defendant has surrendered (here about a year ago) and bail has been exonerated (in this case six months ago).

///

///

APPLICATION OF LINDA S. LEE AS TRUSTEE OF THE LINDA SALYER LEE REVOCABLE TRUST FOR IMMEDIATE RETURN OF CASH BAIL TO THE LINDA SALYER LEE REVOCABLE TRUST

## CONCLUSION

With not a scintilla of evidence except argument and innuendo, it is penultimately unfair that the Bank and the United States have succeeded in holding hostage the Linda S. Lee Revocable Trust $300,000.00 cash funds posted as bail for Ms. Lee's brother. The minimum responsibility on the part of the Bank should be to compensate Ms. Lee for the time value that her money has been wrongfully withheld and the cost of recovery of the Trust's funds by virtue of their obstruction and unjustified interference with the return of her funds. That is not the purpose of this proceeding.

With no objections to the Findings and Recommendations, no issue remains to be decided as to ownership of the bail money, assuming the District Judge accepts the Findings and Recommendations. The bail money posted by Linda S. Lee as trustee of the Linda Salyer Lee Revocable Trust belongs to the trust—as such it simply cannot be used towards any restitution determined to be owed by Defendant. Defendant has no ownership of or claim to the trust money. Any continuing proceedings pertaining to restitution, will solely involve Defendant's assets, and will be entirely unrelated to the trust's bail money. No further delay in return of the bail to Ms. Lee as Trustee is warranted, and no such delay should be countenanced. Despite any contrary suggestion by its conduct, when justice is done, the Government wins.

For all of these reasons, it is respectfully requested that the Court immediately order return of the

{7441/002/00461088.DOC}

1  $300,000.00 in bail money to its owner, Linda Salyer Lee, as

2  Trustee of the Linda Salyer Lee Revocable Trust.

3         A form of order is respectfully submitted to

4  accomplish the return of the bail monies to Ms. Lee as Trustee.

5

6  DATED:  March 22, 2014          Respectfully submitted,

7                                  WANGER JONES HELSLEY PC

8

9                                  By:____/s/ Oliver W. Wanger_____
                                      Oliver W. Wanger
10                                    Attorneys for Linda Salyer Lee

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

APPLICATION OF LINDA S. LEE AS TRUSTEE OF THE LINDA SALYER LEE REVOCABLE TRUST FOR IMMEDIATE RETURN
OF CASH BAIL TO THE LINDA SALYER LEE REVOCABLE TRUST