UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. No. 2:10-cr-0061 LKK |
|---|---|
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| FREDERICK S. SALYER, | <u>RE EXONERATION OF CASH BOND</u> |
| Defendant. | |

On April 9, 2013, defendant Frederick S. Salyer, surrendered as ordered to the Bureau of Prisons to serve the sentence imposed in the above-entitled action. Thereafter, he moved this court for an order exonerating the bond posted to secure his release. (Dkt. No. 598.) Specifically, defendant Salyer sought from the court an order: (1) exonerating the personal Appearance Bond which he executed in this action; (2) directing the return of the $300,000 in cash posted to partially secure that Appearance Bond; (3) directing the return of his passport and Federal Aviation Commercial Pilot Proficiency Card which were deposited with the Clerk of the Court;

/////
/////
/////
/////
/////

1

and (4) directing the Clerk of the Court to reconvey the six properties (see Dkt. Nos. 221-224, 226-27) which were also posted as collateral for the Appearance Bond. (Dkt. No. 598.)[1]

Shortly after defendant filed his motion to exonerate bond, counsel on behalf of the Bank of Montreal ("Bank") filed a motion for turnover of property subject to judgment creditor's lien seeking a court order requiring that the $300,000 in cash posted to secure the defendant's release be delivered by the court to the Bank pursuant to its lien. (Dkt. No. 600.) The Bank also filed an opposition to defendant's motion to exonerate bond. (Dkt. No. 602.) On April 22, 2013, counsel for the government filed opposition to the defendant's motion to exonerate bond as well as a motion seeking a court order directing payment of the $300,000 cash securing the defendant's Appearance Bond to the United States Attorney to be applied to payment of any restitution imposed as part of the sentence in this case. (Dkt. Nos. 607 & 608.) On April 29, 2013, counsel for Linda Salyer Lee as trustee for the Linda Salyer Lee Revocable Trust filed oppositions to both the Bank's motion and to the U.S. Attorney's motion and instead seeking return of the $300,000 cash on the grounds that those funds were posted by the Linda Salyer Lee Revocable Trust to secure the defendant's release and should be returned to the trust.[2]

At the Status Conference held on June 5, 2013, with respect to all matters referred to the undersigned, counsel for movant Bank and Assistant United States Attorney Matthew D. Segal on behalf of the United States both stated on the record their non-opposition to defendant's motion to exonerate bond in all respects except to the extent that the defendant's motion sought the return of the $300,000 cash posted to secure the Appearance Bond. (Dkt. No. 629 at 6-7, 13.) In addition,

---

[1] On April 1, 2013, the assigned District Judge referred this matter to the undersigned with respect to the issue of restitution only for the issuance of findings and recommendations. (Dkt. No. 589.) On April 19, 2013, an order was issued clarifying the referral to include the defendant's motion to exonerate bond to the extent it raised issues related to the government's request for a restitution order as part of the defendant's sentence. (Dkt. No. 604.) The defendant's motion to exonerate bond related to the referred issue of restitution only to the extent that various parties are seeking the $300,000 cash posted with the court to secure the Appearance Bond. The motion to exonerate otherwise fell within the scope of duties to be performed by Magistrate Judges in this District under Local Rule 302(b)(7) and 28 U.S.C. 636(b)(1)(A) and was therefore addressed by way of order.

[2] Linda Salyer Lee is defendant Salyer's sister.

