UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>FREDERICK SCOTT SALYER,<br><br>Defendant. | No. 2:10-cr-00061-TLN<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE** |

This matter is before the Court on Defendant Frederick Salyer's (hereafter, "Defendant") Motion for Early Termination of Supervised Release. (ECF No. 686.) The government opposes Defendant's motion. (ECF No. 691.) For the reasons set forth below, Defendant's motion is DENIED.

///
///
///
///
///
///
///
///

1

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant pleaded guilty in March 2012 to two counts of a Second Superseding Indictment. (ECF No. 479.) Count One charged racketeering in violation of 18 U.S.C. § 1962(c), and Count Eight charged price fixing in violation of 15 U.S.C. § 1. (ECF No. 478 at 3.) Defendant was sentenced to a term of imprisonment of seventy-two months and a term of supervised release of thirty-six months. (ECF No. 569 at 2–3.) According to Defendant's motion, he was released from custody and commenced his term of supervised release on November 30, 2016. (ECF No. 686 at 2.)

Defendant filed the instant motion on August 20, 2018, requesting that his term of supervised release be terminated prior to its scheduled conclusion near the end of 2019. (ECF No. 686.) Defendant argues that terminating his supervised release is warranted because he is fully rehabilitated, has already been classified as a low risk supervisee, has obtained gainful employment and would be able to travel internationally as a consultant if his supervised release term is lifted, and has not committed any new crimes or abused alcohol since his release. (ECF No. 686 at 3–5.) The government opposes Defendant's motion on the ground that Defendant is not actually rehabilitated. (ECF No. 691.) The government suggests that if the Court terminates Defendant's supervised release early, it will lose jurisdiction to adjudicate any violations of Defendant's supervised release terms which he might commit. (ECF No. 691 at 1–2.)

## II. STANDARD OF LAW

Pursuant to the statute governing imposition of a term of supervised release after imprisonment, a district court may

> terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.

18 U.S.C. § 3583(e)(1). "The expansive phrases 'conduct of the defendant' and 'interest of justice' make clear that a district court enjoys discretion to consider a wide range of

///

circumstances when determining whether to grant early termination." *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014).

At the same time, before entering an order terminating supervised release, the statute requires a district court to consider certain relevant statutory factors. 18 U.S.C. § 3583(e). These include: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the supervised release terms to afford adequate deterrence to criminal conduct (i.e., general deterrence); the need for the supervised release terms to protect the public from further crimes of the defendant (i.e., specific deterrence); the need for the supervised release terms to provide the defendant with the most effective training, medical care, or other correctional treatment; the sentencing range for the offense, as well as any pertinent policy statements, issued by the United States Sentencing Commission; the need to avoid unwarranted sentencing disparities among defendants with similar records convicted of similar crimes; and the need to provide restitution to any victims. *Id.* (requiring a district court to "consider[] the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7)").

### III. ANALYSIS

The Court will consider Defendant's arguments for early termination of supervised release in the general order in which Defendant's motion presents them.

#### A. General Deterrence

Defendant argues that his previous prominence in the business community, in combination with the publicity surrounding his conviction and sentence, "has no doubt served the interests of deterring the conduct of other people similarly situated." (ECF No. 686 at 3.) Defendant's argument speaks to the Court's mandate to consider whether his current term of supervised release affords adequate general deterrence to criminal conduct. *See* 18 U.S.C. §§ 3583(e), 3553(a)(2)(B).

The Court does hope that Defendant's conviction and sentence have deterred other potential criminal actors from engaging in racketeering or other business-related frauds. However, just because there was significant general deterrent value in Defendant's prison sentence does not necessarily mean that there is no continuing general deterrent value in

maintaining Defendant on supervised release for the full thirty-six-month term to which he was originally sentenced. (*See* ECF No. 569 at 3.) It is axiomatic that "the entire sentence, including the period of supervised release, is the punishment for the original crime." *United States v. Soto-Olivas*, 44 F.3d 788, 790 (9th Cir. 1995). Hence, the Court's original imposition of a sentence of thirty-six months on supervised release took into account the general deterrent value of such a supervised release term, and the Court is not convinced that the interest of justice overcomes the value this full sentence continues to have in deterring others who may consider committing similar crimes. *See* 18 U.S.C. § 3553(a)(2)(B). Indeed, Defendant himself notes that he remains a relatively high-profile figure in the area of food safety even after his conviction. (*See* ECF No. 686 at 4 (noting Defendant's desire and opportunity to serve as an international food safety expert), 12 ("Mr. Salyer is recognized as the foremost expert in this problem area.").) Terminating Defendant's supervised release term early would therefore undermine general deterrence because it would send a message to those people who recognize and look to Defendant's food safety expertise that white-collar criminal defendants receive preferential treatment once they are released from custody. The Court finds that there was deterrent value in Defendant's supervised release term at the time he was sentenced, and there remains deterrent value in Defendant serving his full supervised release term now.