2

1   neither the government nor any other party appearing before the court stated any opposition to the
2   order requested by the defendant exonerating the personal Appearance Bond which he executed,
3   directing the return of his passport and Federal Aviation Commercial Pilot Proficiency Card
4   which were deposited with the Clerk of the Court and directing the Clerk of the Court to reconvey
5   the six properties which were posted by individuals as collateral for the Appearance Bond.
6   Accordingly, on August 6, 2013, the undersigned ordered that: the appearance bond filed
7   September 3, 2010 (Dkt. No. 208) be exonerated; the Clerk of the Court return defendant Salyer's
8   passport and Federal Aviation Commercial Pilot Proficiency Card to the defendant or his
9   attorneys; and the Clerk of the Court reconvey the real property posted as collateral for the
10  Appearance Bond (see Dkt. Nos. 221-224, 226-227) to the property owners and transmit quit
11  claim deeds to the appropriate County Clerks for recording.
12      The court now turns to the dispute surrounding the disposition of the $300,000 in cash
13  posted with the court to partially secure the defendant's pretrial release.[3]
14  I. Arguments of the Parties
15      A.   Bank of Montreal
16      The Bank asserts that on August 10, 2012, it obtained a judgment in excess of $128
17  million against defendant Frederick S. Salyer in the U.S. District Court for the Northern District
18  of California and that the judgment has not been satisfied. The Bank filed a Notice of Lien
19  pursuant to Rule 69 of the Federal Rules of Civil procedure and Section 708.410 of California's
20  Enforcement of Judgments Law. The Bank takes the position that since defendant Salyer is
21  entitled to recover the $300,000 in cash posted to partially secure his release on bond, the Clerk of
22  Court should be directed to remit those monies to the Bank to be applied to its judgment against
23  defendant Salyer.
24      In arguing that the $300,000 belongs to defendant Salyer and is therefore subject to its lien
25  the Bank first points to the assigned District Judge's release order of September 17, 2010 which

---

[3] Separate findings and recommendations will issue addressing the actual restitution issue referred to the undersigned now that the extended briefing schedule requested by the parties with respect to that issue has come to a close.

3

1  directed that the defendant "shall post cash bail in the amount of $300,000." (Dkt. No. 217.) The
2  Bank also notes that in moving to exonerate bond the proposed order submitted by the
3  defendant's counsel called for the return of the cash "to the Defendant or his attorney." From
4  this, the Bank concludes that there is no dispute that defendant Salyer deposited the $300,000
5  with the court and that he is entitled to it, thereby making the cash subject to the Bank's lien.

6  Subsequently, the Bank argued that any claim by the Linda S. Lee Revocable Trust to the
7  funds should be rejected because there was no written agreement between Ms. Lee and her
8  brother regarding those funds. Alternatively, the Bank argues that because the Trust did not wire
9  the funds directly to the Court but instead wired them to defendant Salyer's counsel who
10 deposited them in a trust account and then delivered them to the court, those funds came under
11 defendant Salyer's sole dominion and control thus make his sister, at most, an unsecured creditor
12 with a claim to the $300,000 junior to that of the Bank's. Finally, the Bank argues that any
13 restitution claims are also subordinate to its lien. However, the Bank suggests that the court defer
14 distribution of the funds to allow the Bank and Government counsel an opportunity to explore an
15 amicable resolution of the matter.

16     B.    The United States

17 The United States poses a similar opposition to defendant Salyer's motion to exonerate
18 bond to the extent that it also seeks the $300,000 posted to secure the defendant's release. Like
19 the Bank, the United States takes the position that the $300,000 was defendant Salyer's when it
20 was deposited with the Clerk of the Court to partially secure his release on bond. The United
21 States carefully parses the language of the District Judge's release order and notes that it
22 specifically directed "You [referring to defendant Salyer] shall post cash bail in the amount of
23 $300,000.00" and "cause . . . friends, family, or neighbors" to post real property. (citing Dkt.
24 No. 217 at 3-4.) The United States also observes that the defendant's motion to exonerate bond
25 seeks the return of the cash to "the Defendant or his attorney." (citing Dkt. No. 598-1 at 2.)
26 /////
27 /////
28 /////

4

Accordingly, the United States seeks the return of the cash to the United States Attorney to go toward the still yet to be determined restitution amount pursuant to 28 U.S.C. § 2044.[4]

### C. Defendant Salyer

Defendant Salyer argues that while the posting of bail to secure his release had a lengthy and somewhat tangled history, it was always clear that the cash posted to partially secure his was not his own and was eventually provided by his sister, Linda Salyer Lee. Accordingly, according to the defendant, the $300,000 in bail funds must be returned to its rightful owner, the Linda Salyer Lee Revocable Trust.