      Accordingly, the Court finds that the ends of general deterrence would be undermined, not enhanced, by an early termination of Defendant's term of supervised release.

      B.     Specific Deterrence

      Defendant argues that his supervised release term has no specific deterrent value because he "has been deterred from future illegal conduct by the sentence he has served." (ECF No. 686 at 3.) The government disputes the veracity of this statement, alerting the Court that "there is substantial evidence that he is *again* criminally lying about money." (ECF No. 691 at 1.) These competing views of whether the Court should shorten Defendant's term of supervised release relate to the Court's responsibility to consider the specific deterrent value of Defendant's sentence. *See* 18 U.S.C. §§ 3583(e), 3553(a)(2)(B), 3553(a)(2)(C).

///

The Court finds that the competing representations from Defendant and the government regarding his personal rehabilitation largely cancel one another out. Thus, while the Court does not have enough evidence before it to conclude with any certainty that Defendant will recidivate during his remaining term of supervised release, the Court has independently confirmed that the United States Probation Office for the Eastern District of California (hereafter, "Probation") opposes terminating Defendant's supervised release term at this time. Since Probation is most familiar with Defendant's cooperation and behavior on supervised release, the Court affords significant weight to Probation's views. *See United States v. Mejia-Sanchez*, 172 F.3d 1172, 1175 (9th Cir. 1999) (approving of the principle that "probation officers are an investigative and supervisory arm of the court" (citing *United States v. Burnette*, 980 F. Supp. 1429, 1433 (M.D. Ala. 1997))). And the Court is certainly not inclined to disregard Probation's position in the absence of more compelling indicators from Defendant that he will not recidivate during the final few months of his supervised release.

        C.      <u>Nature and Circumstances of Defendant's Offense</u>

Defendant argues that while he is not minimizing the extent of his crimes, "it is worth noting that his crimes did not endanger the public health." (ECF No. 686 at 3.) This assertion addresses the Court's mandate to consider the nature and circumstances of Defendant's offense. *See* 18 U.S.C. §§ 3583(e), 3553(a)(1).

While it is true that Defendant's criminal conduct did not have a negative impact on the public health, Defendant nonetheless participated in a wide-ranging criminal conspiracy that affected significant players in the food processing and distribution system. (*See, e.g.*, ECF No. 478 at 16 (discussing Defendant's knowledge and encouragement of kickbacks being paid to executives at B&G Foods, Frito-Lay, and Kraft Foods).) Furthermore, the Court notes that while the public health may not have been harmed by Defendant's criminal conduct in this specific case, the system of food labeling that makes up much of the federal government's food regulatory scheme was certainly undermined by his actions. (*See* ECF No. 478 at 17 (describing how Defendant's scheme resulted in falsification of labeling information concerning "the percentage of natural tomato soluble solids, mold count, screen size, production date, viscosity, and whether

the tomato paste qualified as 'organic'").) While there may have been no actual harm visited upon the public health by Defendant's specific conduct in this case, that conduct nonetheless demonstrated a concerning lack of respect for the overall system of food labeling and safety upon which all food consumers rely.

Accordingly, the Court does not find that the nature and circumstances of the offense weigh in favor of terminating Defendant's supervised release.

### D. History and Characteristics of Defendant

Defendant argues that his term of supervised release should be terminated because he had no criminal history prior to the instant convictions. (ECF No. 686 at 3.) Defendant also asserts that he is now remorseful for his actions, and that he is attempting to reintegrate himself into his community by joining a church and obtaining gainful employment. (ECF No. 686 at 3–5.) These arguments speak to the requirement that the Court consider Defendant's history and characteristics. *See* 18 U.S.C. §§ 3583(e), 3553(a)(1).