Defendant Salyer recounts the following history of the proceedings related to the posting of bond to secure his release. On March 25, 2010, the court ordered the defendant released on a $300,000 cash bond along with a $6 million property bond secured by his and his daughters' interest in a family home in Pebble Beach or, alternatively, property of friends and neighbors. (Dkt. No. 48.) On March 29, 2010 the $300,000 cash bond was posted with the Clerk of the Court by defendant's counsel with funds provided by his daughters' trusts for the specific purpose of bail. Thereafter, however, defendant Salyer was unable to post the Pebble Beach home as collateral because it was encumbered by the Bankruptcy Trustee and/or his ex-wife. Accordingly, on May 26, 2010 the defense sought and obtained an order from the assigned District Judge directing the Clerk of the Court to return the posted bail funds to the trustee of the defendant's daughters' trusts pending further bail proceedings. (Dkt. No. 107.) Later, on September 3, 2010, the court ordered defendant Salyer released upon the posting of a $300,000 cash bail and at least $5.7 million worth of property by the defendant's friends, family or neighbors. (Dkt. No. 206.) On that same day, counsel for defendant Salyer again delivered a cashier's check in the amount of $300,000 to the Clerk of the Court to partially secure the defendant's release, but this time the bail funds were provided by defendant's sister, Linda Salyer Lee.

/////

---

[4] The United States also argues that under the circumstances of this case it would not be appropriate to rely solely on a claim by the defendant that the $300,000 belongs to a third party. While the court has considered defendant Salyer's declaration it does not rely solely upon that declaration. See fn. 5, below.

5

1    Counsel for defendant Salyer argues that it was clear throughout the seven months of bail
2    proceedings in this case that the defendant himself did not have the funds necessary to secure his
3    release. Indeed, defense counsel notes, the government argued exactly that. Defense counsel also
4    point out that when the posting of property to secure the defendant's release in March of 2010 hit
5    a roadblock, the court ordered the return of the $300,000 that had been posted with the Clerk by
6    defense counsel to the trustee of the defendant's daughters trusts from where the funds had come.
7    Counsel for defendant Salyer rely on their own declarations and that of defendant's sister[5] along
8    with supporting bank records to establish the following chronology with the respect to the posting
9    of the $300,000 now at issue with the Court. On September 2, 2010, Linda S. Lee as trustee of
10   her own revocable trust wired $300,000 to the Segal & Kirby (the law firm representing
11   defendant) trust account to be used to secure her brother's release on bond and with the explicit
12   understanding that the funds would be returned to her once that bond was exonerated. The
13   following day defendant Salyer's attorneys had a cashier's check in the amount of $300,000
14   issued using Ms. Lee's funds and deposited that cashier's check with the Clerk of the Court to
15   partially secure their client's pretrial release. Defense counsel did so with the understanding and
16   expectation that those funds would, of course, be returned to Ms. Lee upon the exoneration of the
17   bond. Accordingly, counsel on behalf of defendant Salyer argue that neither the Bank lien nor the
18   Government's efforts to secure funds to satisfy his potential restitution obligation apply to the
19   $300,000 posted with the Court because those funds do not belong to him but rather belong to
20   Ms. Lee, who cannot be held responsible for either judgments entered against or restitution
21   ordered to be paid by her brother.[6]
22   /////

---

[5] Defendant Salyer later submitted his own affidavit addressing this subject. That affidavit is consistent with the position taken by his sister, the Trust's lawyers and his own counsel. Given the declarations of counsel with the bank records attached thereto, there can be no legitimate dispute as to where the bail funds came from and how they were deposited with the court.