It is true that Defendant apparently had no significant criminal history prior to the instant matter. (*See* ECF No. 546 at 14.) That being said, a review of some of the filings in this case suggests that Defendant's history and characteristics should cause the Court to hesitate before accepting at face value Defendant's assertions that he is a changed person. (*See, e.g.*, ECF No. 551 at 16–18 (discussing, *inter alia*, Defendant's pre-conviction history of duplicitous conduct and distasteful comments).) Thus, while the Court is encouraged that Defendant appears to be taking his rehabilitation seriously by admitting his mistakes, joining a faith-based community, and committing to honest employment, that alone — particularly in light of some of the things Defendant has said and done in the past — does not compel the Court to conclude that his term of supervised release should be terminated.

### E. Interest of Justice

Defendant argues that "the interest of justice supports early termination because continued supervision will frustrate his progress toward reintegrating into the community as he seeks future employment." (ECF No. 686 at 4.) According to Defendant, the travel restrictions inherent in

///

being on supervised release make it impossible for him to travel internationally as a food consultant. (ECF No. 686 at 4–5.)

The Court notes that Defendant does not argue that he is currently precluded from traveling internationally; he merely asserts that he cannot do so "on short notice." (ECF No. 686 at 4; *see also* ECF No. 686 at 9 ("All travel outside the United States requires Court approval.").) Just because Defendant's preferred employment apparently requires travel on short notice does not, in and of itself, demonstrate that the interest of justice is undermined by maintaining Defendant on supervised release. Indeed, the fact that Defendant's chosen employment is in the very field in which he previously drew on his connections and expertise to perpetrate a significant fraud suggests to the Court that it is in the interest of justice for Probation to continue, rather than cease, monitoring Defendant's travel. (*See* ECF No. 686 at 12 ("The priority area is food safety, a major international problem area and Mr. Salyer is recognized as the foremost expert in this problem area.").) Maintaining Defendant on supervised release will help ensure that the public, at least for the entirety of Defendant's term of supervision, is protected from any further food-related crimes he may be tempted to commit. *See* 18 U.S.C. §§ 3583(e), 3553(a)(2)(C).

F. Correctional Treatment in Most Effective Manner

Lastly, Defendant argues that terminating his supervised release will further his stable reintegration into the community, a reintegration which is demonstrated by Defendant's current employment at McCormick Consulting and L.M.C. (ECF No. 686 at 5, 14.) The Court construes this argument as relating to the statutory factor that requires consideration of whether terminating supervised release will provide a defendant with needed correctional treatment — in Defendant's case, his continued private sector employment — in the most effective manner. *See* 18 U.S.C. §§ 3583(e), 3553(a)(2)(D).

The Court certainly has no desire to see Defendant terminated from his employment at L.M.C., McCormick, or anywhere else, and does believe that Defendant's work can be a positive force in his life. (*See* ECF No. 686 at 14 (suggesting that unless Defendant's term of supervised release is terminated soon, he may be fired from L.M.C.).) At the same time, the Court is not convinced that any supposed difficulties Defendant may be facing in terms of staying employed

are due to his status as a supervisee alone. If Defendant's current or prospective employers are willing to look past the fact that he was previously convicted of a high-profile racketeering crime, they are unlikely to be deterred from hiring or continuing to employ him solely on the basis that he cannot travel outside of certain geographic areas on short notice. Indeed, as Defendant is quick to point out, "[h]e was born and raised in that field [of agriculture] and has gained expertise through years of work and study." (ECF No. 686 at 4; *see also* ECF No. 686 at 5 (noting Defendant's "specialized knowledge and expertise concerning LEAN management and food safety").) If Defendant is the "expert consultant in the field of agriculture" that he claims to be, then his expertise is likely such that it can overcome any temporary restrictions on his right to travel freely that are associated with his term of supervised release. (ECF No. 686 at 4.)

In short, the Court finds that though Defendant has presented some evidence suggesting that his post-incarceration employment is not being accommodated as effectively as possible, this alone is insufficient to overcome the other factors set forth above that weigh against early termination of Defendant's supervised release. *See* 18 U.S.C. §§ 3583(e), 3553(a).

### IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Early Termination of Supervised Release (ECF No. 686) is DENIED.

IT IS SO ORDERED.

Dated: July 19, 2019

Troy L. Nunley
United States District Judge