[6] Defendant Salyer's counsel accepts a degree of responsibility for any confusion caused in this regard based upon the initial proposed order which inartfully failed to call for the return of the cash bail directly to the Linda S. Lee Revocable Trust, even though it was always counsel's intention to return the funds to that Trust.

6

In support of this contention, defendant's counsel cite this court to published decisions recognizing the common sense notion that when a family member or friend posts a cash bail on behalf of a criminal defendant, even when posted with the court through the defendant's counsel, those funds cannot be presumed to become the defendant's.

D. Linda Salyer Lee

Counsel for Linda S. Lee as trustee for her Revocable Trust argues that this is a simple matter since it cannot be disputed that the $300,000 belongs to the Trust and must be returned to the Trust.[7] Counsel for the Trust highlights the fact that when the first $300,000 cash bond posted on behalf of the defendant was returned pending further bail proceedings, the court ordered it returned to the trustee of the defendant's daughters' trusts from which the funds had originated. Counsel for the Trust argues that it is obvious that the same action should be taken by the court now – order the cash bail returned to the trust from which it came. Counsel for the Trust argues that the decision in United States v. Rubenstein, 971 F.2d 288, 295 (9th Cir. 1992) dictates such a result. The Trust also contends that numerous courts have recognized that bail money provided by a third party cannot be acquired by the Government to satisfy restitution pursuant to 28 U.S.C. §2044. Finally, counsel for the Trust argues that under the California Rules of Professional Conduct it is clear that the $300,000 from the Trust that were deposited into the Segal & Kirby Trust Account remained the property of the Trust and never became the property of defendant Salyer. The undersigned finds all of the Trust's arguments to be persuasive.

II. Analysis

Rule 46(g) of the Federal Rules of Criminal Procedure provides:

> The court must exonerate the surety and release any bail when a bond condition has been satisfied or when the court has set aside or remitted the forfeiture. The court must exonerate a surety who deposits cash in the amount of the bond or timely surrenders the defendant into custody.

---

[7] It appears likely that Linda S. Lee as trustee for the Linda S. Lee Revocable Trust retained separate counsel to appear in this matter and make this argument in response to the Bank's technical arguments that defendant Salyer lacked standing to raise arguments on behalf of his sister's Trust, that defendant Salyer's counsel did not represent the Trust and that the Trust could appear only through counsel and should be required to make its own motion. (See Dkt. No. 609.)

1    In releasing bail funds pursuant to this rule, it is the court's obligation "to determine to whom
2    they should be released." Rubenstein, 971 F.2d at 293. See also United States v. Arnaiz, 842
3    F.2d 217, 222 (9th Cir. 1988) ("[T]he court's statutory duty of 'releas[ing] any bail' [cannot] be
4    fulfilled without a determination of which party [is] entitled to receive it."); United States v. Ener,
5    278 F. Supp.2d 441, 447 (E.D. Pa. 2003). In making this determination, the court "should not
6    presume that money posted as bail is the defendant's." Rubenstein, 971 F.2d at 295-96 (and cases
7    cited therein).

8    Here, consideration of the circumstances presented in Rubenstein is particularly helpful.
9    In that case, bail was posted with the District Court by the defendant's attorney in the form of two
10   cashier's checks drawn on the law firm's client trust account. 971 F.2d at 290-91. The receipts
11   issued by the Clerk of Court reflected the same and the appearance bonds signed by the defendant
12   did not indicate any surety other than the defendant himself. Id. at 291 & n.1. However, it was
13   undisputed that a third-party (a Dr. Sherman) was the actual source of the defendant's bail money.
14   Id. at 296. The question presented was whether defendant Rubenstein acquired ownership of the
15   funds as a result of their posting as bail. Id. In vacating the District Court's order adopting a
16   state court determination that the bail funds had become defendant Rubenstein's, the Ninth
17   Circuit relied upon the fact that Dr. Sherman had wired the funds to Rubenstein's lawyer's trust
18   account and had instructed the attorney to use the money for Rubenstein's bail. Id. The court
19   also found that it was irrelevant to the question of who the funds belonged to that Dr. Sherman
20   was not identified as the source of the bail funds when posted in District Court. Id.

21   The reasoning of the Ninth Circuit in Rubenstein is consistent with that of the other courts
22   which have on rare occasion been required to address such issues regarding to whom to return
23   funds upon the exoneration of a defendant's bail. See United States v. Parr, 594 F.2d 440, 443
24   (5th Cir. 1979) ("Clearly it was the intention of all concerned that upon disposition of the case
25   Manges [the source of the bail funds ] was to receive his deposit or so much of it that was subject
26   to remission. The title to the funds deposited by Manges did not pass to [defendant] Parr.");
27   United States v. Bursey, 515 F.2d 1228, 1237 (5th Cir. 1975) ("[T]he district court would have
28   been obliged to return" to the defendant's parents the cash bail posted "had it been demonstrated

8

1   that it was their property . . . ."); Jacobson v. Hahn, 88 F.2d 433, 434 (2d Cir. 1937); United
2   States v. Ener, 278 F. Supp.2d 441, (E.D. Pa. 2003) (ordering the Clerk of the Court to return a
3   cash bond posted to secure the defendant's release to the wife of a co-defendant because the bail
4   funds originated from her bank account and at no time did she intend to give them to the
5   defendant in allowing them to be used for purposes of bail); United States v. Markiewicz, No.
6   Crim. A. 96 CR-122 (RSP), 1998 WL 37592, at *1 (N.D.N.Y. Jan. 28, 1998) (concluding that
7   where the source gave bail funds to the defendant's attorney for posting, the attorney acted as the
8   source's agent in posting the funds to secure the defendant's release and the source was entitled to
9   the return of the bail funds upon exoneration).

10       Here it cannot be disputed that the Linda S. Lee Revocable Trust was the source of the
11   $300,000 used to partially secure defendant Salyer's release. The uncontroverted evidence before
12   the court establishes that those funds were deposited into the trust account of defendant's
13   attorneys solely for the purpose of securing his pretrial release on bond, for no other purpose and
14   with the understanding that they would be returned to his sister's trust upon the exoneration of the
15   bond. Because the $300,000 belongs to the Linda S. Lee Revocable Trust and not to defendant
16   Salyer, it is simply not subject to the Bank's lien.[8] For the same reason, the $300,000 cannot be
17   used to satisfy any potential restitution obligation imposed on defendant Salyer under 28 U.S.C. §
18   2044. See United States v. Higgins, 987 F.2d 543, 546 n.3 (8th Cir. 1993) ("Section 2044
19   codifies the discretion courts have long exercised, to pay, on a proper motion, bond or bail money
20   to the parties with a legally established superior claim to it.") (and cases cited therein); United

---

[8] As noted at the June 5, 2013, status hearing, in the undersigned's experience it is normally the case that a defendant indicted in federal court does not have the ability to post property or cash to secure his or her own release. Rather, most defendants are dependent on the ability and willingness of family and friends to post bail on their behalf. Indeed, it is the very strength of those close ties that the court often relies upon in ordering a defendant released on bond under the presumption that a defendant would not likely jeopardize the property and funds of their family and friends by failing to appear in court despite the severity of the punishment they may face if convicted. The suggestion that the District Judge in this case specifically ordered defendant Salyer to personally post his own funds to secure his release is, frankly, ridiculous and completely unsupported. Moreover, a failure to apply the legal principles discussed in Rubenstein and similar decisions in addressing motions to exonerate bond would potentially jeopardize the bail system long relied upon by the federal courts in ensuring the timely release of those defendants from custody where adequate conditions of release can be fashioned.

9

1  States v. Sparger, 79 F. Supp. 2d 714, 718-20 (W.D. Tex. 1999) (Holding "that Section 2044 does
2  not apply to bail money belonging to third parties."); United States v. Equere, 916 F. Supp. 450,
3  452 (E.D. Pa.1996) (Title 28 section 2044 "does not extend such authority to a situation like the
4  present case, in which a third party, not the defendant, has provided his own money to post
5  defendant's bail."); United States v. Gonzalez, No. 11-CR-80211-MARRA, 2013 WL 654918, at
6  *2-5 (S.D. Fla. Feb 21, 2013) (denying the government's motion to apply bond deposit to
7  restitution); United States v. Dipofi, Nos. 04-80707-01, 07-50695, 2008 WL 2622954, at *1-2
8  (E.D. Mich. July 3, 2008) (same).

### III. Conclusion[9]

For all of the reasons set forth above, IT IS HEREBY RECOMMENDED that:

1. Defendant's Motion to Exonerate Bond (Doc. No. 598) with respect to the $300,000 cash bail be granted;

2. The Bank of Montreal's Motion for Turnover of Property Subject to Judgment Creditor's Lien (Doc. No. 600) be denied; and

3. The Clerk of the Court be directed to return the sum of $300,000, deposited as bail to partially secure the defendant's release, to the Linda Salyer Lee Revocable Trust.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within fourteen days after service of the objections. The parties are

/////
/////
/////

---

[9] The undersigned apologizes to all of the parties for the delay in the issuance of these findings and recommendations, which were drafted over two months ago. The undersigned mistakenly believed they had been filed on the docket at that time and just learned that was not the case.

10

1 | advised that failure to file objections within the specified time may waive the right to appeal the
2 | District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).
3 | Dated: February 3, 2014

*Dale A. Drozd*
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD1.crim
salyer10cr0061.exoneratebond.wpd

## Deborah Pell

| | |
|---|---|
| **From:** | caed_cmecf_helpdesk@caed.uscourts.gov |
| **Sent:** | Monday, February 03, 2014 12:51 PM |
| **To:** | CourtMail@caed.uscourts.gov |
| **Subject:** | Activity in Case 2:10-cr-00061-LKK-DAD USA v. Salyer Findings and Recommendations - CR |

This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** There is no charge for viewing opinions.

### U.S. District Court

### Eastern District of California - Live System

### Notice of Electronic Filing

The following transaction was entered on 2/3/2014 at 12:51 PM PST and filed on 2/3/2014
**Case Name:**      USA v. Salyer
**Case Number:**    2:10-cr-00061-LKK-DAD
**Filer:**
**Document Number:** 655

**Docket Text:**
**FINDINGS and RECOMMENDATIONS signed by Magistrate Judge Dale A. Drozd on 2/3/2014 as to Frederick Scott Salyer RECOMMENDING [598] MOTION to EXONERATE BOND** *and for Reconveyance of Real Property* **be granted; and [600] MOTION For Turnover of Property Subject to Judgment Creditor's Lien be denied; and Clerk be directed to return the sum of $300,000, depositied as bail to partially secure the defendant's release, to the Linda Salyer Lee Revocable Trust; Matter referred to Senior Judge Lawrence K. Karlton; Any party may file objections to these findings and recommendations within 14 days after being served; parties are advised the failure to file objections within the specified time may waived the right to appeal the District Court's order. (Waggoner, D)**


**2:10-cr-00061-LKK-DAD-1 Notice has been electronically mailed to:**

Alex James Kachmar , Jr     jkachmar@weintraub.com, rcarrillo@weintraub.com

Andrea M. Miller     amiller@nmlawfirm.com, efewell@nmlawfirm.com, jimkeowen@nmlawfirm.com, jkeowen@nmlawfirm.com

Anna Tryon Pletcher     anna.pletcher@usdoj.gov, ava.harper@usdoj.gov, edward.bernard@usdoj.gov, jennie.ngo-tanaka@usdoj.gov, megan.thompson@usdoj.gov

Brian Lee Ferrall     bferrall@kvn.com, dfox@kvn.com, llind@kvn.com

Christopher H. Hart     chart@schnader.com, mcarlson@schnader.com, mpadilla@schnader.com, sobrien@schnader.com

1

Dale C. Campbell     dcampbell@weintraub.com, enetemeyer@weintraub.com

Edward W Swanson     eswanson@swansonmcnamara.com, bevangelist@swansonmcnamara.com

Elliot Remsen Peters     epeters@kvn.com, apicar@kvn.com, efiling@kvn.com, jah@kvn.com, jstiles@kvn.com, kbringola@kvn.com

George L O'Connell     George.Oconnell@dlapiper.com, Danielle.Powers@dlapiper.com

Gregory C Nuti     gnuti@schnader.com, calas@schnader.com, sobrien@schnader.com

James P. Mayo     jmayo@segalandkirby.com, firm@segalandkirby.com, mperry@segalandkirby.com

Jared Chase Dolan , GOVT     jared.dolan@usdoj.gov, jamielynne.harrison@usdoj.gov, usacae.ecfsaccrm@usdoj.gov

Jo W. Golub     jgolub@kvn.com, efiling@kvn.com, jah@kvn.com, jselby@kvn.com, jsessions@kvn.com, sgiminez@kvn.com

John W. Keker     jwk@kvn.com, der@kvn.com, efiling@kvn.com

Justin Potter Karczag     jkarczag@foleybezek.com, cconnors@foleybezek.com, ehuffman@foleybezek.com, jpkarczag@yahoo.com, tfoley@foleybezek.com

Justina Kahn Sessions     jsessions@kvn.com, jselby@kvn.com

Kevin Christopher Khasigian     kevin.khasigian@usdoj.gov, kendra.ford@usdoj.gov, tammy.teglia@usdoj.gov, usacae.ecfsaccv@usdoj.gov

Malcolm S. Segal     firm@segalandkirby.com, jmayo@segalandkirby.com, mperry@segalandkirby.com, msegal@segalandkirby.com

Matthew Dean Segal     Matthew.Segal@usdoj.gov, jamielynne.harrison@usdoj.gov, usacae.ecfsaccrm@usdoj.gov

Matthew G. Jacobs     matt.jacobs@dlapiper.com, debbie.blum@dlapiper.com

Megan Alicia Lewis     mlewis@wilkefleury.com, calendar@wilkefleury.com, jhume@wilkefleury.com

Oliver W. Wanger     owanger@wjhattorneys.com, dpell@wjhattorneys.com, ecfclerk@wjhattorneys.com

Paven Malhotra     pmalhotra@kvn.com, efiling@kvn.com, llind@kvn.com

Peter Michael Jones     pjones@wjhattorneys.com, ecfclerk@wjhattorneys.com, jvillacorta@wjhattorneys.com

Robert B. Kaplan     rbk@jmbm.com

Robert Steven Lapham     steven.lapham@usdoj.gov, jamielynne.harrison@usdoj.gov, usacae.ecfsaccrm@usdoj.gov

Stephanie J. Finelli     sfinelli700@yahoo.com

Tai Snow Milder     tai.milder@usdoj.gov, jennie.ngo-tanaka@usdoj.gov

Todd Joseph Dressel     dressel@chapman.com, lubecki@chapman.com

**2:10-cr-00061-LKK-DAD-1 Electronically filed documents must be served conventionally by the filer to:**

Robert Pruett
2593 Gillian Court
Pleasanton, CA 94566

The following document(s) are associated with this transaction:

**Document description:** Main Document
**Original filename:** n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1064943537 [Date=2/3/2014] [FileNumber=6623855-0]
[69b701e1f42c255bc226ce190dc55bf5a3042ab7122893dc74b76b508ed7fdb14d3d
bfd9b33b0e272bee6ac8c9df12bc470ec8eaaca332df6d43fc5b26dc10d6]]